## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DAVID OLABAYO OLANIYI**,

Plaintiff,

-against-

Civil Action No. 05-00455 (RBW)

**DISTRICT OF COLUMBIA, et al.**,

Defendants.

## OLANIYI'S MEMORANDUM IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, David Olabayo Olaniyi ("Olaniyi"), by and through his undersigned counsel and respectfully submits this memorandum in opposition to the Federal Defendants'[1] Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, for Summary Judgment (the "Federal Defendants' Motion"). For the reasons stated below, Olaniyi requests that the Court deny the Federal Defendants' Motion in its entirety.

---

[1] The Federal Defendants include various former and/or current federal law enforcement personnel who participated in the conduct alleged by Olaniyi's Second Amended Complaint. Specifically, the Federal Defendants are Jordan Blieden, Charlie V. Boswell, Donald Bracci, Tyrone D. Brooks, Rose B. Cabezas, Mark Crawford, Joseph DePalma, John T. Dineen, Gregory W. Guthrie, Noe J. Gutierez, Elaine A. Hinkle, Shawn K. Huycke, John E. King, Danny Malloy, Danny L. McElroy, Robert B. Meikrantz, Preston Nutwell, John Salb, Ryan S. Schauf, John Shark, Kathleen Talbot, Mary Ann P. Turner, and Gilman Udell, Jr., all former and/or current officers of the United States Capitol Police (the "USCP"), and Giulio J. Arseni, Jennifer Cejpeck, Sandra I. Chincilla, Mary B. Collins-Morton, Douglas Edmonson, Kevin D. Finnerty, John Gardner, Jr., Paul A. Garten, Chris A. Ginsburg, Melissa R. Godbold, Ronald E. Menold, II, Michelle Rankin, Kara D. Sidener, and Gerhard S. Vienna, all former and/or current officers of the Federal Bureau of Investigation (the "FBI").

## SUMMARY OF ARGUMENT

Twice before, Olaniyi has filed briefs with this Court in opposition to the Federal Defendants' motions to dismiss.[2] <u>See</u> Plaintiff's Opposition to Federal Defendants' Motion to Dismiss First Amended Complaint, Dkt. No. 25 (July 12, 2005) and Plaintiff's Memorandum in Opposition to Federal Defendants' Motion to Dismiss or Alternatively for Summary Judgment, Dkt. No. 56 (June 9, 2006). On both occasions, Olaniyi argued vigorously, and successfully, that the doctrine of qualified immunity does not bar his recovery from the Federal Defendants on his Fourth Amendment claim concerning the warrantless search and seizure of his van. On February 17, 2006 and November 10, 2006, this Court issued crystal clear and concise rulings which held that qualified immunity does not shield the Federal Defendants from liability. In spite of the Court's rulings, however, Olaniyi finds himself submitting this third brief to the Court to counter the Federal Defendants' continued assertion of qualified immunity.

The Court should rule in Olaniyi's favor again, respecting the search and seizure of Olaniyi's van. First, the "law of the case" doctrine and collateral estoppel bar the Federal Defendants from re-litigating issues which the Court has already decided decisively. Second, in spite of the speculative theories and uncorroborated allegations of fact offered by the Federal Defendants now for the first time, the Federal Defendants' failure to find explosives on Olaniyi's person in the Crypt still proves fatal to their claim that probable cause and exigent circumstances permitted the warrantless search of his van. Third, to the extent that the Federal Defendants rely on their new theories and allegations in support of their Motion, summary judgment cannot be awarded until after Olaniyi has had full and fair discovery to challenge them.

---

[2] Olaniyi also filed a brief in opposition to the Federal Defendants' motion to dismiss Olaniyi's original Complaint. See Plaintiff's Opposition to Federal Defendants' Motion to Dismiss, Dkt. No. 18 (May 6, 2005). Olaniyi's subsequent filing of his First Amended Complaint rendered the May 6, 2005 motion to dismiss moot before the Court addressed its merits.

Olaniyi, furthermore, believes that the Federal Defendants' bald attempt to re-litigate several issues already decided decisively by this Court is spurious, frivolous, and an abuse of process. On April 20, 2007, Olaniyi sent a letter to the Federal Defendants requesting that they withdraw their Motion. The Federal Defendants declined to withdraw their Motion.

## STATEMENT OF FACTS

This case concerns *inter alia* the warrantless arrest and unjustified detention of Olaniyi, the warrantless search and seizure of Olaniyi's van and its contents, the destruction of Olaniyi's artwork, property, and livelihood, and the continuing pattern of harassment by federal officials. Given that this brief opposes a motion to dismiss or, alternatively, for summary judgment from a limited category of defendants, and given that the scope of issues for the Court to consider in the motion are even further limited, Olaniyi provides here a recitation of the facts that is focused on the issues raised in the Federal Defendants' Motion.[3]

### A.    Olaniyi and his Art

David Olabayo Olaniyi, the Plaintiff in this action, is a well-regarded scholar, sculptor, and performance artist. Second Amended Complaint ("2d Amend. Compl.") ¶3. On March 3, 2003, Olaniyi and his colleague (now wife) Reena Patel Olaniyi ("Patel Olaniyi") traveled to the Washington, D.C. region to visit the area and conduct research for his art shows and a stage play in development. Declaration of David Olabayo Olaniyi ("Olaniyi Decl.") (April 26, 2007) ¶2. While in Washington, D.C., Olaniyi created a costume for future use in his stage play, utilizing various materials from the region, including miniature sculptures, newspapers, shampoo bottles, empty honey jars, and duct tape in its construction. 2d Amend. Compl. ¶66.

---

[3] The Federal Defendants' Motion contains a flurry of new allegations of fact, on which Olaniyi has not had full and complete discovery. Any reference by Olaniyi to such allegations of fact should not be construed as an adoption or admission of such allegations. Indeed, Olaniyi disputes many, if not all, of the Federal Defendants' new allegations.

While wearing his costume, Olaniyi and Patel Olaniyi visited the United States Capitol Building on March 6, 2003 to tour and conduct research for Olaniyi's stage play.  2d Amend. Compl. ¶¶65-66.

B.    **Arrest In the Capitol Building**

Olaniyi and Patel Olaniyi passed through four separate layers of security, including magnetometers, x-ray machines, explosive detectors, and security dogs as they entered the Capitol Building.  2d Amend. Compl. ¶68.  Olaniyi explained the nature and purpose of his costume to security personnel at each checkpoint and was allowed to proceed further into the Capitol Building after each interaction with security.  2d Amend. Compl. ¶68.  Olaniyi and Patel Olaniyi proceeded to the Crypt to view and take pictures of presidential bust sculptures.  2d Amend. Compl. ¶69.

While touring the Capitol Building, Olaniyi talked to tourists about his stage play, showing them his sculptures and costume.  2d Amend. Compl. ¶69.  Other tourists approached Olaniyi and took pictures with him.  2d Amend. Compl. ¶69.  At approximately 1:17 p.m., Defendant Nutwell and other members of the USCP descended upon Olaniyi.  2d Amend. Compl. ¶70-71.  With weapon drawn and pointed at Olaniyi, Defendant Nutwell approached Olaniyi, grabbed a sculpture mask that Olaniyi was holding in his hand, and threw it to the ground, destroying it.  2d Amend. Compl. ¶70.  Defendant Nutwell handcuffed Olaniyi at gunpoint as other USCP officers handcuffed Patel Olaniyi.  2d Amend. Compl. ¶71.

Once Defendant Nutwell handcuffed Olaniyi in the Crypt of the Capitol Building, Defendant Nutwell's search of Olaniyi's person uncovered the keys to Olaniyi's van.  2d Amend. Compl. ¶73.  Defendants Nutwell and other USCP officers asked Olaniyi whether he had any explosives in his outfit.  2d Amend. Compl. ¶71.  Olaniyi responded promptly to all present that his costume contained no explosives and that nothing would explode.  2d Amend. Compl. ¶71.

Olaniyi added that he was a peaceful artist and that neither he nor Patel Olaniyi had any explosives, either on their person or elsewhere.  2d Amend. Compl. ¶71.  Defendant Nutwell confiscated Olaniyi's keys and, with the assistance of other USCP officers, began a search for Olaniyi's van.  2d Amend. Compl. ¶73.

By this time, approximately thirty or more officers of the USCP, including members of the USCP's Hazardous Devices Unit, had arrived at the scene in the Crypt of the Capitol Building.  2d Amend. Compl. ¶71.  Members of the Hazardous Devices Unit removed Olaniyi's costume and tested it for explosives and other hazardous materials.  2d Amend. Compl. ¶71.  Members of the Hazardous Devices Unit also removed Ms. Patel Olaniyi's costume and conducted similar tests.  2d Amend. Compl. ¶71.  Upon completion of the field tests, the Hazardous Devices Unit determined that "there were no explosives in either the harness or waist band that [Olaniyi and Patel Olaniyi] were wearing."  2d Amend. Compl. ¶71.  Recognizing no further threat, the USCP did not evacuate the House of Representatives.[4]  2d Amend. Compl. ¶71.

Nevertheless, the USCP officers present then officially placed Olaniyi under arrest at 2:45 p.m., almost ninety minutes after his initial detention.  2d Amend. Compl. ¶72.  USCP personnel transferred Olaniyi to the Capitol Hill Police Prisoner Processing Center, where they questioned Olaniyi without an attorney, despite Olaniyi's repeated requests for legal counsel.  2d Amend. Compl. ¶72.  The USCP also employed other techniques, like forcing Olaniyi to stand shoeless in the winter cold in order to isolate, harass, and embarrass the Olaniyi in the hopes that he would provide incriminating information.  2d Amend. Compl. ¶72.

---

[4] The Senate was not in session.

C.    **Search and Seizure of Plaintiff's Van**

By approximately 2:27 p.m., over an hour after Olaniyi had been initially detained but roughly 18 minutes prior to his formal arrest, the USCP began to receive media inquiries about the events in the Crypt.  See Affidavit of Keith R. Wesolowski ("Wesolowski Aff.") (April 27, 2007) ¶10; Recordings of USCP Dispatcher on March 6, 2003 produced to Olaniyi by USCP.[5]  Even though the Federal Defendants had not yet located Olaniyi's van and even though no effort was underway to obtain a warrant to search the van when it was found, the USCP directed its resources to establish a media response center on the Cannon Terrace.  Id.

Slightly before 2:41 p.m., USCP officers located Olaniyi's van on the 300 Block of Third Street, N.E., approximately four blocks from the Capitol Building in the direction of Union Station.  Id.; 2d Amend. Compl. ¶73.  Olaniyi had parked his van on Third Street, N.E. around noon on March 6, shortly before his visit to the Capitol Building.  Olaniyi Decl. ¶6.  As evidenced by a parking ticket received in Arlington, Virginia, Olaniyi's van had been parked in Arlington earlier that morning.  Olaniyi Decl. ¶5, Ex. B.  The registration for Olaniyi's van was current at the time.  Olaniyi Decl. ¶4, Ex. A; see also id. ¶5, Ex. B.

As USCP officers at the van waited for the arrival of members of the USCP Hazardous Devices Unit from the Capitol Building, a K-9 team undertook a preliminary search of the outside of Olaniyi's van.  2d Amend. Compl. ¶73.  The K-9 team did not detect the

---

[5] During the limited discovery following the filing of the First Amended Complaint, the USCP produced to Olaniyi a tape of the radio calls from the Capitol Crypt during Olaniyi's initial detention and arrest on March 6, 2003.  An unknown voice (possibly that of Unit 15) advised USCP that he had "a media inquiry" and it was directed that "a site [be] set up on the Cannon Terrace to answer any of their questions" and to "direct [the media] that way."  Shortly after this transmission, the first evidence of the discovery of Plaintiff's van is broadcast identifying a van in the 300 block of Third Street, N.E., as belonging to the "two individuals, uh, two subjects," presumably which are the Plaintiff and his companion.  Olaniyi is not able to provide the Court with a formal transcription of this tape at this time, considering the tape contains frequent interruptions and is the subject of ongoing discovery issues with the Federal Defendants.

presence of any explosives within the area.  2d Amend. Compl. ¶73.  Even though USCP officers had secured the van and its surrounding location, and even though they had to wait for the arrival of Hazardous Devices Unit personnel before proceeding further, law enforcement officers made no effort to obtain a search warrant.  See 2d Amend. Compl. ¶73.

Hazardous Devices Unit personnel, upon completion of their tests of Olaniyi's and Patel Olaniyi's costumes in the Crypt, arrived at the van and undertook a visual inspection of the van.[6]  USCP and FBI officers found no direct evidence of explosives based on their visual search of the outside of the van.  When USCP and FBI officers tried to look into the van, they were unable to see into the van from any of the rear or side windows because the windows were tinted and equipped with opaque shades that prevent one from seeing into the van.  Olaniyi Decl. ¶3 and ¶6, Ex. C.  Despite having no reason to believe that evidence of criminal activity would be found in the van, the Federal Defendants used Olaniyi's keys to open the van.  2d Amend. Compl. ¶73.  Neither Olaniyi nor Patel Olaniyi consented to a search of the van.  2d Amend. Compl. ¶73.

The Federal Defendants allege that they found no contraband in Olaniyi's van and that they determined the van was safe.  See King Decl. 3.  The Federal Defendants further allege that upon completion of the initial search of Olaniyi's van on Third Street, N.E., Defendant Edmonson of the FBI Joint Terrorism Taskforce took custody of the van and impounded it to conduct a more thorough "inventory search."  See Bracci Decl. 3; King Decl. 3.

During the combined searches and seizure of Olaniyi's van by the USCP and FBI, numerous pieces of Olaniyi's art were damaged or destroyed.  2d Amend. Compl. ¶73.

---

[6] The Federal Defendants allege that Defendants Bracci and King, among others, participated in the examination and testing of Olaniyi's and Patel Olaniyi's costumes in the Crypt, then proceeded to Olaniyi's van.  See Bracci Decl.; King Decl.

Meanwhile, Olaniyi endured abuse and mistreatment at the hands of District of Columbia's employees, agents, and subcontractors during his detention in the District of Columbia Jail. 2d Amend. Compl. ¶¶75-76. From his release from captivity until the dismissal of all criminal charges against him, Olaniyi had to abide by Court orders restricting his travel. 2d Amend. Compl. ¶77. Olaniyi had to make repeated applications to the Court for permission to travel and promote his art. 2d Amend. Compl. ¶77.

## STANDARD OF REVIEW

### A. Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6)).

A motion to dismiss for failure to state a claim can only be granted if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 46 (1957). In considering whether the Plaintiff has stated a claim for which relief can be granted, the Court "must treat the complaint's factual allegations as true and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citations omitted). Indeed, a complaint may be dismissed under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002) (internal quotation marks and citation omitted).

When a party presents and relies upon matters outside the pleading in support of a motion to dismiss, such as declarations by witnesses, the motion to dismiss "shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

**B.**   **Motion for Summary Judgment (Fed. R. Civ. P. 56).**

Summary judgment can be granted only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The D.C. Circuit "has long recognized that a party opposing summary judgment needs a 'reasonable opportunity' to complete discovery before responding to a summary judgment motion and that 'insufficient time or opportunity to engage in discovery' is cause to defer decision on the motion." Khan v. Parsons Global Servs., Ltd., 428 F.3d 1079, 1087 (D.C. Cir. 2005) (citing Martin v. Malhoyt, 830 F.2d 237, 256 (D.C. Cir. 1987)). See also First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988) ("summary judgment is only proper after the plaintiff has been given adequate time for discovery").

Where the non-moving party has received limited or no discovery and the moving party relies upon asserted facts to which the non-moving party would be entitled discovery, the Court cannot in fairness grant summary judgment until the non-moving party has had the opportunity for discovery. Fed. R. Civ. P. 56(f). Similarly, Rule 56(f) provides that a court "may refuse the application for [summary] judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." Fed. R. Civ. P. 56(f).

## ARGUMENT

### POINT I

### FEDERAL DEFENDANTS' MOTION MUST BE DENIED BASED ON COLLATERAL ESTOPPEL AND THE LAW OF THE CASE DOCTRINE

As stated above, Federal Defendant's Motion represents their third motion to dismiss and their second motion for summary judgment in this case. The Federal Defendants' motion to dismiss argument is a frivolous attempt to get the legal equivalent of a second bite at the apple and is a blatant abuse of process. Meanwhile, the Federal Defendants' motion for

summary judgment argument simply reiterates legal arguments made in the previous motions to dismiss, but is supplemented by "declarations" from Federal Defendants.[7]

Such a gross abuse of process should not be tolerated and the Federal Defendants' Motion should not be considered.  Even if considered, the Federal Defendants' Motion should be denied under law of the case doctrine and collateral estoppel.

## A.        Collateral Estoppel and the Law of the Case Doctrine.

Collateral estoppel or issue preclusion "bars subsequent litigation of factual issues even if those issues pertain to different claims in the subsequent litigation." Bazuaye v. U. S., 41 F. Supp. 2d 19, 25 n.8 (D.D.C. 1999).  Under the doctrine of collateral estoppel, "a litigant will be barred from re-litigating an issue in a second preceding if: (1) the issue was "actually litigated" in the first action, after a full and fair opportunity for litigation; (2) the issue was necessarily determined in the first action by a disposition that is sufficiently final, on the merits, and valid; (3) the subsequent litigation is between the same parties or their privies; and (4) there are no special considerations of fairness, relative judicial authority, or changes of law." Burlington Resources Oil & Gas Co. v. United States Dep't of the Interior, 21 F. Supp. 2d 1, 4 (D.D.C. 1998).

Federal Defendants' Motion is barred by collateral estoppel because the arguments they raise were "actually litigated" and ruled upon by this very Court.  For example, in response to Olaniyi's First Amended Complaint, Federal Defendants Nutwell and DePalma filed a motion to dismiss, claiming that they were entitled to qualified immunity and asserting that they had not violated Olaniyi's Constitutional rights.  See generally Motion to Dismiss, Dkt.

---

[7] The Federal Defendants' declarations make new allegations of fact, even though such allegations would have been based on facts that were available to the Federal Defendants on March 6, 2003.  These declarations, therefore, can only be seen as a *post hoc* attempt to revise the record and must be treated as highly suspect.

No. 23 (July 1, 2005). These arguments were fully briefed by both Olaniyi and the Federal Defendants, and on February 17, 2006 this Court ruled upon the motion in a Memorandum Opinion (the "February Opinion"). See generally Olaniyi v. District of Columbia, 416 F. Supp. 2d 43 (D.D.C. 2006).

According to the law of the case doctrine, when a court decides upon a rule of law, "that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). This principle "promotes the finality and efficiency of the judicial process." Christianson, 486 U.S. at 816. Furthermore, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Burlington Ins. Co. v. Okie Dokie, Inc., 439 F. Supp. 2d 124, 132 (D.D.C. 2006) (citing with approval and quoting Virgin Atlantic Airways v. Nat'l Mediation Bd., 856 F.2d 1245, 1255 (2d Cir. 1992). In Burlington Ins. Co., the Court stated that it "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances." 439 F. Supp. 2d at 132.

The Court's decision on the Federal Defendants' arguments was clearly articulated in the February Opinion, in which this Court dismissed Olaniyi's First and Fifth Amendment claims and those Fourth Amendment claims which arose out of the original detention and arrest of Olaniyi in the Capitol Crypt. Olaniyi, 416 F. Supp. 2d at 64. This Court held, however, that the doctrine of qualified immunity does not shield the Federal Defendants from liability to Olaniyi resulting from the illegal search and seizure of Olaniyi's van. Id. at 61. Furthermore, the Court noted that it did, in fact, have personal jurisdiction over the USCP and FBI John Doe Defendants and clearly indicated that the analysis of qualified immunity was to be

applied to all officers of the USCP and the FBI.[8]  Id. at 60 (ruling that "a reasonably competent officer should certainly have known that searching the interior of the van would violate the plaintiff's Fourth Amendment rights").

**B.**      **The Purpose of the Second Amended Complaint was Clear.**

Olaniyi's Second Amended Complaint was filed merely for the purposes of identifying the John Doe Defendants.  The Federal Defendants were well aware of this fact, particularly considering Olaniyi's Notice of Filing, in which Olaniyi explained that "[b]eyond the naming of "John Doe" Defendants, Olaniyi's Second Amended Complaint amends Olaniyi's First Amended Complaint in such a manner as to clearly identify how Olaniyi's claims relate to the newly-named Defendants . . . [and] in no way expands or alters its claims against previously-named Defendants."  See Notice of Filing, Dkt. No. 67 (October 31, 2006) ¶5.  Olaniyi also explained that he was re-alleging the claims dismissed by the Court's February Opinion, for the sole purpose of preserving his appellate rights on those dismissed claims.  Id.

This Court recognized Olaniyi's intent in an Order dated November 10, 2006, (the "November Order").  In the November Order, the Court stated that "[f]or the reasons stated in [the February Opinion], the Court reiterates its dismissal of all claims against the federal defendants, including the newly identified defendants, with the exception of the Fourth Amendment claims arising out of the search of the plaintiff's van.  Olaniyi v. District of Columbia, 417 F. Supp. 2d 43, 51-64 (D.D.C. 2006)."  See November Order, Dkt. No. 69 (November 10, 2006) at 3.

---

[8] The John Doe Defendants, now named, are the ones at issue in the Federal Defendants' Motion to Dismiss.

**C.**   **The Federal Defendants Concede the Application of Collateral Estoppel and the Law of the Case Doctrine.**

The Federal Defendants, themselves, argue that the ruling in the February Opinion should be applied to Olaniyi's Second Amended Complaint based on the law of the case doctrine and collateral estoppel.  See Federal Defendant's Motion at 6 (stating "this Court previously dismissed Plaintiff's First and Fifth Amended claims, as well as his Fourth Amended claim based on his initial detention and search of his person . . .[and] these claims as presented in Plaintiff's Second Amended Complaint are subject to dismissal on grounds of collateral estoppel and the law of the case doctrine").  Olaniyi agrees with the reasoning behind the Federal Defendants' argument, and believes such reasoning must also be equally extended to the Fourth Amendment claim arising from the search and seizure of Olaniyi's van.[9]

**D.**   **The Federal Defendants' Assertion of Collateral Estoppel and the Law of the Case Doctrine Defeats Their Assertion of New Theories and Allegations.**

After Federal Defendants argue for the law of the case doctrine and collateral estoppel to be applied to the claims in the Second Amended Complaint, however, they immediately attempt to re-argue qualified immunity issues with respect to the search and seizure of the van.  In re-litigating qualified immunity in the face of their assertion of collateral estoppel and the law of the case doctrine, the Federal Defendants fail to identify any extraordinary circumstances, special considerations of fairness, or changes of law that merit such an opportunity for a "second bite at the apple."  For example, in their re-argument for qualified immunity, Federal Defendants re-argue that "[e]xigent circumstances existed here, as there was probable cause to believe that the van contained explosives or other hazardous materials and therefore posed an immediate and serious threat to the public."  See Federal Defendants' Motion

---

[9] Olaniyi does not agree, however, with the Federal Defendants identification of those defendants that should be dismissed based on this ruling.  See Federal Defendants' Motion at 7.

at 13.  But as this court is aware, this issue was already clearly dealt with and ruled upon in the

February Opinion.

> The federal defendants, however, had no reason to believe that anyone
> was in grave danger at the time the van was searched.  Both sides agree
> that the federal defendants did not obtain information regarding the van's
> whereabouts until *after* the HDU had tested the plaintiff's costume and
> determine that the plaintiff was not carrying explosive [. . .] and from the
> facts alleged, it is clear that once the search of the plaintiff's person
> revealed no explosives, the officers involved could not reasonably have
> believed that exigent circumstances "support[ed] the need for an
> immediate search" of the plaintiff's van.  *United States v. Chadwick*, 433
> U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

Olaniyi, 416 F.Supp.2d at 60 (emphasis in original).

In remaking the exigent circumstances argument, Federal Defendants rely solely

on the declarations made by the Federal Defendants who participated in the events of March 6,

2003.  For example, Federal Defendants Bracci and King allege that they observed containers in

the rear of Olaniyi's van during their visual inspection of it on Third Street, N.E.  Federal

Defendants' Motion at 11.  Olaniyi adamantly disputes this allegation, given that shades blocked

the Federal Defendants' view into the van.  Even more vexatious is the fact that Federal

Defendants attempt to re-argue the Court's prior ruling by developing *post hoc* "theories"  in an

effort to justify the Federal Defendants actions, such as the dubious "dry-run" theory.

In a similar fashion, the Federal Defendants use the same declarations and *post*

*hoc* theories to argue that the search of the van was justified under the so-called "automobile

exception" to the warrant requirement of the Fourth Amendment.  See Federal Defendants'

Motion at 16-17.   Again, the February Opinion clearly dealt with this issue:

> [T]he federal defendants lack probable cause to believe that the plaintiff's
> van contained any explosives once no explosives were found on the
> plaintiff's person, and thus the absence of exigent circumstances is fatal to
> any qualified immunity claims as to the warrantless search of the vehicle.
> Neither side has made any factual representation which, if true, would
> suggest that the federal defendants had reasonable basis for searching the

> plaintiff's van when they did, nor do the defendants explain why the investigation of the plaintiff needed to continue after it was determined that he was unarmed.  The federal defendants had no reason to suspect that the plaintiff was carrying explosives on his person once the HDU completed its testing of the plaintiff's costume, and nothing occurred thereafter that gave the USCP or the FBI defendants cause to believe that the plaintiff's vehicle contained explosives.

Olaniyi, 416 F. Supp. 2d at 60.  With their "automobile exception" argument, the Federal Defendants are again attempting to bring in declarations purporting to provide new facts and to identify new theories of the case that have already been decided in the past, and in doing so, creating increased costs of litigation and time for all parties involved.  It should go without saying that the Federal Defendants, in their attempt to do an end-run around the February Opinion, cannot get around the fact that the search of the van occurred well after Olaniyi had been detained in the Capitol Building and well after the Hazardous Devises Unit had determined that Olaniyi did not have explosives, or any hazardous materials on his person.  The Federal Defendants' Motion should be denied based on collateral estoppel and the law of the case doctrine.

## POINT II

### THE FEDERAL DEFENDANTS' RE-ARGUMENT OF QUALIFIED IMMUNITY REMAINS UNAVAILING

In their Motion, the Federal Defendants have attempted an end-run around the Court's prior ruling in the case by making creative, *post hoc* arguments that have no support in the limited written discovery provided to Olaniyi.  At its root, the Federal Defendants' Motion asks the Court to reverse itself.  Apparently, the Federal Defendants believe that if they keep coming up with different allegations of fact, eventually this Court will give in.  Olaniyi, however, should not be forced to re-litigate issues that have previously been decided by this Court.

The Federal Defendants' new stories are absurd, and, when examined logically, nonsensical.  Moreover, *none* of the stories alleged by the Federal Defendants are supported by the written discovery Olaniyi has received thus far.  While Olaniyi does not believe he needs to dignify these stories with a response, he offers cursory treatment to the central elements of the Motion in order to aid the Court in recognizing the scurrilous nature of these allegations.

## A.    There was No Justification for the Warrantless Search and Seizure of Olaniyi's Van on Third Street, N.E.

### 1.    The Federal Defendants Should Have Obtained a Warrant.

There is simply no excuse plausible or possible to explain why the Federal Defendants undertook the search, seizure, and impoundment of Olaniyi's van without a warrant. Obtaining a warrant from either this Court or the D.C. Superior Court is not a difficult task when probable cause exists.  It would have been especially simple for the USCP to have obtained a warrant on March 6, 2003 when one considers that the Federal Courthouse and D.C. Superior Court are just a matter of blocks away from the Capitol Building and the events in the Crypt occurred during the normal business hours on a weekday.  Indeed, in such cases, a warrant can often be obtained within, at most, one hour.  The Federal Defendants simply had to fill out an appropriate affidavit, appear before a magistrate, and state their probable cause.  There is simply no explanation for why the Federal Defendants did not seek a warrant before searching Olaniyi's van, except their fear that a court, considering the evidence, would have declined to issue such a warrant.

Prior to the search of Olaniyi's van, the Federal Defendants had Olaniyi in custody and had determined that he had no explosives on his person.  According to their new allegations, the Federal Defendants had cleared an area around the van, and established a command post on the scene to supervise the search and seizure of the van.  Recordings of radio

dispatches further indicate that the USCP established a media relations station at the Capitol to address media inquiries. Given these facts – the detention of Olaniyi with no evidence of explosives, time to establish multiple command posts, including one for media inquiries, and time to establish a safety perimeter around the van, it is inexplicable as to why there was not time to obtain a warrant.

2.    **Any Probable Cause Evaporated Long Before Federal Defendants Searched and Seized Plaintiff's Van.**

The fundamental and fatal flaw throughout the Federal Defendants' Motion, and, indeed, throughout the administration of their case is their failure to recognize that there was simply no probable cause to search and seize Plaintiff's van. Once the USCP had secured and detained Olaniyi and his companion, learned that there were no explosives on either person, and failed detect explosives from an external inspection of the van, the Federal Defendants had no probable cause to search and seize Olaniyi's van. As the Court held, "[h]ere, the federal defendants lacked probable cause to believe that the plaintiff's van contained any explosives once no explosives were found on the plaintiff's person, and thus the absence of exigent circumstances is fatal to any qualified immunity claim as to the warrantless search of the vehicle." Olaniyi, 416 F. Supp. 2d at 60.

At the time the Federal Defendants searched Olaniyi's van, Olaniyi was already in custody. As the United States Supreme Court noted, a warrantless search of a suspect's vehicle is not justified when the suspect is already in police custody. Preston v. United States, 376 U.S. 364, 367-68 (1964). Moreover, this Court also noted that "once [the defendant] was arrested and handcuffed, there [are] no longer any exigent circumstances that necessitate[]" a warrantless search. United States v. Maiden, 870 F.Supp. 359, 361 (D.D.C. 1994).

Accordingly, the Federal Defendants can articulate no probable cause to support their search, seizure and impoundment of Olaniyi's van.

**3.      There were No Exigent Circumstances.**

The Federal Defendants proffer a flurry of theories and allegations in an attempt to resurrect their previously-denied argument that exigent circumstances justified the search of Olaniyi's van.  Aside from the fact that the theories and allegations are without support from the written discovery provided to Olaniyi thus far, each such theory offered by the Federal Defendants does not make logical sense.  As such, the Court should find, as it did before, that there were no exigent circumstances.

**a.      Neutralizing Olaniyi and Patel Olaniyi, Discovering No Explosives on their Persons, and Securing the Van on Third Street, N.E. Ended Exigent Circumstances.**

It is undisputed that the search and seizure of the Olaniyi's van occurred *after* Olaniyi and his companion had been searched and seized by the USCP.  Bomb technicians, responding to the Crypt of the Capitol Building had found no explosives on either Olaniyi or his companion.  The Court concluded that any exigencies ceased when Olaniyi was found to have no explosives on his person.  See Olaniyi 416 F. Supp. 2d at 60.  This Court has already held, as noted before, that exigent circumstances cease once the suspect is handcuffed and in police custody.  Maiden, 870 F.Supp. at 361.

**b.      Establishment of a Media Relations Post Belies Claim of Exigent Circumstances.**

The USCP established a media relations post and program *before* the search and seizure of Olaniyi's van.  See Wesolowski Aff. ¶10; Recordings of USCP Dispatcher on March 6, 2003 produced to Olaniyi by USCP.  In fact, the USCP established such a media relations post *before* they discovered Olaniyi's van.  Id.  If the USCP had adequate time and resources to

establish a media relations post and program, then there should have also been adequate time for the individual law enforcement officers to obtain a search warrant for Olaniyi's van. If the Capitol Building grounds were safe enough to host and address the media, they were safe enough to wait for the warrant before searching Olaniyi's van. Furthermore, the House of Representatives was never evacuated, indicating that the USCP did not believe that a serious or immediate threat existed after Olaniyi had been detained and arrested.

      **c.**      **The "Dry Run" Story is New, Unsubstantiated, and Absurd.**

           **i.**      **The Story is New and Unsubstantiated by the Record.**

The Federal Defendants' newly-concocted story that terrorists undertake dry runs, and that such a theory provided exigent circumstances, is bizarre and appears to be yet another creative, *post hoc* attempt to modify the record. Apart from the *prima facie* absurdity of this "dry run" notion (raised now for the first time in over two years of litigation and for the first time since the incident, four years ago), there is no mention in any USCP, FBI, or other law enforcement report indicating that any law enforcement officer had contemplated that Olaniyi was part of a "dry run" scenario. Indeed, in their first attempt at the *post hoc* establishment of probable cause or exigent circumstances, the Federal Defendants did not even attempt to make a "dry run" argument, perhaps noting the complete lack of evidence to support such a claim. If the Federal Defendants had evidence to advance a "dry run" theory in good faith, they should have done so prior to the Court's February Opinion.

           **ii.**      **The "Dry Run" Story is Absurd and Does Not Make Logical Sense.**

The idea that Olaniyi may have been conducting a dry run, and, therefore, exigent circumstances existed for the search and seizure of his van, defies any sense of logic. Assuming, *arguendo*, that Olaniyi was conducting a dry run, it makes no sense for him to have left

explosives (or other dangerous materials or contraband) in his van. A terrorist's entire purpose behind conducting "dry runs" is to determine whether they will be able to effect their plot. As such, a potential terrorist would use the dry run to determine whether he would be subject to scrutiny by law enforcement forces.

The dry run scenario assumes that a terrorist would interact with security or law enforcement personnel. If challenged during a dry run, the terrorist would clearly want no evidence of their criminal intent to be discovered. For example, they would not leave explosives in a van which would be easily traceable to them. (Indeed, the contents of the van were immediately traceable to the Plaintiff by the Federal Defendants – at least one Federal Defendant confiscated Plaintiff's keys and used them to access the van.) Thus, it would be illogical to assume that explosives would be found in such a van, as the terrorist would keep them elsewhere to avoid being linked to them or having them seized. Therefore, the "dry run" theory does not support an exigent circumstances search and seizure.

The Federal Defendants' sole argument in support of the "dry run" story is that some mythical co-conspirator, of whose existence the Federal Defendants had not one shred of evidence, would cause Olaniyi's van to be remotely detonated: "They were concerned that unknown third parties may have been involved and may have been able to remotely trigger a device inside the vehicle." Federal Defendants' Motion at 15. Federal Defendants offer no support for why they 'thought' that there might be this imagined persona; they can cite no evidence recovered from Olaniyi to suggest that he was a terrorist, much less to suggest that there was some wide-ranging or localized conspiracy. Simply having a hunch, or being concerned, cannot justify the search and seizure of a person's property.

4.    **The Federal Defendants' Reliance on the "Automobile Exception" is Without Merit.**

The Federal Defendants' reliance on the automobile exception to the warrant requirement is similarly unavailing.  As this Court has held, "the protections of the Fourth Amendment do not dissipate at the automobile door."  United States v. Dubose, 2006 WL 1876999 (D.D.C 2006) (citing Coolidge v. New Hampshire, 403 U.S. 443, 461 (1971) (stating that "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears")).

As this Court makes clear – and the Federal Defendants concede – a search may be made of a vehicle "provided the searching authorities have probable cause to believe the vehicle contained contraband or evidence of a crime." United States v. Duran, 884 F. Supp. 552, 555 (1995) (internal citations and quotation marks omitted).  Yet, the circumstances on March 6, 2003 were in stark contrast with those in Duran.  The Federal Defendants had already determined that Olaniyi had no explosives on his person, whereas the defendant in Duran had fired shots at the White House.  As discussed by the Court in its' February Opinion, and noted here, there was no probable cause for the search of Olaniyi's van.  See Olaniyi, 416 F. Supp. 2d at 60.

Accordingly, the automobile exception to the warrant requirement is not applicable to the Federal Defendants in this case.

5.    **Some of the "Facts" Alleged by the Federal Defendants in their Declarations are Inaccurate.**

Notwithstanding the fact that the Federal Defendants can offer no justification for the warrantless search of his van, at least two factual allegations made by the Federal Defendants are wholly unsupported by, and indeed are contrary to, the evidence in this case.  These inaccuracies, or possibly fabrications, highlight the pattern of factually inaccurate representations made by the Federal Defendants.

a.    **The Plaintiff's Van Was Properly Registered; a Simple Search of Law Enforcement Databases Would have Confirmed Such Fact; and Even Expired Registration Does Not Provide Probable Cause for a Search and Seizure.**

The Federal Defendants rely, in part, on an assertion that the registration for Olaniyi's van had expired.  Federal Defendants' Motion at 13 (stating that the van had "expired out of state tags").  An expired registration does not give rise to probable cause for the search, seizure, impoundment, and full search inventory by the USCP and FBI.  See Illinois v. Cabelles, 543 U.S. 405, 407 (2005) (wherein the Supreme Court stated that a "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful when it is prolonged beyond the time reasonably required to complete that mission").  It is unimaginable that the Supreme Court would endorse a search, seizure, and impoundment of a person's van merely because his vehicle registration had expired.  It is absurd and ridiculous to accept the Federal Defendants' position that federal law enforcement officers have *carte blanche* to search unoccupied vehicles merely because the state registration is expired.  Such an argument would fly in the face of over 200 years of Constitutional jurisprudence.

In this case, however, the van *was* properly registered.  Attached as Exhibit A of Olaniyi's Declaration are copies of the van's registration, which expire on February 28, 2003 and February 28, 2004, respectively.  Olaniyi Decl. at Ex. A.  Thus, Olaniyi's van was registered on March 6, 2003.  Moreover, Olaniyi had received a parking ticket on March 6, 2003 (a copy of which is attached as Exhibit B of Olaniyi's declaration).[10]  The ticket, issued just hours before the illegal search and seizure of the van by the Federal Defendants, fails to note *any* deficiency in

---

[10] Interestingly, a copy of this parking ticket was discovered, photographed, and cataloged by the Federal Defendants during the illegal inventory search and seizure of Olaniyi's van.  This parking ticket also demonstrates that Olaniyi's van was parked in Arlington County, Virginia, on the morning of March 6, 2003.  Thus, it would not have been possible for the van to have been parked in the same place for several days, as the Federal Defendants' allege a witness stated.  Motion at 11.  Olaniyi notes that no statement by any such witness has been produced during discovery thus far.

the registration of the van; thus, it is presumable that the issuing law enforcement officer found the registration status of the van to be valid.  See Olaniyi Decl. at Ex. B.  Even if the van was not displaying showing the correct 'year' stickers on its license plate, a simple and routine search of the van's license plate numbers in the appropriate law enforcement database would have revealed that the van was properly and currently registered.[11]

### b.    Window Shades Prevented the Federal Defendants' from Seeing into Olaniyi's van.

The Federal Defendants assert repeatedly, both in their Motion and their individual declarations, that "the officers had seen large containers in the rear of the van that were covered by blankets and clothing."  See e.g., Federal Defendants' Motion at 11.  Simply put, no Federal Defendant could have seen into the van.

The van was equipped with opaque window shades which had been drawn by Olaniyi to prevent passersby from looking into the van.  Olaniyi Decl. ¶ 3.  Olaniyi, driving a new van with expensive artwork and equipment, such as televisions, sought to prevent would-be thieves from spying into his vehicle.  Olaniyi had drawn the shades on the side and rear windows of the van, leaving only the windows adjacent to the driver and passenger and windshield unblocked.  Olaniyi Decl. ¶ 6, Ex. C.  As the FBI's and Federal Defendants' own photos show, the shades were clearly drawn on the rear and side windows, making it impossible for anyone, including the Federal Defendants, to see anything inside the van.  Olaniyi Decl. ¶ 6, Ex. C.  Olaniyi can only conclude, that the declarations of Defendants Bracci and King are nothing more than creative, post hoc attempts to modify the record in this matter.

---

[11] Any argument by Federal Defendants that they lacked time to make such a search of a database is simply without merit.  As noted above, the USCP had time to establish a media relations post; clearly, there was sufficient time to conduct a basic search.

**B.    The Subsequent Seizure, Impoundment and Inventory Search were Unconstitutional.**

  The Federal Defendants argue that the inventory search conducted by certain members of the FBI was proper because there had been probable cause to impound it, or, alternatively, because of some "community caretaking" function.  Federal Defendants' Motion at 24.  The Federal Defendants' arguments in this regard are, once again, without merit.

  **1.    The Inventory Search was Unconstitutional as there was no Probable Cause for the Seizure of Olaniyi's Van.**

  As the Federal Defendants concede, lawful possession of a vehicle is a threshold requirement to conducting a lawful inventory search.  Federal Defendants' Motion at 22.  In this case, however, the Federal Defendants were not in lawful possession of the vehicle because they had no probable cause to search it and/or seize it.  Olaniyi, 416 F. Supp. 2d at 60 ("Here, the federal defendants lacked probable cause to believe that the plaintiff's van contained any explosives...).  Thus, the inventory search was illegal as there was no probable cause for the FBI to have seized the van in the first instance.

  As the Supreme Court has made clear, "[a]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."  Florida v. Wells, 495 U.S. 1, 4 (1990) (quoted in United States v. Tueller, 349 F.3d 1239, 1243 (2003)).  In the present case, the FBI conducted such a rummaging search, seeking incriminating evidence in order to justify their arrest and detention of Olaniyi.[12]  In the course of this inventory search, the Federal Defendants broke or destroyed pieces of Olaniyi's artwork.  "Excessive or unnecessary destruction of property" can render police conduct unreasonable under the Fourth Amendment.  Tueller, 349 F.3d at 1245 (quoting United States v. Ramirez, 523 U.S. 65, 71 (1998)).

---

[12] In his Second Amended Complaint, Olaniyi alleged damages for all searches and seizures of his van and the property therein.  See 2d Amend. Compl. ¶ 98.  Olaniyi includes the unlawful inventory search as part of the broader search and seizure of his van.

2.      **The Federal Defendants' Caretaking Argument is both Inapplicable and Absurd.**

        a.      **The Caretaking Argument is Evidence of the Federal Defendants' Inability to Otherwise Justify their Search and Seizure of Olaniyi's Van.**

The Federal Defendants' alternative argument that some "community caretaking" function permitted the impoundment of Olaniyi's van is nothing more than an attempt to convince the Court that the Federal Defendants acted legally.  The Federal Defendants are, disingenuously, seeking to convince the Court that they sought to "protect [the van] and its contents from theft or vandalism" while meanwhile alleging that they believed that Olaniyi's van potentially contained explosives.  Federal Defendants' Motion at 27.  Their argument is both absurd and laughable, as they ask Olaniyi and the Court to believe that they were seeking to protect his property after violating his Constitutional rights.

The Federal Defendants' offer the case of <u>South Dakota v. Opperman</u>, 428 U.S. 370 (1976), in support of their argument that a "caretaking" function would somehow justify their otherwise unconstitutional inventory search and seizure of Olaniyi's van.  The present matter, however, is easily distinguishable from <u>Opperman</u>, as the defendant's vehicle in that case had been impounded for accumulation of parking violations, and, thus, the local authorities were in *lawful* possession of the vehicle.  In the present case, the Federal Defendants were in *unlawful* possession of the Olaniyi's van, as they had searched and seized it without a warrant, without probable cause, and without exigent circumstances.

The Federal Defendants do not even attempt to buttress their argument with a citation to the more than 100 pages of exhibits and declarations attached to their Motion.  Not one officer cited a need to protect Olaniyi's property as the rationale for seizing the van, searching it, towing it away, and taking an inventory of it.  Rather, it is clear both from their declarations and reports, that the Federal Defendants acted illegally to attempt to obtain *some*

*shred of evidence* that Olaniyi had committed a crime in order to somehow justify their arrest and seizure of his person. The Court should not fall prey to such a baseless and bizarre argument.

> **b.    The Federal Defendants' Vain Grasp at a Community Caretaking Standard is Belied by the Seizure of the Van by the FBI Joint Terrorism Task Force rather than the Metropolitan Police Department.**

*Even if* the community caretaking "exception" were somehow applicable, it would have been the province of the Metropolitan Police and *not* that of the Joint Terrorism Taskforce to take possession of the van. It makes no logical sense that the FBI Joint Terrorism Taskforce would need to intervene in community policing. As the Federal Defendants' declarations make clear, their reason for impounding the van was to find some evidence of criminal conduct by Olaniyi and not to exercise some caretaking function.

> **3.    Even The Illegitimate Search of the Van Failed to Provide Probable Cause to Justify Impounding Olaniyi's Van.**

After the Federal Defendants conducted an illegal search and seizure of Olaniyi's van and the artwork contained therein, there was no still basis to justify the impoundment of the vehicle. No evidence of any explosives in or any other criminal contraband was located within the van. Indeed, Federal Defendants cannot point to *anything* that specifically justified the impoundment of the van. Accordingly, the impoundment and inventory search were a further exacerbation of the Federal Defendants' violation of Olaniyi's Fourth Amendment rights

**C.    <u>Plaintiff Should be Able to Recover Damages for the Destruction of His Property by the Federal Defendants in the Course of Their Illegal Search.</u>**

The Federal Defendants attempt to argue that Olaniyi should not be able to recover damages for the destruction of his artwork by the Federal Defendants. Aside from the fact that this section of the Federal Defendants' Motion is unclear and appears to be nothing

more than an attack against the very premise of <u>Bivens</u> actions, it is beyond absurd to suggest that Olaniyi is not entitled to damages stemming from the Fourth Amendment violation itself.

As the Court noted, this case is brought under the Supreme Court's holding in <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 397 (1971), which held that individuals may recover money damages for constitutional violations from individual officers.  As cited in <u>Bivens</u>, and stressed by Chief Justice Marshall, "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." <u>Marbury v. Madison</u>, 1 Cranch 137, 163 (1803). Thus, Olaniyi must be able to avail himself of the laws and recover damages for the injury done to him by the Federal Defendants. "That damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials should hardly seem a surprising proposition." <u>Id.</u>

The Federal Defendants willfully and wantonly searched Olaniyi's van without a warrant and without probable cause.  During the course of their search, they destroyed many pieces of Olaniyi's artwork.  This destruction stems directly from the search and seizure of Olaniyi's van, and, arguably, is another illegal search and seizure – by destroying the artwork, the Federal Defendants illegally seized it from Olaniyi.  Indeed, the destruction of one's property is itself considered a violation of the Fourth Amendment.   <u>See</u> <u>Tueller</u>, 349 F.3d at 1245 ("'Excessive or unnecessary destruction of property'" can render police conduct unreasonable under the Fourth Amendment." (<u>quoting</u> <u>United States v. Ramirez</u>, 523 U.S. 65, 71 (1998)).

Simple logic and black letter law dictate that Olaniyi should be able to recover damages from the individual officers *whose illegal search caused the damage.*

**POINT III**

**OLANIYI'S CLAIMS AGAINST THE NOW-IDENTIFIED
JOHN DOE DEFENDANTS ARE NOT BARRED BY THE
STATUTE OF LIMITATIONS**

Olaniyi made every attempt to identify all John Doe Defendants as quickly as possible and within the Court's prescribed deadlines, despite the Federal Defendants' counsel's frequent and incessant requests for extensions regarding discovery responses.   Furthermore, Olaniyi's identification of the Federal Defendants and his service of process thereon has already been held to be timely in the November Order where "the Court allowed the plaintiff until October 31, 2006, to effect this identification and service."  November Order (internal citations omitted) at 2.  The Court also clearly indicated that the substitution of the John Doe Defendants would properly relate back to the original complaint.

> Moreover, it appears clear that any amendment of the complaint substituting the names of the John Doe defendants would properly relate back to the filing of the original complaint.  See Fludd v. U.S. Secret Serv., 102 F.R.D. 803, 805 (D.D.C. 1984) (allowing the relation back of a plaintiff's identification of John Doe defendants under Rule 15(c) where (1) "[t]he original complaint described with specificity the incident involved;" (2) the John Doe defendants were government agents; and (3) the government counsel was timely served with the original complaint); see also Pope v. Bond 641 F. Supp. 489, 495 (D.D.C. 1986) (interpreting Rule 15(c) in accordance with Fludd); Jackson v. District of Columbia, Civ. No. 85-1339, 1987 WL 16332, at *2 (D.D.C. Aug. 21, 1987) (same).  The Court will thus permit the plaintiff to file his second amended complaint in this matter.

November Order at 2 (footnote omitted).

As in Fludd, Olaniyi's original complaint described with specificity the March 6, 2003 events, the now-identified Federal Defendants, formerly John Doe defendants were government agents; and the Federal Defendants' counsel, Ms. Beverly Russell, was timely served with the original complaint.  Accordingly, the Federal Defendants' arguments concerning the statute of limitations should be denied.

-28-

Moreover, in making this argument, Federal Defendants are again abusing the judicial process in attempting to re-argue an issue that has already been decided and are clearly seeking to profit from their obstructionist and abusive discovery tactics which consistently thwarted Olaniyi's access to full, fair, and meaningful discovery.  Furthermore, as stated above, Federal Defendants' counsel is representing all USCP and FBI agents.   Although Federal Defendants' counsel neither assisted Olaniyi in locating defendants for service purposes, nor in identifying the Federal Defendants involved in the search of the van, to the extent that these defendants should have been on notice as to Olaniyi's intent and Federal Defendants' counsel could have provided such information, there is no prejudice to any of the defendants involved here.

## POINT IV

### FEDERAL DEFENDANTS' SUMMARY JUDGMENT MOTION IS PREMATURE

To the extent that the Federal Defendants argue implicitly in their motion for summary judgment that all facts surrounding the remaining Fourth Amendment claim are not in dispute, Olaniyi strongly objects.

Summary judgment "is premised on the notion that parties will have had 'adequate time for discovery' to establish whether a genuine issue of material facts exists." Breen v. Peters, 474 F. Supp. 2d 1, 7 (D.D.C. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  See also, Anderson v. Liberty Lobby, 477 U.S. 242, 257 (stating that plaintiff must have "a full opportunity to conduct discovery"); Paquin v. Fed. Nat'l Mortg. Ass'n, 119 F.3d 23, 28 (D.C.Cir. 1997) (reversing district court's grant of summary judgment as premature because it declined to permit additional discovery sought by an ADEA plaintiff to develop facts relevant to defendant's summary judgment motion).  Often, summary judgment motions are

"premature until all discovery has been completed." <u>City of Rome v. United States</u>, 450 F. Supp. 378, 384 (D.D.C. 1978).

The Federal Defendants have attempted to identify "new" evidence, to the extent that this Court considers the declarations evidence, that they argue is relevant to the remaining claims. Many of the declarations submitted by the Federal Defendants contain information that Olaniyi has never seen before. For example, the "dry run" theory that the Federal Defendants advance as a factor used in determining whether to search Olaniyi's van was not included in any of the reports that were provided to Olaniyi during the limited discovery he received from the USCP. Furthermore, Olaniyi has not had the opportunity to depose the Federal Defendants whose statements included such allegations. <u>See</u> Wesolowski Aff. To the extent that these allegations would even be able to justify the Federal Defendants unreasonable and outrageous behavior with respect to the warrantless search and seizure of Olaniyi's van, the allegations are in dispute, causing the motion for summary judgment to be premature under the Federal Rule of Civil Procedure 56(f). Olaniyi must be provided with additional discovery time, in order to fully challenge the allegations of fact made by Federal Defendants in their Motion.

Thus, in the interests of justice and to provide Olaniyi with the opportunity to obtain meaningful discovery from the Federal Defendants in order to more fully understand and challenge their new allegations, Federal Defendants' Motion must be denied. <u>See</u> <u>Barnes v. District of Columbia</u>, ___ F. Supp. 2d ___, 2007 WL 896282, *3 (D.D.C.) (2007) (stating that the general rule that "decision by summary judgment is disfavored when additional development of facts might illuminate the issues of law requiring decision." (<u>citing</u> <u>Nixon v. Freeman</u>, 670 F.2d 346, 362 (D.C.Cir.1982)); <u>see also</u>, Fed. R. Civ. P. 56 (f).

## **CONCLUSION**

WHEREFORE, the Plaintiff respectfully requests that the Court deny the Federal

Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, in its entirety.

Dated:  April 27, 2007

Respectfully submitted,

/s/ Keith R. Wesolowski

_____

David F. Williams (Bar No. 298380)
Jennafer B. Neufeld (Bar No. 489233)
Keith R. Wesolowski (Bar No. 494415)
CADWALADER, WICKERSHAM & TAFT LLP
1201 F. Street, NW
Washington, DC  20004
Tel:  202 862 2400
Fax:  202 862 2200

*Counsel for Plaintiff David Olabayo Olaniyi*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 27, 2007, a copy of the foregoing was served on the following by the Court's Electronic Filing System:

Beverly M. Russell
Assistant United States Attorney
United States Attorney's Office
  for the District of Columbia
555 Fourth Street, N.W., Room E-4915
Washington, D.C.  20530

Melvin W. Bolden, Jr.
Senior Assistant Attorney General
  for the District of Columbia
Office of the Attorney General
441 Fourth St., N.W., Sixth Floor South
Washington, D.C.  20001

/s/ Jennafer B. Neufeld
_____

CADWALADER, WICKERSHAM & TAFT LLP
1201 F Street, NW
Washington, DC  20004
Tel:  202 862 2200
Fax:  202 862 2400

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

DAVID OLABAYO OLANIYI,

                        Plaintiff,

           -against-

DISTRICT OF COLUMBIA, ET AL.,

                        Defendant.

Civil No. 05-00455 (RBW)

---

**PLAINTIFF'S STATEMENT OF MATERIAL ISSUES IN DISPUTE**

        Pursuant to Local Rule 7(h), Plaintiff David Olabayo Olaniyi ("Olaniyi") hereby submits the following statement of material facts as to which Olaniyi contends there exist genuine disputes, to accompany Olaniyi's Opposition to the Federal Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment (the Federal Defendants' "Motion").

        1.     Olaniyi has not had full and complete discovery from the Federal Defendants.  Furthermore, Olaniyi has had no opportunity to challenge the assertions made in the assorted declarations and exhibits filed by the Federal Defendants with their Motion.  Olaniyi, therefore, is forced to dispute generally any facts alleged in such declarations and exhibits.

        2.     Olaniyi disputes Paragraph 1 of the Federal Defendants' Statement of Material Facts as to which there is no Genuine Dispute (the "Federal Defendants' Statement") to the extent that it insinuates that Olaniyi wore his costume to provoke an entanglement with Capitol Building security.  Olaniyi passed through four layers of security while touring the Capitol Building and interacted cordially with security personnel.  Second Amended Complaint ("2d Amend. Compl.") ¶68.

3.      Olaniyi disputes Paragraph 2 of the Federal Defendants' Statement to the extent that it suggests that Olaniyi dropped a hand-carved mask sculpture when approached by Defendant Nutwell.  Defendant Nutwell grabbed the sculpture and shattered it on the ground.  2d Amend. Compl. ¶70.

4.      Olaniyi disputes Paragraph 4 of the Federal Defendants' Statement to the extent that it suggests Olaniyi's van was parked "within close proximity" to the Capitol Building. Olaniyi's van was parked approximately four blocks away from the Capitol Building and, in fact, was closer to Union Station than the Capitol Building.  2d Amend. Compl. ¶73; Olaniyi Decl. ¶6.

5.      Olaniyi disputes Paragraph 5 of the Federal Defendants' Statement to the extent that it suggests Olaniyi was only detained for one night.  Olaniyi was detained from March 6, 2003 until March 10, 2003, during which time he was abused by agents and employees of the District of Columbia in the District of Columbia Jail.  2d Amend. Compl. ¶74-77.

6.      Olaniyi disputes Paragraph 6 of the Federal Defendants' Statement. USCP Defendants Bracci, DePalma, King, Nutwell, and Udell and FBI Defendants Cejpeck, Chinchilla, Collins-Morton, Menold, Rankin, and Sidener searched Olaniyi's van.  2d Amend. Compl. ¶97-98.  USCP Defendants DePalma, Dineen, Malloy, Meikrantz, Shark, and Udell and FBI Defendants Arseni, Edmonson, Finnerty, Gardner, Garten, Godbold, and Vienna directed, supervised, participated in, or otherwise assisted with the search and seizure of Olaniyi's van. Id.; see also Declaration of John Shark ("Shark Decl.") 1.[1]

7.      Olaniyi disputes Paragraph 7 of the Federal Defendants' Statement. USCP Defendants Bracci, DePalma, King, Nutwell, and Udell and FBI Defendants Cejpeck,

---

[1] In citing the Declaration of Defendant Shark, Olaniyi does not admit the veracity of any of the allegations of fact offered by the Federal Defendants in the attachments and exhibits to their Motion. Olaniyi has not had full and fair discovery to assess the Federal Defendants' allegations.

Chinchilla, Collins-Morton, Menold, Rankin, and Sidener searched Olaniyi's van.  2d Amend. Compl. ¶97-98.  USCP Defendants DePalma, Dineen, Malloy, Meikrantz, Shark, and Udell and FBI Defendants Arseni, Edmonson, Finnerty, Gardner, Garten, Godbold, and Vienna directed, supervised, participated in, or otherwise assisted with the search and seizure of Olaniyi's van.  2d Amend. Compl. ¶¶74-77; see also Shark Decl. 1.

8.     Olaniyi disputes Paragraph 8 of the Federal Defendants' Statement to the extent it asserts that Olaniyi's van had "expired out of state tags."  Olaniyi's van was properly registered in the State of Michigan.  Declaration of David Olabayo Olaniyi ("Olaniyi Decl.") ¶4, Ex. A; see also Olaniyi Decl. ¶5, Ex. B.  Olaniyi further disputes Paragraph 8 of the Federal Defendants' Statement to the extent it suggests that witnesses informed the Federal Defendants that Olaniyi's van had been parked on Third Street, N.E. "for several days."  Olaniyi disputes that Federal Defendants' received such witness statements.  Olaniyi parked his van on Third Street, N.E. on March 6, 2003 only, and in fact received a parking ticket in Arlington, Virginia on the morning of March 6, 2003.  Olaniyi Decl. ¶5, Ex. B.  Olaniyi further disputes Paragraph 8 of the Federal Defendants' Statement to the extent that it suggests the Federal Defendants observed containers in the rear of the van.  Olaniyi's artwork was carefully stored in the back of Olaniyi's van, and would not have been visible from outside the van because of drawn shades covering the rear and side windows of the van.  Olaniyi Decl. ¶3 and ¶6, Ex. C.

9.     Olaniyi disputes Paragraph 11 of the Federal Defendants' Statement to the extent it asserts that Defendants Bracci and King confirmed the presence of covered containers in the back of Olaniyi's van.  Olaniyi's van was equipped with opaque window shades which were drawn and blocking Defendants Bracci's and King's view into the back of the van.  Olaniyi Decl. ¶3 and ¶6, Ex. C.  Olaniyi further disputes that Defendants Bracci and King observed three "large" unmarked glass jars of unknown liquid.

10.     Olaniyi disputes Paragraph 12 of the Federal Defendants' Statement. Olaniyi requires discovery from the Federal Defendants in order to assess the veracity of the Federal Defendants' assertions.

11.     It is in dispute who broke or destroyed Olaniyi's artwork and how during the search and seizure of the van.  See, e.g., 2d Amend. Compl. ¶73; Motion at 28.

12.     It is in dispute whether Defendant Nutwell and/or other Federal Defendants took possession of the keys to Olaniyi's van after detaining him in the Crypt of the Capital.  See, e.g., Olaniyi Decl. ¶8; Nutwell Decl. ¶4.

Dated:  April 27, 2007

                                        Respectfully submitted,

                                        /s/ Keith R. Wesolowski

                                        _____
                                        David F. Williams (Bar No. 298380)
                                        Jennafer B. Neufeld (Bar No. 489233)
                                        Keith R. Wesolowski (Bar No. 494415)
                                        CADWALADER, WICKERSHAM & TAFT LLP
                                        1201 F. Street, NW
                                        Washington, DC  20004
                                        Tel:  202 862 2400
                                        Fax:  202 862 2200

                                        *Counsel for Plaintiff David Olabayo Olaniyi*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

DAVID OLABAYO OLANIYI,

                              Plaintiff,

              -against-                                  Civil No. 05-00455 (RBW)

DISTRICT OF COLUMBIA, ET AL.,

                              Defendant.

---

## DECLARATION OF DAVID OLABAYO OLANIYI

COMES NOW David Olabayo Olaniyi and declares and states as follows:

1.     I am David Olabayo Olaniyi, the Plaintiff in the above captioned matter. I submit this Declaration on the basis of my own personal knowledge.

2.     On March 3, 2003, I came to Washington, D.C. to visit the area and conduct research for my art shows.

3.     During my trip to Washington, D.C., I drove my 2002 GMC van, black in color. The van came equipped with opaque window shades on the rear and side windows.

4.     My van was properly registered in the State of Michigan in March 2003. Attached as Exhibit A to this Declaration are registration forms and receipts showing registration expiration dates of February 28, 2003 and February 28, 2004, respectively.

5.     On the morning of March 6, 2003, I received a parking ticket in Arlington County, Virginia. Attached as Exhibit B to this Declaration is a copy of the parking ticket. The officer did not check the box for "Improper, Expired or No Tag(s)."

6.    On March 6, 2003, I drove to Washington, D.C. to tour the Capitol Building.  At approximately 12:00 p.m., I parked my van on Third Street, N.E., not far from Union Station.  In the back of my van was a large collection of my artwork with, pieces packed carefully in containers.  After parking my van, I ensured that the opaque shades on the rear and side windows were drawn, so that passersby could not see into the van.  I was worried that some of the valuable artwork or equipment in the van might be stolen if it could be seen from the street.  No one could see into the van with the window shades drawn.  Attached as Exhibit C is a photograph of my van, which I understand to have been taken during the FBI's "inventory search" of my van and provided to me and my attorneys by the FBI.  The photograph shows the shades down, as I had left them on March 6, 2003.

7.    When I visited the Capitol Building, I wore a piece of art containing items that I had collected from the Washington, D.C. region.  I passed through several layers of security while entering and touring the Capitol Building.  No security officer told me I could not wear this piece of art.  I never had any explosives on my person, in my van, or in my possession, custody, or control.

8.    While touring the Capitol Building, I was detained, searched, and arrested by members of the United States Capitol Police.  When the United States Capitol Police searched me in the Crypt of the Capitol Building, Defendant Preston Nutwell took the keys to the van from me.

9.    When I got my van back, on March 11, 2003, I found that many pieces of my artwork, which had previously been carefully packed in containers, were either broken or destroyed.

Under the penalties of perjury, I declare that the statements I have made in this declaration are true and correct. Executed this 26th day of April, 2007 at Iowa City, IA.

David Olabayo Olaniyi

On this 26th day of April 2007, before me came David Olabayo Olaniyi, a person I identified through his drivers license #075 BB 4883, and signed and subscribed the foregoing affidavit.

Notary Public

Mark Vining

Printed Name

State of ___Iowa___

County/City of ___Johnson___

My Commission Expires: 10-20-09

MARK R. VINING
Commission Number 708345
My Commission Expires
10-20-09

-3-

# EXHIBIT A

# TO DECLARATION OF

# DAVID OLABAYO OLANIYI

MICHIGAN REGISTRATION

MICHIGAN REGISTRATION

**2003**

IF YOU NO LONGER OWN THIS    SEE INSTRUCTIONS ON REVERSE SIDE    MICHIGAN REGISTRATION    Secretary of State
VEHICLE, DESTROY THIS FORM.

917400  300600  WAH896  S  801

02/28/2004

2002  GMC  STA-WAGON

1GDFG15R721231621  37  174.00

WASHTENAW

1  81

BAYO ARTS & DESIGN & REENA PATEL
101 NICHOLS DR
SALINE                    MI  48176

COMPLETE THE SIGNATURE REQUIREMENT ON THE REVERSE SIDE

---

04WAH8965  01819 8

WAH896

02/28/2004

2002  GMC  STA-WAGON

1GDFG15R721231621  37  174.00

WASHTENAW

1  81

BAYO ARTS & DESIGN & REENA PATEL
101 NICHOLS DR
SALINE MI  48176

IF YOU MOVE, YOU MUST CHANGE YOUR ADDRESS
AT A SECRETARY OF STATE BRANCH OFFICE

# EXHIBIT B

# TO DECLARATION OF

# DAVID OLABAYO OLANIYI

**NOTICE OF PARKING VIOLATION**
**ARLINGTON COUNTY, VIRGINIA**

TO THE OWNER OR OPERATOR OF VEHICLE DESCRIBED

REFERENCE THIS
NUMBER ON YOUR CHECK

90144065

| License Plate | State | Plate Type |
|---|---|---|
| WAR 890 | MJ PC | |

| Make | Body | Date | Military Time |
|---|---|---|---|
| GMC | VA | 03 06 03 | 0005 |

Location

You have thirty (30) calendar days to pay the indicated fine or appear for a hearing. After this time a late payment charge of $25.00 will be added and you may no longer have a hearing. Please see front of envelope for additional information.

| | VIOLATION | IF PAID WITHIN 30 CALENDAR DAYS |
|---|---|---|
| 100 | Expired Meter # | 25.00 |
| 101 | Restricted Area | 40.00 |
| 102 | Not On Right Hand Side | 40.00 |
| 103 | Unattended / Abandoned Vehicle | 40.00 |
| 104 | Commercial Vehicle in Res. Zone | 40.00 |
| 105 | Not in Designated Space | 40.00 |
| 106 | Parking Within 20' of Corner | 40.00 |
| 107 | Parking Within 15' of Hydrant | 40.00 |
| 108 | Obstruction | 40.00 |
| 109 | Motor Running Unattended | 40.00 |
| 110 | Failure to Display VA Tag | 40.00 |
| 111 | Failure to Display Valid ___ Decal | 40.00 |
| 112 | Improper, Expired or No Tags | 40.00 |
| 113 | Fail to Display Valid VA Insp. | 40.00 |
| 114 | Parking in Fire Lane | 40.00 |
| 115 | Double Parked | 40.00 |
| 116 | Handicapped Space Violation | 500.00 |
| 117 | Permit Zone (#_____) Violation | 40.00 |
| 998 | Other | 40.00 |
| 120 | Snow Emergency Route | 20.00 |
| 121 | Idling Buses | 50.00 |
| 99 | Warning Violation #_____ (above) | |

NO DLG 12AM GRY

| Officer Signature | Badge No: |
|---|---|
| VACHETT | 055 |

NOT A WINNER
RETAILER 063888
268-36457729-205819
277-20396801-205319
PRINTED FEB 26 03 13:57:12

14

# EXHIBIT C

# TO DECLARATION OF

# DAVID OLABAYO OLANIYI

PHOTOGRAPHER _SA Ronald E Menold SS_

DATE _03_ / _07_ / _2003_ ROLL # _1_
     Month   Day   Year

LOCATION _V Street_

CASE FILE _174-WF-NEW_

AGENCY _FBI_



























## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DAVID OLABAYO OLANIYI,**

               Plaintiff,

        -against-

**DISTRICT OF COLUMBIA, ET AL.,**

               Defendants.

Civil Action No. 05-00455 (RBW)

### AFFIDAVIT OF KEITH R. WESOLOWSKI

KEITH R. WESOLOWSKI, being duly sworn, states as follows:

1.    I am counsel for David Olabayo Olaniyi ("Olaniyi"), the Plaintiff in this action. I make this Affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

2.    Olaniyi filed suit against Defendants DePalma, Nutwell, and the District of Columbia on March 3, 2005. Olaniyi also named several John Doe Defendants in his Complaint.

3.    Olaniyi propounded Interrogatories and Requests for Production of Documents to Defendants DePalma and Nutwell pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure.

4.    Olaniyi served subpoenas on the United States Capitol Police (the "USCP") and the Federal Bureau of Investigation (the "FBI") pursuant to rules governing third-party discovery.

5.    Olaniyi received limited responses to his discovery requests and has been in continuing discussions with counsel for the Federal Defendants concerning the appropriate scope of discovery. The Federal Defendants have not provided Olaniyi with the full discovery to

which he is entitled and have consistently failed to provide discovery within the timeframes established by the Federal Rules of Civil Procedure.

6.      On October 31, 2006, Olaniyi identified the John Doe Defendants in his Second Amended Complaint.

7.      Pursuant to the Court's order, a stay is currently in effect regarding discovery matters until such a time as the Court has ruled upon the Federal Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, for Summary Judgment (the "Federal Defendants' Motion").

8.      Although Olaniyi had received limited discovery from Defendants DePalma and Nutwell, and from the USCP and FBI prior to the Court's stay of discovery, Olaniyi has received no discovery from any of the former John Doe Defendants, now identified by the Second Amended Complaint.

9.      I have reviewed the Federal Defendants' Motion and the Exhibits attached thereto. The Federal Defendants' Motion and the attached Exhibits allege "new" facts and theories, such as the "dry run" theory, the "community caretaker" theory, and allegations of fact concerning who participated in the searches and seizures of Olaniyi's van. Olaniyi has had no opportunity to obtain discovery or conduct depositions concerning any of these "new" allegations.

10.     Prior to the Court's stay of discovery, Federal Defendants, after numerous requests, produced to Olaniyi a tape titled "Arrest Crypt Capitol, 3-6-03." I have listened to the recording, and it appears to be a recording of USCP dispatcher communications during the afternoon of March 6, 2003. I heard on the recording communications concerning Olaniyi's detention and arrest in the Crypt of the Capitol Building, the location of Olaniyi's van, and the

establishment of a media command post to field media inquiries. Olaniyi requires further discovery concerning the events and communications depicted on the tape.

11.    Thus, due to the recent naming of the John Doe Defendants, the Court's stay of discovery, discovery disputes between Olaniyi and the Federal Defendants, and the failure of the Federal Defendants to comply with their discovery obligations, no depositions have been taken in this case so far and Olaniyi has not had the opportunity to receive sufficient discovery to assess the veracity of the Federal Defendants' allegations.

12.    Due to the facts stated above, Olaniyi requires further discovery to be had and depositions to be taken pursuant to Rule 56(f) of the Federal Rules of Civil Procedure in order to oppose the Federal Defendants' Motion.

The contents of this Affidavit are true to the best of my knowledge, information and belief.

*Keith R. Wesolowski*

Keith R. Wesolowski (DC Bar No. 494415)

**DISTRICT OF COLUMBIA:ss:**

City of _____

State of _____:ss

Subscribed and sworn to before me
this *27th* day of April, 2007

*Paula R. Martin*

**PAULA R. MARTIN
COMMISSION EXPIRES
MARCH 14, 2010**