## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DAVID OLABAYO OLANIYI,**

                Plaintiff,

-against-

**DISTRICT OF COLUMBIA, ET AL.,**

                Defendants.

Civil Action No. 05-00455 (RBW)

## NOTICE OF FILING REVISED STATEMENT OF MATERIAL ISSUES IN DISPUTE

COMES NOW the Plaintiff, David Olabayo Olaniyi ("Olaniyi"), by and through his undersigned counsel, and provides this Notice of Filing.

1.      On April 27, 2007, Olaniyi filed a Memorandum in Opposition to Federal Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, for Summary Judgment (Olaniyi's "Opposition Memorandum").   The first attachment to the Opposition Memorandum is Plaintiff's Statement of Material Issues in Dispute.   The second attachment to the Opposition Memorandum is Olaniyi's Declaration, and the third attachment to the Opposition Memorandum is an Affidavit of Keith R. Wesolowski, counsel for Olaniyi.

2.      Counsel for Olaniyi inadvertently did not include record citations for certain references in Olaniyi's Statement of Material Issues in Dispute.

3.      In order to provide the Court with more detailed citations to the record, Olaniyi is filing the attached Revised Statement of Material Issues in Dispute and an Affidavit by counsel, Jennafer B. Neufeld.

4.     The Revised Statement of Material Issues in Dispute is provided merely to supplement citations to the record and does not alter the substance of the original Statement of Material Issues in Dispute filed on April 27, 2007.

Dated: May 1, 2007

Respectfully submitted,

/s/ Jennafer B. Neufeld

David F. Williams (Bar No. 298386)
Jennafer B. Neufeld (Bar No. 489233)
Keith R. Wesolowski (Bar No. 494415)
CADWALADER, WICKERSHAM & TAFT LLP
1201 F Street N.W., Suite 1100
Washington, D.C. 20004
Tel:    (202) 862-2200
Fax:    (202) 862-2400

*Counsel for David Olabayo Olaniyi*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Filing Revised Statement of Material Issues in Dispute was served upon the following defendants by electronic filing and/or personal service on May 1, 2007:

Beverly M. Russell
Assistant United States Attorney
United States Attorney's Office
  for the District of Columbia
555 Fourth Street, N.W., Rm E-4915
Washington, D.C.  20530

Melvin W. Bolden, Jr.
Senior Assistant Attorney General
  for the District of Columbia
Office of the Attorney General
441 Fourth St., N.W., Sixth Floor South
Washington, D.C.  20001

/s/ Jennafer B. Neufeld
_____

CADWALADER, WICKERSHAM & TAFT LLP
1201 F Street, NW
Washington, DC  20004
Tel:  202 862 2200
Fax:  202 862 2400

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DAVID OLABAYO OLANIYI,**

                              Plaintiff,

            -against-

**DISTRICT OF COLUMBIA, ET AL.,**

                              Defendants.

Civil No. 05-00455 (RBW)

## PLAINTIFF'S REVISED STATEMENT OF MATERIAL ISSUES IN DISPUTE

Pursuant to Local Rule 7(h), Plaintiff David Olabayo Olaniyi ("Olaniyi") hereby submits the following statement of material facts as to which Olaniyi contends there exist genuine disputes, to accompany Olaniyi's Opposition to the Federal Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment (the Federal Defendants' "Motion").

1.      Olaniyi has not had full and complete discovery from the Federal Defendants. Furthermore, Olaniyi has had no opportunity to challenge the assertions made in the assorted declarations and exhibits filed by the Federal Defendants with their Motion. See generally Affidavit of Keith R. Wesolowski ("Wesolowski Aff.") (April 27, 2007). Olaniyi, therefore, is forced to dispute generally any facts alleged in such declarations and exhibits.

2.      Olaniyi disputes Paragraph 1 of the Federal Defendants' Statement of Material Facts as to which there is no Genuine Dispute (the "Federal Defendants' Statement") to the extent that it insinuates that Olaniyi wore his costume to provoke an entanglement with Capitol Building security. Olaniyi passed through four layers of security while touring the Capitol Building and interacted cordially with security personnel. Second Amended Complaint

("2d Amend. Compl.") ¶68; see Declaration of Jennafer B. Neufeld ("Neufeld Decl."), Ex. A at 2.

3.  Olaniyi disputes Paragraph 2 of the Federal Defendants' Statement to the extent that it suggests that Olaniyi dropped a hand-carved mask sculpture when approached by Defendant Nutwell.  Defendant Nutwell grabbed the sculpture and shattered it on the ground.  2d Amend. Compl. ¶70; see Neufeld Decl., Ex. A at 1.

4.  Olaniyi disputes Paragraph 4 of the Federal Defendants' Statement to the extent that it suggests Olaniyi's van was parked "within close proximity" to the Capitol Building. Olaniyi's van was parked approximately four blocks away from the Capitol Building and, in fact, was closer to Union Station than the Capitol Building.  2d Amend. Compl. ¶73; Declaration of David Olabayo Olaniyi ("Olaniyi Decl.") ¶6.

5.  Olaniyi disputes Paragraph 5 of the Federal Defendants' Statement to the extent that it suggests Olaniyi was only detained for one night.  Olaniyi was detained from March 6, 2003 until March 10, 2003, during which time he was abused by agents and employees of the District of Columbia in the District of Columbia Jail.  2d Amend. Compl. ¶74-77; see also Neufeld Decl., Ex. B.

6.  Olaniyi disputes Paragraph 6 of the Federal Defendants' Statement. USCP Defendants Bracci, DePalma, King, Nutwell, and Udell and FBI Defendants Cejpeck, Chinchilla, Collins-Morton, Menold, Rankin, and Sidener searched Olaniyi's van.  2d Amend. Compl. ¶97-98; see also Neufeld Decl., Exhibits C, D, E & F; Olaniyi Decl. ¶8; Bracci Decl. at 2.  USCP Defendants DePalma, Dineen, Malloy, Meikrantz, Shark, and Udell and FBI Defendants Arseni, Edmonson, Finnerty, Gardner, Garten, Godbold, and Vienna directed, supervised, participated in, or otherwise assisted with the search and seizure of Olaniyi's van.  2d Amend. Compl. ¶97-98; see also Neufeld Decl., Ex. F & G; Arseni Decl. at 2; Dineen Decl. at 2;

Edmonson Decl. at 2; Finnerty Decl. at 3; Gardner Decl. at 2; Malloy Decl. at 2; Meikrantz Decl. at 2; Shark Decl. at 1; Vienna Decl. at 1, 2.

7.    Olaniyi disputes Paragraph 7 of the Federal Defendants' Statement. USCP Defendants Bracci, DePalma, King, Nutwell, and Udell and FBI Defendants Cejpeck, Chinchilla, Collins-Morton, Menold, Rankin, and Sidener searched Olaniyi's van.  2d Amend. Compl. ¶97-98; see also Neufeld Decl., Ex. C, D, E & F; Olaniyi Decl. ¶8; Bracci Decl. at 2. USCP Defendants DePalma, Dineen, Malloy, Meikrantz, Shark, and Udell and FBI Defendants Arseni, Edmonson, Finnerty, Gardner, Garten, Godbold, and Vienna directed, supervised, participated in, or otherwise assisted with the search and seizure of Olaniyi's van.  2d Amend. Compl. ¶¶74-77; see also Neufeld Decl., Ex. F & G; Arseni Decl. at 2; Dineen Decl. at 2; Edmonson Decl. at 2; Finnerty Decl. at 3; Gardner Decl. at 2; Malloy Decl. at 2; Meikrantz Decl. at 2; Shark Decl. at 1; Vienna Decl. at 1, 2.

8.    Olaniyi disputes Paragraph 8 of the Federal Defendants' Statement to the extent it asserts that Olaniyi's van had "expired out of state tags."  Olaniyi's van was properly registered in the State of Michigan.  Olaniyi Decl. ¶4, Ex. A; see also Olaniyi Decl. ¶5, Ex. B. Olaniyi further disputes Paragraph 8 of the Federal Defendants' Statement to the extent it suggests that witnesses informed the Federal Defendants that Olaniyi's van had been parked on Third Street, N.E. "for several days."  Olaniyi disputes that Federal Defendants received such witness statements.  Olaniyi parked his van on Third Street, N.E. on March 6, 2003 only, and in fact received a parking ticket in Arlington, Virginia on the morning of March 6, 2003.  Olaniyi Decl. ¶5, Ex. B.  Olaniyi further disputes Paragraph 8 of the Federal Defendants' Statement to the extent that it suggests the Federal Defendants observed containers in the rear of the van. Olaniyi's artwork was carefully stored in the back of Olaniyi's van, and would not have been

visible from outside the van because of drawn shades covering the rear and side windows of the van.  Olaniyi Decl. ¶3 and ¶6, Ex. C.

   9. Olaniyi disputes Paragraph 11 of the Federal Defendants' Statement to the extent it asserts that Defendants Bracci and King confirmed the presence of covered containers in the back of Olaniyi's van.  Olaniyi's van was equipped with opaque window shades which were drawn and blocking Defendants Bracci's and King's view into the back of the van.  Olaniyi Decl. ¶3 and ¶6, Ex. C.  Olaniyi further disputes that Defendants Bracci and King observed three "large" unmarked glass jars of unknown liquid.  Neufeld Decl., Ex. G.

   10. Olaniyi disputes Paragraph 12 of the Federal Defendants' Statement. Olaniyi requires discovery from the Federal Defendants in order to assess the veracity of the Federal Defendants' assertions.  See generally Wesolowski Aff.

   11. It is in dispute who broke or destroyed Olaniyi's artwork and how during the search and seizure of the van.  See, e.g., 2d Amend. Compl. ¶73; Motion at 28; see also Neufeld Decl., Ex. H;  Wesolowski Aff. ¶8; Arseni Decl. at 2; Chinchilla Decl. ¶4; King Decl. at 3; Malloy Decl. at 2.

12.    It is in dispute whether Defendant Nutwell and/or other Federal Defendants took possession of the keys to Olaniyi's van after detaining him in the Crypt of the Capitol.  <u>See</u>, <u>e.g.</u>, Olaniyi Decl. ¶8; Nutwell Decl. ¶4.

Dated:  May 1, 2007

Respectfully submitted,

/s/ Keith R. Wesolowski

_____

David F. Williams (Bar No. 298380)
Jennafer B. Neufeld (Bar No. 489233)
Keith R. Wesolowski (Bar No. 494415)
CADWALADER, WICKERSHAM & TAFT LLP
1201 F. Street, NW
Washington, DC  20004
Tel:  202 862 2400
Fax:  202 862 2200

*Counsel for Plaintiff David Olabayo Olaniyi*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DAVID OLABAYO OLANIYI,**

               Plaintiff,

               -against-

**DISTRICT OF COLUMBIA, ET AL.,**

               Defendants.

Civil Action No. 05-00455 (RBW)

## DECLARATION OF JENNAFER B. NEUFELD

      JENNAFER B. NEUFELD declares, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

      1.      I am an attorney with Cadwalader, Wickersham & Taft LLP, counsel for David Olabayo Olaniyi ("Olaniyi"), the Plaintiff in this action. I respectfully submit this Declaration in conjunction with Olaniyi's Revised Statement of Material Issues in Dispute.

      2.      Exhibit A is a true and correct copy of a United States Capitol Police Complainant/Witness Statement, signed by Defendant Rose Cabezas (March 6, 2003). This document was produced to Olaniyi during the criminal proceedings related to this case.

      3.      Exhibit B is a true and correct copy of a medical chart titled DCDC_CDF-MMHS, dated July 21, 2005. This document was produced to Olaniyi by the Defendant District of Columbia as part of their Rule 26 initial disclosures in this case.

      4.      Exhibit C is a true and correct copy of a memorandum from Defendant Donald C. Bracci to the United States Attorneys Office, dated March 6, 2003. This document was produced to Olaniyi by the United States Capitol Police during prior discovery in this case.

5.      Exhibit D is a true and correct copy of a memorandum from Defendant John E. King to the United States Attorneys Office, dated March 6, 2003.  This document was produced to Olaniyi during the criminal proceedings related to this case.

6.      Exhibit E is a true and correct copy of a Criminal Complaint dated March 7, 2003 with attached Affidavit in Support of a Criminal Complaint, by Defendant Joseph DePalma.  This document was produced to Olaniyi during the criminal proceedings related to this case.

7.      Exhibit F is a true and correct copy of a Federal Bureau of Investigation Vehicle Inventory Report dated March 10, 2003, by Defendants Jennifer Cejpek, Sandra I. Chinchilla, Mary B. Collins-Morton, Ronald E. Menold II, Michelle L. Rankin, and Kara D. Sidener.  This document was produced to Olaniyi by the Federal Bureau of Investigation during prior discovery in this case.

8.      Exhibit G is a true and correct copy of a Federal Bureau of Investigation Report dated March 10, 2003 by Defendants Paul A. Garten and Melissa R. Godbold.  This document was produced to Olaniyi by the Federal Bureau of Investigation during prior discovery in this case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 1, 2007

_Jennafer B. Neufeld_ (DC Bar No. 489233)

# EXHIBIT A

| CP 319 (5-86) | UNITED STATES CAPITOL POLICE WASHINGTON, D.C. COMPLAINANT/ WITNESS STATEMENT | | 1. CAPITOL FILE NUMBER |
|---|---|---|---|
| 2. NATURE OF INVESTIGATION | | | 3. COMPLAINT NO. |
| 4. STATEMENT OF: (Last, First, Middle) CABEZAS, ROSE B. | | 5. DOB 10/26/56 | 6. SEX F |
| 7. HOME ADDRESS ON FILE | | 8. HOME PHONE ON FILE | |
| 9. EMPLOYMENT (Occupation and Location) U.S. Capitol Police #1 First St. NE | | 10. BUSINESS PHONE 202-224-2485 | |
| 11. LOCATION STATEMENT TAKEN 6th Fl HDQTS | 12. NAME OF OFFICER TAKING STATEMENT (if other than block 18 include signature) Zimmerman/Pendleton, David | 13. DATE/TIME STARTED 3-6-03   1530 | |

14. STATEMENT

On todays date, 3-6-03 at approximately 1,300 hrs I was standing in the hall outside H-114 when I observed two individuals dressed in African type clothing pass me with gallery passes in their hands. A few minutes later, a call came over the air that off. Brooks had stopped a suspicious person in the crypt and I responded as his backup. Brooks advised me that the individual he observed in the crypt had some sort of "device" under his clothing. We approached the individual and another female in the center of the crypt. The individuals were singing and dancing. They were not shouting or disturbing the tourists. I noticed both individuals had silver duct tape type objects taped around their waists. The male had a duct tape harness type device around his chest which had a duct tape harness type device around his chest which attached to the waist device. I thought it looked like it could be a device a suicide bomber would wear. I saw the devices as "lumps" shapes, similar to cannisters, grenades, etc. Except that they looked like a Halloween costume a young kid would create. They did not look real but I was concerned underneath, they may have some thing my training couldn't detect as dangrous. At this point I was concerned with them demonstrating more than them having explosives because when asked they both stated the duct tape devices were "art". Officer Nutwell was trying to verbally gain cooperation from the male and he was not following Officer Nutwell's orders to put his hands behind his back. Officer Nutwell grabbed his hands and the individual's clay mask fell to the floor and shattered. After off. Nutwell put handcuffs on the individual, I found his identification and ran a 10-29 on him which proved negative. Be-

| 15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. I UNDERSTAND THAT MAKING A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES | 16. DATE/TIME ENDED 3/6/03   1645 |
|---|---|
| St. Rose Cabezas SIGNATURE OF PERSON GIVING STATEMENT | 17. PAGE 1 OF 2 PAGES |

| 18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15: David A Pendlet. (Name and Signature) | 19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15: (Name and Signature) |
|---|---|

CP 319 (5-86)

**UNITED STATES CAPITOL POLICE**
WASHINGTON, D.C.
COMPLAINANT/WITNESS STATEMENT

| | | |
|---|---|---|
| 2. NATURE OF INVESTIGATION | 1. CAPITOL FILE NUMBER | |
| | 3. COMPLAINT NO. | |
| 4. STATEMENT OF: (Last, First, Middle) CABEZAS, ROSE B | 6. DOB 10-26-56 | 6. SEX F |
| 7. HOME ADDRESS ON FILE | 8. HOME PHONE ON FILE | |
| 9. EMPLOYMENT (Occupation and Location) U.S. CAPITOL Police #1 First St NE | 10. BUSINESS PHONE 202-224-2985 | |
| 11. LOCATION STATEMENT TAKEN 6th Floor HDQTS | 12. NAME OF OFFICER TAKING STATEMENT (If other than block 16 include signature) Pendleton David A | 13. DATE/TIME STARTED 3-6-03 1530 |

14. STATEMENT

Cause she was cooperating and I didn't feel dangerous, I told Off. Talbot to take her cuffs off until or if she was charged. Both WALES NCIC checks proved negative. I was reasonably certain the individuals were demonstrators, however they had not "breached the peace" at the time of my encounter with them. They were noisy but not to the point of bothering anyone. They were "performing" in my opinion. I asked the female if she was in the Capitol to demonstrate and she said "no". I asked her if she was trying to scare anyone and she said no her duct tape belt was "art".

Additionally, I was reasonably certain the individuals had been processed through the North/South screen facilities and they had been screened through magnetometer and itemiser equipment as well as their belongings had been x-rayed. Because of this certainty I didn't feel they were a "serious" threat but in the back of my mind I wondered if they might have some type of dangerous substance, etc. which could not be detected by the x-ray, itemiser and magnetometer. Because of this Probability I was highly cautious.

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME, I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. I UNDERSTAND THAT MAKING A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES.

SIGNATURE OF PERSON GIVING STATEMENT
Sgt Rose Cabezas

16. DATE/TIME ENDED 3/6/07 1645

17. PAGE 2 OF 2 PAGES

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:
David A Pendleton
(Name and Signature)

19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

# EXHIBIT B

**DCDC_CDF - MMHS**
1901 D Street, S.E. Washington, DC 20002
202-673-8445  Fax: 202-673-8010

*July 21, 2005*
Page 1
Chart Summary



## Patient Information

| | | | |
|---|---|---|---|
| Name: | DAVID OLANIYI-ILELABAYO | Home Phone: | 296032 |
| Address: | 1901 D ST. S.E. | Office Phone: | |
| | WASHINGTON, DC   USA | | |
| Patient ID: | 45313-0134001 | Fax: | |
| Birth Date: | 04/20/1970 | Status: | Inactive |
| Gender: | Male | Marital Status: | |
| Contact By: | | Race: | Black |
| Soc Sec No: | 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 | Language: | |
| Resp Prov: | | Unit/Cell: | |
| Referred by: | | Emp. Status: | |
| Email: | | Sens Chart: | No |
| Home LOC: | DCDC_CDF - MMHS | DCDC: | 296032 |

## Problems

## Medications

## Directives

## Allergies

## Services Due

1

**DCDC_CDF - MMHS**
1901 D Street, S.E. Washington, DC 20002
202-673-8445  Fax: 202-673-8010

*July 21, 2005*
Page 1
Chart Document



**03/07/2003 - Imaging Report: CHEST PA**
**Provider: T. Wilkins Davis  MD**
**Location of Care: RADIOLOGY**


RADIOLOGY PROCESSING

X-ray Type: Intake
X-ray Group: CXR
X-ray Ordered: CHEST PA
Date Requested: 03/07/2003
Exam Status: Complete
Date of Exam: 03/07/2003
Technologist: D. Nkeng RT

RADIOGRAPHIC REPORT

Radiologist: Dr. Zellis
Report Date: 03/08/2003
Findings: Negative CXR
Report Category: Normal
Report Status: Complete


**Signed by T. Wilkins Davis  MD on 03/09/2003 at 10:11 PM**

---

**03/07/2003 - Lab Report: RPR, PROGRESSIVE**
**Provider: Chantal Perrier-Taylor PA-C**
**Location of Care: DC JAIL MMHS**


Patient: ILELABAYO OLANIYI
Note: All result statuses are Final unless otherwise noted.

Tests: (1) RPR, PROGRESSIVE (23772)
    RPR                         Nonreactive
    RPR                         "Result Follows..."
        Reference value:  Nonreactive
! PROGRESSIVE FTA-ABS          Not indicated

Note: An exclamation mark (!) indicates a result that was not dispersed into
the flowsheet.
Document Creation Date: 03/13/2003 5:39 PM

---

(1) Order result status: Final
Collection or observation date-time: 03/07/2003 21:47
Requested date-time:

**DCDC_CDF - MMHS**
1901 D Street, S.E.  Washington, DC 20002
202-673-8445  Fax: 202-673-8010

*July 21, 2005*
Page 2
Chart Document



```
Receipt date-time: 03/08/2003 15:23
Reported date-time: 03/10/2003 06:19
Referring Physician:
Ordering Physician:  PA- (PERRIER-TAYLOR)
Specimen Source:
Producer ID:  (RESULTS)
Filler Order Number: 54559224/0
Lab site:


-----------------

The following results differed from their previous value:

  RPR   Old Value: Nonreactive    New Value: Reference value:  Nonreactive
```

Signed by Chantal Perrier-Taylor PA-C on 03/17/2003 at 2:40 PM

---

**03/07/2003 - MH Clinician: MH-INTK**
**Provider: Darius Mills  LPC**
**Location of Care: DC JAIL MMHS**

COMPREHENSIVE MENTAL HEALTH ASSESSMENT
Intake

Mental Health History

Current History
MH Tx: no
Meds: no

Previous History
MH Tx: no
Meds: no

Suicide History:
Attempts: no

Surgeries & Injuries:
Type: none

Drug History

3

**DCDC_CDF - MMHS**
1901 D Street, S.E. Washington, DC 20002
202-673-8445  Fax: 202-673-8010

*July 21, 2005*
Page 3
Chart Document



Describe: PT DENIES DRUG OR ETOH USE
Hx of IDU: no
Shared needles: no

Personal History
Eating disorder: none
Significant Relationships: yes
Details: REPORTS CLOSENESS W/ CHILDREN. AND FAMILY
Highest grade (in years): 18
Job Hx: yes
Job details: MUSICIAN / PERFORMER/ ARTIST

Mental Health Status Exam
Hallucinations: none
Delusions: grandiose
Speech: no abnormality
Thought: circumstantial, confabulation, tangential
Mood: consistent, cooperative
Affect: appropriate to thought, cooperative, talkative
Motor Activity: normal
Appearance or Hygiene: appropriate
Attitude: cooperative
Insight: fair
Judgment: fair
Observation Details: AVG HT,WT, FACIAL HAIR, AFRO,   AA MALE W/ ISLE ACCENT

Orientation
To time: yes
To place: yes
To person: yes
To situation: yes

Potential For Harm
Self-Injurious: no
Suicidal Ideation: no

Clinician Assessment
Summary: PT IS A & O X 3 W/ CIRCUMSTANTIAL SPEECH AND VERY UNUSUAL STORY (R/O
DELUSIONS OF GRANDEUR) R/T INCARCERATION AND ARREST AT U.S. CAPITOL FOR
PERFORMING IN A BIZARRE OUTFIT (DUCKTAPED, EMPTY BOTTLES, STONE MASK) W/ A
FEMALE COMPANION.  NO HX OF MH TX REPORTED.  NO HX OF SELF HARM REPORTED NOR
CURRENT INTENT EVIDENT.  WILL HOUSE ON SO3 R/T NATURE OF COMPLAINT PT ADMITS TO
AND BIZARRE NATURE OF OUTFIT FOR FURTHER OBSERVATION.
Recommended housing: Mental Health Unit

4

**DCDC_CDF - MMHS**
1901 D Street, S.E. Washington, DC 20002
202-673-8445 Fax: 202-673-8010



Signed by Darius Mills LPC on 03/07/2003 at 11:24 PM

---

03/07/2003 - Intake Processing: Intake ppd and vs
Provider: Stacy Barnes LPN
Location of Care: DC JAIL MMHS

Intake Processing_Vital Signs
Height: 72 inches
Weight: 207 pounds
Temperature(oral): 97.2 degrees F
Temperature site: oral
Pulse: 93
Respirations: 20
Blood pressure: 132/80 mm Hg

Urine Analysis
WBC's: 1+
Protien: 1+
Ketones: 2+
pH: 5
Glucose: 1+
Blood: Negative
Provider Number: 7111

TUBERCULOSIS SCREENING
Reason for PPD: Intake
TB_PPD: Done

Signed by Stacy Barnes LPN on 03/07/2003 at 11:20 PM

---

03/07/2003 - Intake Processing: INTAKE MEDICAL
Provider: Ella Robertson-Strother PA-C

**DCDC_CDF - MMHS**
1901 D Street, S.E.  Washington, DC 20002
202-673-8445  Fax: 202-673-8010

*July 21, 2005*
Page 5
Chart Document



Location of Care: INTAKE MEDICAL

## INTAKE PROCESSING

Initial Intake Screening
4 Refer
CC: NONE. NO DRUGS. ETOH OR CIGARETTES.
Allergies: No
Heroin Use: No.
Methadone: No
Withdrawls: No
**Cocaine Use:** No
**Cigarette Use:** No
**Intravenous Drugs:** No
Rx Meds: No
Hosp in past Yr.?: No
Surg. Past Yr.?: No
Hx of Asthma?: No
Use Asthmatic Meds: No
Hx of Diabetes: No
Hx of HTN: No
Hx of Seizures: No
Ever Tested for TB?: Yes
Treated for TB?: No
Ever took Meds for TB?: No
Are you on meds?: No
Have you ever tested positive for HIV? No
Do you wish an HIV test? No
Hx of Heart Disease?: No
Diarrhea?: No
Wt. Loss?: No
Penile Discharge?: No
Night Sweats?: No
Bloody Sputum?: No
Cough >3 wks?: No
SOB?: No
Tarry/Bloody Stools?: No
Chest Pains?: No
**Recent Injury?:** NONE

Medical Suicide Screening
1. Receiving mental health services in the community: No
2. Had mental health services in the past: No
3. Experienced a significant loss in the past 6 mos.: No
4. Very worried about 'major' problems other than legal: No
5. Family or significant other attempted suicide: No
6. Hold position of respect & charged with crime of notoriety: No

6

**DCDC_CDF - MMHS**
1901 D Street, S.E. Washington, DC 20002
202-673-8445 Fax: 202-673-8010

*July 21, 2005*
*Page 6*
*Chart Document*



7. Thinking about killing self: No
8. Made previous suicide attempts: No
9. Made previous suicide attempts or self injury: No
10. Lacks close family or friends is community: No
11. Apparently under the influence of drugs or alcohol: No
12. First incarceration: Yes
13. JHP returnee: No
14. Forensic evaluation requested: No

Comprehensive Assessment Referral
Has been referred for comprehensive evaluation: Yes
Referred to MD/PA for evaluation: Yes

PHYSICAL EXAM
Lymphatics:
  Head: normal
  Eyes: normal
  Details Fundiscopy: FUNDI NOT CLEARLY VISUALIZED
  Ears: normal
  Nose: normal
  Mouth: abnormal
  Noted: poor dental hygiene
  Neck: normal
  Chest: normal
  Breasts: normal
  Heart: normal
  Abdomen: normal
Back: normal
Extremities: normal
Lymphatics: normal
Skin: abnormal
Details Skin: WELL HEALED SCARS- BILAT MAXILLARY AREA.- CHILDHOOD SCARS
Neuro: normal
Minor assessments: FIRST INCARCERATION
ABN UA
Plan: MH REF. DONE. SC FU RE ABN UA.FS requested to inform md if fs (fasting)>126mg/dl.

Diet: regular
Disposition: Open Pop
This document requires a co-signature:


Signed by Amanuel T. Rosario  MD on 03/08/2003 at 3:33 AM

**DCDC_CDF - MMHS**
1901 D Street, S.E.  Washington, DC 20002
202-673-8445  Fax: 202-673-8010

*July 21, 2005*
Page. 7
Chart Document



Signed by Ella Robertson-Strother PA-C on 03/08/2003 at 4:00 AM

---

**03/08/2003 - MH Clinician: RN ADMISSION ASSESSMENT**
**Provider: Clarice H. Savoy**
**Location of Care: DC JAIL MMHS**


COMPREHENSIVE MENTAL HEALTH ASSESSMENT
Nursing

Visit type: Admission


Mental Health History

Current History
MH Tx: no
Details: HE DENIES ANY.
Meds: no
Details: NONE

Drug History
Hx of IDU: no
Shared needles: no

Personal History
Details: PT STATES THAT HE CANT EAT ALL KIND OF FOOD HE SAID I COOK MY OWN FOOD

Mental Health Status Exam
Hallucinations: none
Delusions: grandiose
Speech: excessive, rapid
Thought: circumstantial
Mood: consistent, euphoric/elated. labile
Affect: appropriate to thought, labile
Motor Activity: normal
Appearance or Hygiene: bizarre, disheveled
Attitude: cooperative
Insight: poor
Judgment: poor
Observation Details: bm with deep afro accent appears un kempt he is a/o x3 he denies suicide or
homicial ideations, pt stated that he ha not eaten since yesterday and probady will not until monday, for
cleaning his body said this is a religion retical that he not eat.his speak is loud and strong . HE DENIES

**DCDC_CDF - MMHS**
1901 D Street, S.E. Washington, DC 20002
202-673-8445 Fax: 202-673-8010

*July 21, 2005*
Page 8
Chart Document



ANY DRUG USAGE.

Orientation
To time: yes
To place: yes
To person: yes
To situation: yes

Potential For Harm
Self-Injurious: no
Suicidal Ideation: no

Nursing Assessment & Plan
First Language: Other
Ability: reads, writes, speaks, understands
Other: NONE
Coping skills: SAID HE IS A ENTERTAINER.
Health maintenance: UNIVERSAL PRECAUTIONS
Medication: NONE

Discharge Planning Needs

Family: TO FAMILY IN THE COMMUNITY.

Nursing Summary
Pt came to s03 from in take after he was arrested at the capital,bld  said he had his costume on and preforming him and a partner  is a enter tainer and he and his partner were preforming  he is a 32 y/o Negeria male with a deep accent he is a/o and oriented very talkative , he hair is uncombed , he denies hearing any voices , suicide or homicial ideations, he denies any previous mental health history. not taking any medication. nsg dx knowledge  defielt related to his preformance near the capitol bld.and his attire he said his costome was made from duct tape.

Clinician Assessment
Mood Disorders: mood lability

Signed by Clarice H. Savoy on 03/08/2003 at 4:07 PM

03/08/2003 - MH Clinician: 3 Days Note
Provider: Nickie Douglas RN

9

**DCDC_CDF - MMHS**
1901 D Street, S.E. Washington, DC 20002
202-673-8445 Fax: 202-673-8010

*July 21, 2005*
Page 9
Chart Document



Location of Care: DC JAIL MMHS

COMPREHENSIVE MENTAL HEALTH ASSESSMENT
Nursing

Visit type: Follow-up
Interview Location: Acute (SO3)
Presenting Complaint or Reason for Referral: 3 Days Note

Mental Health Status Exam
Hallucinations: none
Delusions: no abnormality, encapsulated
Speech: no abnormality
Thought: blocking, confused, illogical, impaired concentration
Mood: neutral
Affect: inappropriate to thought
Motor Activity: normal
Appearance or Hygiene: inappropriate
Attitude: cooperative
Insight: poor
Judgment: fair
Observation Details: Pt received at shift change/rounds in cell.  Denies any problems states I'm okay, but I am not eating anything I have to fast and pray so when I go to court on Monday I can get out of this.  It was just a big misunderstanding."  Monitoring maintained for changes.  He continue not to present any problems and slept without offering complaint.  He accepted his breakfast tray this am, and consumed 100%. He states he will continue to pray however.  Some inappropriate laughter noted, smiling and gesturing to unseen person or persons.  Denies hearing voices or seeing things. Monitoring continues.

Orientation
To time: yes
To place: yes
To person: yes
To situation: yes

Potential For Harm
Self-Injurious: no
Suicidal Ideation: no
Inmate's Plan (specify if none): No ideations or plans shared.

10

**DCDC_CDF - MMHS**
1901 D Street, S.E. Washington, DC 20002
202-673-8445  Fax: 202-673-8010

*July 21, 2005*
Page 10
Chart Document



Signed by Nickie Douglas RN on 03/09/2003 at 6:44 AM

03/09/2003 - MH Clinician: 3- Days Note
Provider: Juanita Wilder
Location of Care: Mental Health SO3

COMPREHENSIVE MENTAL HEALTH ASSESSMENT
Nursing

Mental Health Status Exam
Hallucinations: none
Delusions: no abnormality
Speech: no abnormality
Thought: paranoid/suspicious
Mood: cooperative
Affect: cooperative
Motor Activity: normal
Appearance or Hygiene: appropriate
Attitude: cooperative, guarded
Judgment: fair
Observation Details: Inmate appears to be in good a mood at this time. Denies having visual or auditory hallucinations. He ate his lunch today.Presenting no problems at this time.Continue to monitor behavior.

Orientation
To time: yes
To place: yes
To person: yes
To situation: yes

Potential For Harm
Self-Injurious: no
Suicidal Ideation: no

11

**DCDC_CDF - MMHS**
1901 D Street, S.E. Washington, DC 20002
202-673-8445  Fax: 202-673-8010

*July 21, 2005*
Page 11
Chart Document

( 

Signed by Juanita Wilder on 03/09/2003 at 4:32 PM

---

03/10/2003 - MH Clinician: 3 days Note
Provider: Nickie Douglas RN
Location of Care: DC JAIL MMHS

COMPREHENSIVE MENTAL HEALTH ASSESSMENT
Nursing

Visit type: Follow-up
Interview Location: Acute (SO3)
Presenting Complaint or Reason for Referral: 3 days Note

Mental Health Status Exam
Hallucinations: none
Delusions: encapsulated
Speech: no abnormality
Thought: confused, illogical, impaired concentration, religiosity
Mood: cooperative
Affect: neutral
Motor Activity: normal
Appearance or Hygiene: bizarre
Insight: fair
Judgment: fair
Observation Details: Pt received at shift change/rounds in cell, with some type of homemade head dress. Stating that he should cover his head before praying. All conversation has religious overtones. Noted laughing inappropriately. Offers unintelligent conversation concerning him being here. States he will clear it up in court tomorrow. To bed and sleep without problems. Montioring mainained for changes. Awaken and provided with early breakfast which was consumed 100%. Pt left for court escorted by white shirts and US Marshalls. No verbal interactions with this writer. Behavior was appropriate and cooperative on departure.

Orientation
To time: no
To place: yes

**DCDC_CDF - MMHS**
1901 D Street, S.E. Washington, DC 20002
202-673-8445 Fax: 202-673-8010

*July 21, 2005*
Page 12
Chart Document



To person: yes
To situation: yes

Potential For Harm
Self-Injurious: no
Suicidal Ideation: no
Inmate's Plan (specify if none): Denies plans

**Signed by Nickie Douglas RN on 03/10/2003 at 5:33 AM**

**03/10/2003 - MH Clinician: 3 day note**
**Provider: Juliet Agyeman RN**
**Location of Care: Mental Health SO3**

COMPREHENSIVE MENTAL HEALTH ASSESSMENT
Nursing

Visit type: Follow-up

Mental Health Status Exam
Hallucinations: none
Delusions: no abnormality
Speech: delayed, soft
Thought: no abnormality
Mood: cooperative
Affect: hostile, sad
Motor Activity: slowed
Appearance or Hygiene: bizarre
Attitude: cooperative
Insight: fair
Judgment: fair
Observation Details: ALERT AND ORIENTED 3X, WAS IN HIS CELL ALL SHIFT. ATE 100% OF HIS

13

**DCDC_CDF - MMHS**
1901 D Street, S.E. Washington, DC 20002
202-673-8445  Fax: 202-673-8010

*July 21, 2005*
Page 13
Chart Document



DINNER IN HIS CELL QUIETLY. DENIES ANY HALLUCINATIONS AND DELUSIONS . WILL
CONTINUE TO MONITOR CLOSELY.

Orientation
To time: yes
To place: yes
To person: yes
To situation: yes

Potential For Harm
Self-Injurious: no
Suicidal Ideation: no

Signed by Juliet Agyeman  RN on 03/11/2003 at 10:21 AM

---

03/11/2003 - Office Visit: DISCHARGE NOTE.
Provider: Georgina O. Ahaghotu
Location of Care: Mental Health 3FL

THIS INMATE WAS DISCHARGED TO THE COMMUNITY THIS AM PER COURT ORDER. HE ATE
100%, DENIED ANY DISCOMFORT AT THE TIME OF HIS DEPARTURE.

Signed by Georgina O. Ahaghotu on 03/11/2003 at 8:09 AM

---

04/08/2005 - External Correspondence: Medical Records Request
Provider: Pat Olds, Med Records Mgr.
Location of Care: DC JAIL MMHS

Per his request copy of chart was forwarded to S. Obebe, F.O.I.A./ Privacy Officer (202) 671-2055.

Signed by Pat Olds, Med Records Mgr. on 04/08/2005 at 5:59 PM

---

14

# EXHIBIT C

March 6, 2003

To:   United States Attorneys office

From:  Special Agent, Bomb Technician Donald C. Bracci
       United States Capitol Police

Subject:  Statement of facts concerning the search of suspected Suicide
          Bomber (female) and their vehicle.

On March 6th 2003 at approximately 1317 hours the Hazardous Devices Section (HDS) was dispatched to The US Capitol Building for two individuals with a possible devices taped to their bodies. Special Agent John King and myself responded to The Crypt area of the Capitol to assist Special Agents Jack Dineen and Robert Meikrantz and HDS Supervisor Danny Malloy.

Once in The Crypt S/A King and myself responded to where the female suspect was being held by Capitol Division Officer Kathy Talbot. While Officer Talbot secured the suspect S/A King and I inspected the suspect device that was fashioned around the suspects waist like a belt. The belt was constructed of duct tape and had various items secured to it with additional duct tape. We then inspected and removed the suspect device from the suspect. The suspect was then removed from the area by Officer Talbot. We determined that all of the items (napkins, plastic bags, beads and various statues) were not hazardous after employing various inspection methods. All of the items attached to the belt were either mostly covered or completely covered on the belt with tape. The beads were strung from item to item on the belt and at first appeared to be wiring. The suspect claimed the items on the belt were "only artwork". After clearing The Crypt of any hazards all items were turned to The FBI.

S/A King and I were then dispatched to 300 3rd Street N.E. to inspect the suspect's vehicle for hazardous devices. Several witnesses were concerned about the vehicle, which they had observed over the past few days. Due to exigent circumstances the vehicle keys were brought to the scene. S/A King and I then began the search of the vehicle. Three jars of unknown substances were removed from the vehicle. The substances were over packed and turned over to the FBI. We then completed the search of the vehicle and found no other items or substance that were suspected as being hazardous. At this point the entire vehicle and its contents were turned over to the FBI and all members of HDS cleared the scene.

Donald C. Bracci            3-6-03            1824 hrs

End of Statement

# EXHIBIT D

March 6, 2003

TO: United States Attorneys Office

FROM: Special Agent / Bomb Technician John E. King
      United States Capitol Police, Washington D.C.

SUBJECT: Statement of facts concerning a suspected female suicide bomber and search of vehicle.

On Thursday, March 6, 2003 at approximately 1320 hours Special Agents of the United States Capitol Police (USCP), Hazardous Devices Section (HDS) were dispatched to the Crypt area of the United States Capitol Building for two suspects with duct taped items to their person. Special Agent Bracci and I stood by at the south door of the United States Capitol Building until requested by Supervisor Special Agent Malloy to respond to the Crypt to access, perform diagnostics and render safe the *suspected body bomb*.

Special Agent Bracci and I responded to the Crypt area and approached the female suspect who was under control by uniform officers. Officer Talbot was assigned to assist us. We removed a taped waist band made of duct tape with various size items enclosed in tape. The items were covered with tape and laced together with what appeared to be wire; however, upon closer examination the wires were beads strung together to give the appearance of connecting wires. When we asked the suspect what was taped to her waist, she stated the item was nothing but art work. She would not answer any other questions, so we proceeded to remove the item to perform various diagnostic procedures and render the item safe. Officer Talbot conducted a search of the female suspect to ensure nothing else was on her person. The suspect device was disassembled, and then processed as evidence by the Federal Bureau of Investigation, Terrorism Task Force. At which time, the FBI took custody of all evidence and personal property of the suspect.

Upon leaving the crime scene, the suspect's vehicle was located by Patrol Division Officers. Two Canine Technicians searched the exterior of the vehicle, and we responded to the suspect's vehicle which had expired tags. Several witnesses had seen the vehicle over the past few days and were concerned about the suspect's vehicle. The keys to the vehicle were brought to the scene, and because of exigent safety concerns, the vehicle was searched by Special Agent Bracci and myself. The search revealed three glass jars of unknown liquid which were over-packed and given to the FBI Terrorism Task Force along with the van for evidence processing. We did not find any explosives or explosive devices in the vehicle, but there was a large amount of art work inside the vehicle along with a clothing.

*John E King*     3-6-03    1755 hours

# EXHIBIT E

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

## For The District of Columbia

UNITED STATES OF AMERICA

V.

**CRIMINAL COMPLAINT**

ILELABAYO DAVID OLANIYI
DOB: 4/20/70
REENA PATEL
DOB: 6/6/80

CASE NUMBER:

*(Name and Address of Defendant)*

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about _____March 7, 2003_____ in _____Washington, D.C._____ county, in the _____ District of __Columbia__ defendant(s) did, (Track Statutory Language of Offense)

in or affecting interstate commerce willfully make a threat, or maliciously convey false information knowing the same to be false, concerning an attempt or alleged attempt, or intimidate any individual, or unlawfully to damage or destroy any building, or other real or personal property by means of an explosive.

in violation of Title ___18___ United States Code, Section(s) ___844(e)___.

I further state that I am _Detective Joseph DePalma, Special Agent with the U.S. Capitol Police Department_, and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

AUSA, Frederick W. Yette  (202) 514-7304
Sworn to before me and subscribed in my presence,

Signature of Complainant
Joseph DePalma, Special Agent
United States Capitol Police Department

_____                at        _____Washington, D.C.____
Date                                                                      City and State

_____                          _____
Name & Title of Judicial Officer                              Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

### ILELABAYO DAVID OLANIYI
DOB: 4/20/70
### REENA PATEL
DOB: 6/6/80

1. Your Affiant has been employed by the United States Capitol Police since May 1980.  Your affiant has training and experience with the laws of the United States and the District of Columbia, including training in the preparation and service of criminal complaints, search and arrest warrants. Your affiant is currently assigned to the Criminal Investigations Division of the United States Capitol Police.

2. On March 3, 2003, at approximately 1:17 p.m., Ilelabayo David Olaniyi, of 101 Nichols Drive, Saline, Michigan and Reena Patel, also of 101 Nichols Drive, Saline, Michigan, entered the Crypt area of the United States Capitol Building ,which is located on the first floor, in the center of the building, directly under the U.S. Capitol Rotunda.  This area is a highly traveled tourist area of the Capitol.

3. The two individuals were observed by members of the United States Capitol Police chanting and singing in order to attract attention to themselves.  Defendant Olaniyi was wearing a long white gown or robe and defendant Patel was wearing a long blue shirt or gown.  Defendant Olaniyi  put down a black bag, knelt down on the floor and removed the white robe.  Defendant Olaniyi then stood up, with his arms stretched out, revealing what appeared to be a gray harness strapped to his upper body.  The harness was made of  gray duct tape and appeared to contain explosive devices of various sizes, giving the immediate impression that he was a suicide bomber. Defendant Olaniyi held in his left hand a ceramic face mask which he used to cover two thirds of his face.

4. An officer saw that defendant Patel was wearing a gray waist band which also resembled an explosive device.

5. The initial officer on the scene recognized an immediate threat and broadcast a priority over USCP communications. Officers arriving on the scene saw the items strapped to Defendant Olaniyi's chest and to defendant Patel's waist and believed that they were real explosive devices.  There were approximately 15 to 20 tourists, including children, in the immediate area. Because of the immediate and severe threat of the loss of life, the officers subdued and handcuffed the suspects.  The United States Capitol Police Hazardous Device Unit responded in order to disarm what were believed to be real explosive devices.  However, there were no explosives in either the harness or waist band that the defendants were wearing.

6. Because of the realistic appearance of the suspected explosive devices and the perceived potential for loss of life, the Capitol Police immediately evacuated and cordoned off the first level and Rotunda area of the Capitol.  The police also searched the entire Capitol, both inside and outside, for explosives.  The Crypt area of the Capitol was finally reopened to the public at about 4:15 p.m.

7. Defendants Olaniyi and Patel were placed under arrest and transported to United States Capitol Police Headquarters for processing and further investigation. During the course of the subsequent investigation it was revealed that the two defendants live together in Michigan, and drove together from Michigan to the Washington, D.C. area, arriving on or about March 3, 2003. The van they drove in is registered to defendant Patel and has Michigan license plates.


_____

Joseph DePalma, Detective
U.S. Capitol Police Department


Subscribed to and sworn to me this __ day of March, 2003.


_____

United States Magistrate Judge

# EXHIBIT F

FD-302 (Rev. 10-6-95)



-1-

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    03/10/2003

On 03/07/2003, at approximately 9:15 AM, Special Agents (SA) Kara D. Sidener, Ronald E. Menold II, Michelle L. Rankin, and Sandra I. Chinchilla arrived at the FBI Washington Field Office's V Street Facility, in order to photograph and inventory items found in a vehicle related to the below captioned investigation. SAs Mary B. Collins-Morton and Jennifer Cejpek arrived at approximately 10:30 AM and also participated in the inventory.

The vehicle to be photographed and inventoried was a black GMC Savana 1500 Van, bearing Michigan license plate WAH896 and VIN 1GDFG15R721231621.

At approximately 9:25 AM, SA Menold began taking photographs of the vehicle. SAs Rankin and Sidener assisted in the preparation of photograph logs. SA Sidener also documented vehicle information on an FD-653 (Motor Vehicle Inspection Inventory Record) and prepared administrative worksheets.

Beginning at approximately 9:35 AM, items in the vehicle were removed for the purpose of being photographed and inventoried. The following is a list of items in the vehicle and the location where they were found:

Driver's side dash
Seller's Disclosure Statement for 12750 Scully Manchester,
    Michigan, Lenawee County
University of Michigan class roster
One piece of paper bearing handwriting "story of my life..." and
    graphs

Driver's side floorboard
Metropolitan Map of Washington, DC
One business card, "Memories Past Antiques"
Two Michigan lottery ticket stubs dated 02/26/2003

Dash/console
Two compact discs (CD)
One New York lottery ticket
Two pens
One pom-pom

Investigation on    03/07/2003    at    Washington, DC

File #    174C-WF-226342-12    (vic)                 Date dictated    N/A

by    SA Kara D. Sidener; kds; SA Ronald E. Menold II; SA Michelle L. Rankin;
     SA Sandra I. Chinchilla, SA Mary B. Collins-Morton, SA Jennifer Cejpek

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

174C-WF-226342-12

FD-302a (Rev. 10-6-95)

174C-WF-226342

Continuation of FD-302 of ___ Vehicle Inventory _____ . On 03/07/2003 . Page __2__

One Clinique tube
$0.09 in pennies
One tied piece of clear plastic containing unknown black substance
Miscellaneous trash (gum wrappers, etc.)

Floor next to console (driver's side)
Arlington County Parking Ticket, dated 03/06/2003
Three CDs and one CD holder
One package of sewing needles
One business card, "bedecidos"
Two Michigan lottery tickets, dated 02/18/2003 and 02/19/2003
One plastic bag
One large glass jar containing various rounds of ammunition
One black and white striped piece of material

Center console
Three jars filled with honey-colored substance
One cup
One partial loaf of bread
One white washcloth

Center floor in front of console
One book entitled, "Beyond Indigo" (Address Book)
One business card, "Douglas Ginsberg...Des Moines, IA"
Six scraps of paper bearing handwriting
Three sheets of paper containing telephone directory of numbers
One receipt for Big Boy Restaurant dated 02/23/2003 with
      handwritten telephone number
One book bearing handwritten pages
One brown scarf
One section of a napkin bearing handwritten telephone number
One travel sewing kit
Miscellaneous personal hygiene items

Passenger side of center console, floor, and pocket
Five maps (Middlesex County, NJ; University of South Florida Campus
      Map; State of Georgia; State of Michigan; Chicago City
      Map)
One atlas of the US
One brochure from the US Senate
Two brochures rom the Lobby Gallery, NY
Ann Arbor, Michigan classified ads dated 02/20/2003 with
      handwritten directions and description of a house
One magazine entitled "Trace"
One pair of socks

FD-302a (Rev. 10-6-95)

174C-WF-226342

Continuation of FD-302 of ___ Vehicle Inventory _____ , On 03/07/2003 , Page __3__

One scrap piece of white material
One Michigan registration for GMC station wagon in the name "Bayo
              Arts & Design and Reena Patel"
One insurance form for GMC Van in the name "Ilelavoyo Olaniyi"
One dealer transaction form for Bayo and Patel for GMC station
              wagon VIN 1GDFG15R721231621 (two copies)
Miscellaneous auto papers
Purchase papers for van with same VIN as listed above
Pieces of paper depicting printed "Bayo" logo
One address book with handwritten information

Underneath the passenger seat
Map of NJ

Passenger Visor
Six photographs
One fare card

Behind the rear seat
One air pump
Owners manual and miscellaneous documents
Fuses
One jack
One allen wrench
Various tools
One carrying sack
One pair of black shoes
Miscellaneous clothing
Bubble-wrap
Videocassette box
One box with bubble-wrap and piece of black metal
Four photo albums
Photographic slides
One dolly
One car brush/scraper
One large portfolio containing art
One flattened yellow box
One Cinderella suitcase with clothing
Miscellaneous documents

Overhead of backseat
Toilet paper
Two pages from a magazine
One poster

FD-302a (Rev. 10-6-95)

174C-WF-226342

Continuation of FD-302 of ___Vehicle Inventory_____ . On 03/07/2003 . Page ___4___

Rear overhead console, driver side
Two VHS videocassettes
Four VHS videocassette boxes

Rear overhead console, passenger side
Three maps, one Michigan and two NJ

Rear seat
One suitcase with clothing
Miscellaneous clothing
Baby car seat
Elmo suitcase with clothing
Toy figurine

Front passenger dash
Miscellaneous stringed/wrapped packages on sticks
Star-shaped metal base with string

Floor area between front and rear seat
One box with styrofoam which contained the following:
            US Currency - one $10.00 bill
            Wire
            Miscellaneous paper
            One antennae
            One metal stand
Cloth with writing
One box containing bubble-wrap
Chess pieces, small piece of marble, and small piece of bone-like
            substance all contained in a cloth sack
Miscellaneous clothing
Yarn/string-wrapped stick
Two statuettes
One box with styrofoam
Clear tape
Four carved rocks
Two necklaces
One small piece of foam
$0.01
One crayon
One towel
One straw
Two remote controls
One blue jacket with red decorative shapes
Foam
One VHS videocassette

FD-302a (Rev. 10-6-95)

174C-WF-226342

Continuation of FD-302 of _____Vehicle Inventory_____ , On 03/07/2003 , Page 5

        One VHS videocassette box
        One taped rod
        Miscellaneous clothing
        One comforter
        Two notebooks
        Windshield wiper fluid
        One white-knotted sack containing unknown material
        One camera bag
        One camera lens bearing serial #3044625
        One taped square-like item
        Two rolls of film (possibly exposed)
        One Ramada key card
        Film containers and packaging
        One University of Iowa Student Identification Card bearing the name
                    Olaniyi, Olabayo David
        One large box containing foam and four pieces of art
        One large box containing the following:
                    Foam
                    Two maps (Michigan and Atlanta, GA)
                    Bubble-wrap
                    Shower gel
                    Shampoo
                    Miscellaneous clothing
                    One red statuette
                    One black candle holder
                    Eight canvas panels
                    Two pieces of wooden art
                    Six carved rocks
        Five matted pictures
        One mug with tape
        One decorative, red rod
        One plastic grocery bag
        One wooden-constructed drum-like stand with white cloth and nails
        White cloth
        Print cloth
        One beige jacket
        One animal-like horn
        One wooden rod

        Passenger floorboard
        One carved rock

        Running board of side doors
        $0.10

FD-302a (Rev. 10-6-95)

174C-WF-226342

Continuation of FD-302 of ___Vehicle Inventory_____ , On _03/07/2003_ , Page __6__

     The $10.20 in US currency was enclosed in a plastic bag and left in the vehicle.

     At approximately 12:00 PM, the inventory was completed and the items returned to the vehicle.  At 12:15 PM, exit photographs were taken.

     All logs, worksheets, inventory records, and notes will be enclosed in a 1A envelope (FD-340) and submitted to the Case Agent.  The photographs have been submitted to FBIHQ, Photo Processing Unit, and will also be forwarded to the Case Agent when they have been developed and returned to the writer.

# EXHIBIT G

FD-302 (Rev. 10-6-95)

-1-

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    03/10/2003

On 03/07/2003, HMRT members SAs Paul A. Garten and Melissa R. Godbold conducted a field screen in accordance with FBI policy of a yellow liquid in a mason jar (Item #1), a viscous yellow material in a jar labeled "Wildflower Honey" (Item #2), and a clear liquid in a Sunbeam jar also labeled "Wildflower Honey" (Item #3) found in a 2002 GMC Savanna van, VIN 1GDFG15R72131621.

Tests were negative for radiation and oxygen above background, pH (vapor), flammable liquids, carbon monoxide, hydrogen sulfide, volatile organic compounds, oxidizers, fluorines, petroleum products, organic solvents, iodine, bromine, chlorine, nitrates, nitrites, GA, GB, and VX. Item #1 had a liquid pH of ~5 and was positive for the presence of water. Item #2 had a liquid pH of ~7 and was negative for the presence of water. Item #3 had liquid pH of ~6 and was also positive for the presence of water.

Upon completion of the field screen, the three items were placed beside the vehicle in their overpacks for storage.



Investigation on   03/07/2003   at Washington, DC

File #  174C-WF-226342                    Date dictated
        SA Paul A. Garten
by      SA Melissa R. Godbold

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.