## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID OLABAYO OLANIYI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-00455(RBW) |
| | ) | |
| DISTRICT OF COLUMBIA, et al. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## THE FEDERAL DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND MEMORANDUM IN SUPPORT THEREOF

The Federal Defendants have moved to dismiss this suit brought against them in their personal capacities pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). Plaintiff's opposition memorandum in response to the Federal Defendants' motion, simply stated, lacks merit. Specifically, Plaintiff's memorandum misstates the law, overlooks basic principles of qualified immunity, misstates the facts, and makes irrelevant arguments about matters which lack evidentiary support. The Federal Defendants respectfully request that their Motion to Dismiss or, in the Alternative, for Summary Judgment ("the Motion") be granted.

## ARGUMENT

I.    <u>The Law of the Case Doctrine and Collateral Estoppel Do Not Prevent Defendants From Raising Qualified Immunity in a Summary Judgment Motion</u>

Plaintiff's main argument and recurrent theme in opposition to Defendants' Motion is that because the Court's February 17, 2006 Order and Opinion denied qualified immunity as to

the search of the van in response to a motion to dismiss filed July l, 2005 on behalf of certain defendants [Docket No. 23], all defendants are now barred from raising qualified immunity in a motion for summary judgment.  Plaintiff goes so far as to describe the qualified immunity argument raised in the instant motion as "a frivolous attempt to get the legal equivalent of a second bite at the apple and is a blatant abuse of process."  Pl.'s Op. at 9.  However, what Plaintiff describes in such harsh, and legally incorrect, terms is a common and basic principle of motion practice and of qualified immunity law.

As this Court has stated, a motion to dismiss tests the sufficiency of the complaint, and the Court treats the factual allegations as true.  Olaniyi v. District of Columbia, 416 F.Supp.2d 43, 50 (D. D.C. 2006).  Thus, when the Court ruled on the May 6, 2005 motion to dismiss brought by individual defendants Preston Nutwell and Joseph DePalma[1], it did so based solely on Plaintiff's allegations about what occurred.  In contrast, a summary judgment motion tests a plaintiff's claims in light of the evidence, Fed.R.Civ.P. 56(e), and here the Federal Defendants have submitted evidence in the form of declarations and exhibits showing that what Plaintiff had alleged in his complaint was substantially inaccurate and incomplete.  It follows, then, that the order denying qualified immunity raised in the motion to dismiss does not prohibit the Federal Defendants from raising qualified immunity in a subsequent motion for summary judgment.[2]

---

[1]Neither of whom was involved in the search of the vehicle, the factual basis of the sole remaining claim in this suit.  See Fed. Defs.' Mot. (Ex. 2, Decl. of Preston Nutwell and Joseph DePalma).

[2]This is particularly so given that most of the Federal Defendants were not involved in the search, and reasonably, should be able to defend against this suit on this fundamental basis.

As explained by the Supreme Court in upholding the right of a defendant to raise

qualified immunity in successive interlocutory appeals:

> [R]esolution of the immunity question may "require more than one judiciously timed appeal," because the legally relevant factors bearing upon the Harlow [v. Fitzgerald, 457 U.S. 800 (1982)] question will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for "objective legal reasonableness." On summary judgment, however, the plaintiff can no longer rest on the pleadings, see Fed. Rule Civ. Proc. 56, and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the Harlow inquiry.  It is no more true that the defendant who has unsuccessfully appealed denial of a motion to dismiss has no need to appeal denial of a motion for summary judgment, than it is that the defendant who has unsuccessfully made a motion to dismiss has no need to make a motion for summary judgment.

Behrens v. Pelletier, 516 U.S. 299, 309 (1996); see also Robbins v. Wilkie, 433 F.3d 755, 764

(10th Cir. 2006)("A district court's decision denying a defendant's motion to dismiss on qualified

immunity is not law of the case for purposes of a subsequent motion for summary judgment on

qualified immunity.")

Thus, the law of the case doctrine and collateral estoppel do not prevent Defendants from

raising the qualified immunity argument here.

II.    Plaintiff Has Not Carried His Burden of Showing That Each Individual Defendant
       Violated His Constitutional Rights

There is no respondeat superior liability under Bivens.  Cameron v. Thornburgh, 983

F.2d 253, 258 (D.C. Cir. 1993).  Nor can an officer be liable under Bivens merely because the

officer was part of a group and improper conduct is alleged to have occurred.  Vietnam Veterans

of America v. McNamara, No. CIV. A. 02-2123(RMC), 2005 WL 485341, *7 (D.D.C. Feb. 17,

2005) ("Because the qualified-immunity inquiry is an individualized one, the allegations against

each defendant must be scrutinized.") (citing Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982));

see also Poe v. Leonard, 282 F.3d 123, 134 (2d Cir. 2002) ("qualified immunity analysis depends upon an individualized determination of the misconduct alleged"); Cunningham v. Gates, 229 F.3d 1271 (9th Cir.2000) (the qualified immunity determination requires that a court "carefully examine the specific allegations against each individual defendant"). Instead, Bivens liability can only lie if the defendant personally participated in conduct which he or she knew or should have known was unconstitutional. Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)("[T]he direct physical participation of the defendant in the constitutional violation is not alone a sufficient basis for holding the defendant liable if the defendant had no awareness or notice of the facts that rendered the action illegal.")

Thus, in response to Defendants' Motion, the burden was on Plaintiff to come forward with competent, admissible evidence showing that each of the named defendants personally violated his constitutional rights. First Nat. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968)("What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him"); see also Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 130 (3d Cir. 1998)( "It is by now axiomatic that "a nonmoving party ... cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit to that effect.")(quoted cases omitted). Plaintiff has completely failed to carry his burden. Instead of identifying how each defendant personally violated his constitutional rights, Plaintiff seems to suggest that the Court should subject the thirty-seven moving defendants to liability as a collective group.

The actions of the individual defendants and their entitlement to qualified immunity will be discussed further, below. However, at the outset, it should be noted that Plaintiff has not

submitted any evidence that USCP Defendants Blieden, Boswell, Brooks, Cabezas, Crawford, DePalma, Dineen, Guthrie, Gutierrez, Hinkle, Huycke, Malloy, McElroy, Meikrantz, Nutwell, Salb, Schauf, Shark, Talbot, Turner or Udell, or FBI Defendants Arseni, Gardner, Garten, Godbold, Ginsburg and Vienna had any involvement in the physical search of the van on March 6, 2003, the impoundment of the van, or the inventory search on March 7, 2003. See Fed. Def.'s Mot. at 7 (citing Ex. 1, 2 (pp. 4-5, 11-15),  3 and 5).  Plaintiff has not even suggested why these defendants have been named in the lawsuit.  They are therefore entitled to dismissal of this action as against them or summary judgment.  See, e.g. Risley v. Hawk, 108 F.3d 1396, 1396-97 (D.C. Cir. 1997).

III.    Defendants Are Entitled to Qualified Immunity

When the search of a vehicle fails to find any evidence of wrongdoing, perhaps it is only natural for the owner to suppose the Constitution is violated and that the law enforcement officials involved should be personally liable.  That, however, is not the rule based on well-settled law.  The qualified immunity doctrine enunciated by the Supreme Court in Harlow v. Fitzgerald, cited supra, was formulated to allow government officials the necessary latitude to exercise their authority without the chill and distraction of damages suits.  It accomplishes that aim by broadly protecting government officials from personal liability litigation for conduct performed in their jobs except in egregious instances when they engage in actions that plainly infringe settled rights.  457 U.S. at 814.

Thus, a defendant is entitled to immunity if a reasonable officer could have believed that probable cause existed, even if the officer was mistaken about the underlying facts,  Saucier v. Katz, 533 U.S. 194, 205 (2001)("[o]fficers can have reasonable, but mistaken, beliefs as to the

facts establishing the existence of probable cause ... and in those situations courts will not hold

that they have violated the Constitution) or mistaken about whether the facts supported a finding

of probable cause.  Id. at 205 ("The concern of the immunity inquiry is to acknowledge that

reasonable mistakes can be made as to the legal constraints on particular police conduct");

Olaniyi, 416 F.Supp.2d at 52.

In the context of a probable cause determination, some courts have referred to the

principles expressed in Saucier as "arguable probable cause."  See, e.g. Escalera v. Lunn, 361

F.3d 737, 743 (2d Cir. 2004); Brown v. Lyford, 243 F.3d 185, 190 (5th Cir. 2001); Williams v.

Jaglowski, 269 F.3d 778, 781 (7th Cir. 2001); Walker v. City of Pine Bluff, 414 F.3d 989, 993

(8th Cir. 2005);  Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002).  Whatever the label, an

officer is entitled to qualified immunity when "a reasonable police officer in the same

circumstances and possessing the same knowledge as the officer in question could have

reasonably believed that probable cause existed in the light of well-established law."  Lee v

Sandberg, 136 F.3d 94, 102 (2d Cir. 1997) (citation omitted) (emphasis in original); see also

Lederman v. U.S., 291 F.3d 36, 48 (D.C. Cir. 2002)(qualified immunity applies where

reasonable officer could have believed that the sidewalk's proximity to the Capitol altered the

First Amendment balance with respect to demonstration activities there).  This forgiving

standard protects "all but the plainly incompetent or those who knowingly violate the law."

Malley v. Briggs, 475 U.S. 335, 341 (1986).

Even on summary judgment, where the facts must be viewed in the light most favorable

to the non-moving party, for the purpose of qualified immunity police officers are entitled to

draw reasonable inferences from the facts they possess at the time of  of their actions, based

6

upon their own experiences.  See, e.g. Cerrone v. Brown, 246 F.3d 194, 203 (2d Cir. 2001)(citing

Ornelas v. United States, 517 U.S. 690, 699 (1996)(noting that "a police officer views the facts

through the lens of his police experience and expertise. The background facts provide a context

for the historical facts, and when seen together yield inferences that deserve deference")); see

also Los Angeles Co. v. Rettele, --- S.Ct. ----, 2007 WL 1461071 (U.S. May 21, 2007)(search not

in violation of Fourth Amendment notwithstanding that occupants of home were of a different

race than those identified in warrant and were held at gunpoint for one or two minutes while

officers verified that no weapons or other individuals present.  The Supreme Court reversed

denial of qualified immunity.)

     Moreover, it is proper to decide this issue at the summary judgment stage of litigation:

> We recognize the apparent anomaly of holding that summary judgment is
> appropriate when a trier of fact would find that reasonable officers could
> disagree. . . .  Disputes over reasonableness are usually fact questions for
> juries.  However, in qualified immunity cases, we are not concerned with
> the correctness of the defendants' conduct, but rather the 'objective
> reasonableness' of their chosen course of action given the circumstances
> confronting them at the scene.  With this concern in mind, we have held
> that when the factual record is not in serious dispute . . . [,] [t]he ultimate
> legal determination whether . . . a reasonable police officer should have
> known he acted unlawfully is a question of law better left for the court to
> decide.

Lennon v.Miller, 66 F.3d 416, 420-21 (2d Cir. 1995) (quoting Warren v. Dwyer, 906 F.2d 70, 76

(2d Cir.), cert. denied, 498 U.S. 967 (1990)); see also  Anderson v. Creighton, 483 U.S. 635, 641

(1987).

    A.   Exigent Circumstances Justified the Search of the Van While It Was Parked on
         Third Street NE

When law enforcement personnel are "confronted with evidence which would lead a

prudent and reasonable official to see a need to act to protect life or property, they are authorized

to act on that information, even if ultimately found erroneous." United States v. Holloway, 290 F.3d 1331, 1340 (11th Cir. 2002), quoting Wayne v. United States, 318 F.2d 205, 212 (D.C. Cir. 1963). One of the "most compelling" events giving rise to exigent circumstances is the occurrence of an emergency situation and the most "urgent" emergency situation is the "need to protect or preserve life." Id. at 1335 citing Mincy v. Arizona, 437 U.S. 385, 392 (1978). As stated by this Circuit, police officers must be given the authority and flexibility to act quickly, based on limited information, when human life is at stake:

> [A] warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Fires or dead bodies are reported to police by cranks where no fires or bodies are to be found. Acting in response to reports of "dead bodies," the police may find the "bodies" to be common drunks, diabetics in shock, or distressed cardiac patients. But the business of policemen and firemen is *to act,* not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process.

Wayne v. United States, 318 F.2d 205, 212 (D.C. Cir.1963)(emphasis added).

As set forth in the declarations supporting the Federal Defendants' Motion, and as explained in that Motion at 14-16, the decision to search the van while it was parked on Third Street NE was made by USCP Captain Udell based on the reasonable belief that an emergency existed because Plaintiff may have had explosives in the van. See Fed. Defs.' Ex. 2 (Decl. of Bracci, King and Udell). This belief was based upon Plaintiff's and Ms. Patel's actions, specifically, their displaying at the U.S. Capitol -- a location known to be a terrorist target -- what appeared to be suicide bomber belts hidden under their outer clothing. See Ex 2 (Decl. of Bracci, Dineen, King, Malloy, Meikrantz and Udell). They reasonably believed that Plaintiff's

8

actions were consistent with a terrorist conducting a "dry run" in order to probe security at the Capitol, see id., and they were concerned that Plaintiff may have had explosives in the van which he planned to use later, or which could be triggered by third parties or by a timer. See id. After an initial visual inspection through the window, during which Special Agents Bracci and King observed unmarked glass jars filled with suspicious looking liquids between the front seats, they believed that the threat to public safety was very high. See Fed. Defs.' Ex 2 (Decl. of Bracci and King).[3] They then conducted an inspection of the van for the sole purpose of locating and rendering safe any explosives or other hazardous materials which could endanger the public. See id.

Plaintiff's facile response is that a search warrant should have been obtained. However, a search warrant is not required when exigent circumstances exist, and a possible vehicle bomb parked on Third Street NE clearly presented exigent circumstances. Plaintiff further asserts that the only explanation for not obtaining a warrant was Defendants' "fear that a court, considering the evidence, would have declined to issue such a warrant." Pl.'s Op. at 16. In fact, the evidence shows that what the Defendants at the scene feared is an explosion causing death and destruction. That is why Third Street NE was closed to vehicular and pedestrian traffic, why a perimeter was set up one-half block to a block away, keeping everyone away from the van except U.S. Capitol Police bomb technicians Bracci and King, who entered the vehicle after

---

[3]Plaintiff argues that the officers could not see inside the van. Pl.'s Op. at 23. At the same time, however, he acknowledges that the windows adjacent to the driver and front passenger seats were not blocked, nor was the windshield, so it remains unclear why plaintiff thinks no one could see inside the van. Id.

donning their Personal Protective Equipment downrange from the van.  See Fed. Defs.' Ex 2

(Decl. Bracci, Dineen, King, Malloy, Meikrantz, and Udell).[4]

Plaintiff also argues that because the Capitol Police had time to host and address the

media, they had time to obtain a warrant.  Pl.'s Op. at 18-19.  Plaintiff does not suggest that the

bomb technicians who performed the search were the same people who addressed the media

before the search.  Consequently, and to put it politely, it is difficult to see Plaintiff's point.[5]

Plaintiff describes the evidence regarding the Defendants' concern about a terrorist "dry

run" as a "story" which is "new, unsubstantiated, and absurd."  Pl.'s Op at 19.   These harsh

words again suggest a failure to appreciate basic principles of law, as well as basic principles of

law enforcement.  That this evidence may be "new" to Plaintiff does not suggest it is "new" to

Defendants.  With the exception of defendants Nutwell and DePalma, neither of whom had any

involvement in the search of the van, see Fed. Defs.' Ex 2 (Decl. of Nutwell and DePalma), all of

the moving Defendants were brought into this case by Plaintiff's Second Amended Complaint,

filed October 31, 2006.  This motion is the first response to that Second Amended Complaint.

That is why Defendants have presented declarations explaining  their concern about a dry run

four years after the incident and two years after the initial complaint was filed, notwithstanding

Plaintiff's apparent surprise that it should be so.

---

[4]Plaintiff argues that there were no exigent circumstances because he had already been arrested.  But as previously explained, the presence of explosives in the van posed an immediate threat whether or not Plaintiff was present.  See Fed. Defs.' Ex. 2 (Decl of Bracci, King, Malloy, Meikrantz and Udell).

[5]Plaintiff also states that his van was properly registered in the State of Michigan, Op. at 22, which is irrelevant.  He does not dispute that his license tags were out of date, id. at 23, although even that is not a significant point.

Plaintiff's assertion that the concern about a dry run is "unsubstantiated" is simply not accurate. The declarations submitted in support of the Federal Defendants' Motion substantiate the concern about a dry run, as do common sense and the public sources cited in the Federal Defendants' Motion (at 23) which demonstrate that the U.S. Capitol Building was a known terrorist target and that it was well known that terrorists conduct dry runs of proposed targets. Plaintiff states that he has not found any reference to a dry run in the documents produced to him thus far.[6] However, he does not (and could not) deny that the documents show that the duct tape apparatus worn by Plaintiff had the appearance of a suicide bomber explosive belt; that when he was interviewed later in the day he was asked about his connections to terrorist organizations (see Fed. Defs. Ex. 4, Report of Interview attached as Ex. C to Decl. of Finnerty) and that the FBI sent the belt apparatus and other items to the FBI Laboratory for analysis despite the fact that the field testing was negative for explosives, see id., ¶ 4.[7] All of these facts are consistent with the Defendants being concerned that Plaintiff was, knowingly or as a dupe, probing security at the Capitol. Furthermore, Plaintiff does not suggest that the documents produced to him contain any interviews of Defendants or other documents which required Defendants to explain their discussions or thought processes. Nor does Plaintiff suggest that any documents produced to him contradict Defendants' declarations. Thus, by "unsubstantiated," Plaintiff simply appears to mean that he refuses to accept the uncontradicted evidence.

---

[6] He has not attached those documents to his Opposition Memorandum.

[7] The field testing for explosives was a presumptive, not definitive test. See Fed. Defs.' Ex 2 (King Decl); Ex 4 Finnerty Decl., ¶ 4. Thus, the fact that no explosive residue was found during the field testing at the Crypt did not rule out that more thorough testing would reveal explosive residue. That is why the belt and other items were sent to the FBI Laboratory. Id.

Finally, Plaintiff's assertion that the concern about a dry run is "absurd" because Plaintiff would not have left explosives in his van is, at best, uninformed.  Plaintiff seems to assume that law enforcement officials are required, as a matter of constitutional law, to assume that the plans of terrorists are always well thought out and executed as planned.  Of course, there is no such principle of constitutional law.  Terrorists make mistakes, stupid and otherwise,[8] and law enforcement officials would be justifiably criticized, in the light of the potential disastrous outcome, if they based their investigations on the assumption that terrorists do not make mistakes. Here, the Federal Defendants were not required to assume that Plaintiff knew, for example, that he would be arrested, knew that law enforcement would want to search his van and knew that law enforcement would be able to locate his van.  Nor were Defendants required to assume that Plaintiff remembered to remove any explosives he had stored in his van prior to leaving for a dry run.   Plaintiff seems to agree that there might be legitimate concern about explosives in the van if third parties were involved, but he then rejects that possibility. Apparently, in Plaintiff's view, the concern that terrorists work in groups larger than one or two individuals is unreasonable.

In sum, the uncontradicted evidence is that there was probable cause to believe that exigent circumstances existed.  However, as noted above, the Court need not find that exigent circumstances, in fact, existed in order to find that the Federal Defendants are entitled to

---

[8]See, e.g. May 11, 2007 Washington Post "Fort Dix Suspects Are All Denied Bail" (reporting that alleged would-be terrorists were apprehended when Circuit City employees reported possible terrorist links in a jihad training video brought to the store  to be copied to DVD) (available at WashingtonPost.com).

qualified immunity.[9]  Rather, qualified immunity applies if an officer could have reasonably,

although mistakenly, believed that exigent circumstances existed.  <u>Saucier</u>, <u>supra</u>.  As stated by

the Supreme Court:

> We have recognized that it is inevitable that law enforcement officials will in
> some cases reasonably but mistakenly conclude that probable cause is present,
> and we have indicated that in such cases those officials -- like other officials who
> act in ways they reasonably believe to be lawful -- should not be held personally
> liable.  The same is true of their conclusions regarding exigent circumstances.

<u>Anderson v. Creighton</u>, 483 U.S. 635 (1987)(internal citation omitted).

Stated another way, defendants are entitled to qualified immunity unless no reasonable

officer could have believed that exigent circumstances existed.  <u>Malley</u>, 475 U.S. at 341.

Importantly, the qualified immunity analysis is not based on whether, in the abstract, Plaintiff

has a Fourth Amendment interest in his vehicle, but whether under the particular facts and

circumstances faced by the officers, viewed through their experience and expertise,  it was

clearly established that an inspection of the vehicle for explosives was unconstitutional.

<u>Anderson</u>, <u>supra</u>, at 639-40.

Plaintiff has not cited any case law that would have placed the Federal Defendants clearly

on notice that their actions here were unconstitutional.  <u>See</u> <u>Wilson v Layne</u>, 526 U.S. 603, 617

(1999)(stating that the petitioners "have not brought to our attention any cases of controlling

---

[9]Indeed, this Court has already recognized this point in the context of denying Plaintiff's
motion to certify this Court's dismissal of Plaintiff's First and Fifth Amendment claims for
immediate appellate review.  As to the search of Plaintiff in the U.S. Capitol, this Court stated, "I
think it would have been derelict on [the officers'] part for them not to have taken some action
despite conceivably what may have happened because when they don't act reasonably and take
appropriate actions to assess whether someone is posing a danger they can't rectify that through
hindsight because conceivably you have dead people."  <u>See</u> Ex. 6, <u>Olaniyi v. District of
Columbia</u>, Docket No. CA 05-0455(RBW)(D.D.C. May 4, 2006)(Transcr. of Status Conf. 3:10
to 3:15)(attached hereto).

authority in their jurisdiction at the time of the incident which clearly established the rule on

which they seek to rely, nor have they identified a consensus of cases of persuasive authority

such that a reasonable officer could not have believed that his action were lawful").  Plaintiff

suggests that Preston v. United States, 376 U.S. 364, 367-68 (1964) and United States v. Maiden,

870 F.Supp. 359, 361 (D.D.C. 1994) stand for the proposition that a warrantless search of a

vehicle cannot occur once the vehicle owner is arrested, but those cases do not say that.  In

Preston, the Court rejected the assertion that the search of the vehicle fell within the exception

for searches "incident to arrest," but in that case, unlike here, there was no reason to believe that

exigent circumstances existed, and the search occurred after the vehicle had been towed to a

garage.  In Maiden, the court found that the search of an entire apartment after an arrest was not

justified by exigent circumstances, since after the arrest there was no further potential for danger

-- Maiden had been subdued and "there were no other persons in the apartment who the police

believed would use [a] weapon in a hostile manner."  870 F.Supp. at 361.  Neither case presents

facts similar to those here.

    Furthermore, the uncontradicted evidence is that the decision to search the van was made

by Captain Udell, who was the Commander of the USCP Hazardous Incident Response Division

and was in charge of the scene.  Fed. Defs.' Ex 2 (Decl. of Udell, King).  Because Special

Agents Bracci and King carried out the search at Captain Udell's instructions, id., and because

those instructions were not clearly improper, they are entitled to qualified immunity.  See, e.g.

Bilida v. McCleod, 211 F.3d 166, 174 (1st Cir. 2000) ("Plausible instructions from a superior or

fellow officer support qualified immunity where, viewed objectively in light of the surrounding

circumstances, they could lead a reasonable officer to conclude that the necessary legal

14

justification for his actions exists"); see also Lauro v. Charles, 219 F.3d 202, 216 n.10 (2d Cir. 2000) (the "existence of qualified immunity is further supported by the fact that [the defendant] was apparently following orders given by his superiors when he took [plaintiff] on the perp walk"); Arnsberg v. United States, 757 F.2d 971, 975, 981 (9th Cir. 1985), cert. denied, 475 U.S. 1010 (1986) (Internal Revenue Service agents awarded qualified immunity when relying on advice of an Assistant United States Attorney); Washington Square Post No. 1212 American Legion v. Maduro, 907 F.2d 1288, 1293 (2d Cir. 1990) (FBI agents were "entitled to rely on the reasonable instructions of their superior in the chain of command" and it was therefore "objectively reasonable for [the officers] to believe that their [conduct] was lawful").

In sum, Plaintiff's actions and external appearance as a potential suicide bomber probing security at the U.S. Capitol, viewed through the lens of the Federal Defendants' experience and expertise about how terrorists operate, provided probable cause to believe that Plaintiff may have had explosives in his van. Therefore, exigent circumstances justified the search of the van for the limited purpose of locating and rendering safe any explosives or other hazardous materials. Even if the conclusion that probable cause existed was mistaken, qualified immunity applies, as there was no clearly established law that would have placed an officer on notice that under these particular facts, the limited search of the van was unconstitutional. Qualified immunity recognizes that "there is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties." Harlow, 457 U.S. at 814. It is difficult to conceive of a public duty which requires more resolute and unflinching discharge than that of bomb technician, and qualified immunity appropriately advances the public interest in having bomb technicians err on the side of caution

in determining whether or not to conduct a search in order to prevent death and destruction. Therefore, the Federal Defendants' Motion should be granted.

      B.     <u>The Vehicle Search Was Justified Under the Automobile Exception</u>

As stated in the Federal Defendants' Motion, the search of the van is also justified under the automobile exception to the warrant requirement. <u>Arkansas v. Sanders</u>, 442 U.S. 753, 760 (1979); <u>United States v. Duran</u>, 884 F.Supp. 552 (D.D.C. 1995). There was probable cause to believe that Plaintiff's van posed an immediate and serious threat that justified the inspection or that it contained evidence relating to the crimes for which Plaintiff had been arrested. In arguing that the automobile exception does not apply, Plaintiff tries to distinguish this case from <u>Duran</u> on the grounds that Mr. Duran had fired shots whereas no explosives were found on Plaintiff's person at the Crypt. But this misses the point. In <u>Duran</u>, as here, law enforcement officials searched a vehicle some distance away from and subsequent to the vehicle owner's arrest. The court held that the search was justified under the automobile exception because there was a fair probability that the vehicle contained additional evidence of criminal activity. <u>Id</u>. at 555. As in <u>Duran</u>, here there was probable cause to believe that Plaintiff's vehicle posed an immediate threat or had evidence relating to the crime for which Plaintiff had been arrested. At a minimum, qualified immunity should apply, as it was not clearly established that under these circumstances that the vehicle exception would be inapplicable.

      C.     <u>The Federal Defendants Are Entitled to Qualified Immunity in Connection with the Inventory Search</u>

In their Motion, the Federal Defendants set forth the applicable legal standards and facts supporting a finding of qualified immunity with respect to the inventory search. Fed. Defs.' Mot

at 21-27.  Plaintiff has confused both the facts and law in his arguments in opposition to this point.

In response to the discussion of the "community caretaking" function, Plaintiff asserts that it is "both absurd and laughable" (Pl.'s Op. at 25) that any of the defendants were concerned about protecting the van and its contents since they were also concerned that it might contain explosives.  It may be that Plaintiff's amusement is based on a misunderstanding of the sequence of events.  The FBI's decision to impound the van was made *after* the U.S. Capitol Police cleared the van, i.e, determined that it did not present an immediate danger.  Fed. Defs. Ex. 3 (Decl. of Edmonson).  In any case, why Plaintiff believes there is any contradiction in these concerns is unclear.  Plaintiff also asserts that there is no evidence that community caretaking crossed anyone's mind (Pl.'s Op. at 25) but he has overlooked the declaration of Special Agent Edmonson, ¶ 3 ("I knew that Mr. Olaniyi and Ms. Patel had been arrested, so I did not want to leave their van on the street and run the risk that it would be vandalized, stolen, or towed because of a parking violation"), Fed. Defs.' Ex. 3, as well as the declaration of Special Agent Finnerty, Fed. Defs. Ex. 4 (Finnerty Decl. ¶ 6).[10]

Plaintiff also argues that there was no probable cause to believe that the van contained evidence of a crime.  Pl.'s Op. at 26.  However, as discussed in the Federal Defendants' Motion, there was clearly reason to believe that Plaintiff had used the van prior to his actions at the Capitol -- which actions appeared at a minimum to be a bomb hoax in violation of 18 U.S.C. §

---

[10]Plaintiff also asserts that only the Metropolitan Police could carry out a community caretaking function.  He cites no authority or evidence to support this, nor is there any.  Furthermore, the search was conducted by the U.S. Capitol Police, a federal law enforcement agency acting within its jurisdiction pursuant to 2 U.S.C. § 1967, and there is no evidence that the Metropolitan Police Department had any involvement in the matter.

844(e) -- and that the van would therefore contain evidence pertaining to his actions and intentions, and possibly the actions and intentions of third parties. Thus, it was proper to impound the van on this basis. See United States v. Ross, 456 U.S. 798, 807 n. 9 (1982). At a minimum, qualified immunity would apply, as it was not clearly established under the case law and in the circumstances presented here that it was unconstitutional to impound the vehicle.

Furthermore, even aside from the existence of arguable probable cause, the defendants involved in the inventory search are entitled to qualified immunity. As stated in the Edmonson Declaration (Fed. Defs. Ex. 3, ¶ 3), the decision to impound the vehicle was made by a supervisory official at the FBI's Washington Field Office. Special Agent Edmonson was entitled to carry out that decision, which was not clearly improper. Bilida , supra; Lauro, supra. After the vehicle was towed to an FBI storage facility, Special Agent Finnerty, as the case agent, requested that an inventory search be performed. Fed. Defs. Ex. 4, Finnerty Decl. ¶ 6. Again, there was nothing clearly improper about requesting an inventory search on an impounded vehicle. To the contrary, it was required under FBI policy. Id. Therefore, Special Agent Finnerty is entitled to qualified immunity.

The following day, March 7, 2003, the inventory search was done by Special Agents Cejpek, Chinchilla, Collins-Mortion, Menold, Rankin and Sidener, none of whom had any involvement in the events of the previous day. After the inventory search was completed, defendant Special Agents Garten and Godbold were asked, for safety purposes, to conduct a field screening of three jars of liquid found in the van. They had no involvement in prior events. All these defendants were entitled to rely and act upon information provided by other officers -- in other words, they had no obligation to independently determine whether there was probable

18

cause to impound the van.  See, e.g. Whiteley v. Warden, 401 U.S. 560, 568 (1971) (police

officers called upon to aid other officers in executing arrest warrants are entitled to assume that

the officers requesting aid had properly determined the existence of probable cause); Caldarola

v. Calabrese, 298 F.3d 156, 167 (2d Cir. 2002)("[w]e decline to impose on officers a duty to

conduct an independent investigation into the materials provided to them by their superiors");

Delgado v. Miami-Dade Co., 456 F.Supp.2d 1234, 1238 (S.D. Fla. 2006)(the fellow officer rule

permits an arresting officer to rely on information supplied by fellow officers to effectuate the

arrest); Aniniba v. City of Aurora, 994 F.Supp. 1293, 1298 (D. Co. 1998)(officers who

responded to arresting officer's request, and took custody of plaintiff and transported him to

police station had no duty to conduct independent investigation into arrest).  Consequently, all

the defendants involved in the impoundment of the van, the inventory search and the field

screening of the jars are entitled to qualified immunity.[11]

> D.    The Alleged Damage to Property Does Not State a Bivens Claim

Defendants have provided declarations stating that the search of the vehicle while parked

on Third Street NE and the inventory search conducted the following day were conducted

carefully, and in an effort to avoid any damage to the van's contents.  Fed. Defs. Ex 2 (Decl of

Bracci and King); Fed. Defs. Ex. 4 (Decl. of Cejpek, Chinchilla, Collins-Mortion, Menold,

Rankin and Sidener).

---

[11]Plaintiff asserts as fact that "[i]n the course of this inventory search, the Federal Defendants broke or destroyed pieces of Olaniyi's artwork."  Opposition at 24.  Plaintiff neither cites to nor presents any evidence that there was any damage to his artwork in the course of the inventory search, and the individual Defendants involved in the inventory search have specifically denied this.  See Ex 3.  Furthermore, as explained in the Federal Defendants' Motion and below, even if there was evidence that damage occurred during the inventory search, a Bivens action would not be the proper remedy.

Notwithstanding this point, Plaintiff misstates the law.  He asserts that "the destruction of one's property is itself considered a violation of the Fourth Amendment."  Pl.'s Op. at 27.  He cites U.S. v. Tueller, 349 F.3d 1239, 1245 (10th Cir. 2003) for this blanket statement, but that case does not support Plaintiff's assertion.  In fact, in Tueller, the Court held that it would not have violated the Fourth Amendment for officers to have broken into the locked trunk of a vehicle.  Id. at 1245.  It may be true that "excessive" or "unnecessary" destruction of property may render police conduct unreasonable for Fourth Amendment purposes, see United States v. Ramirez, 523 U.S. 65, 71 (1998)(but holding that when officers have reasonable suspicion justifying a no-knock entry, a heightened standard of suspicion is not imposed just because the entry requires destruction of property) but Plaintiff has provided no evidence to show that any alleged damage to his artwork  was "excessive" or "unnecessary" in a constitutional sense.  Furthermore, the proposition that excessive or unnecessary property damage might constitute a Fourth Amendment violation in some circumstances does not mean that a Bivens claim should lie.  See Schweiker v. Chilicky, 487 U.S. 412, 422 (1988)(explaining that the Court's decisions have responded cautiously to suggestions that Bivens remedies be extended into new contexts).  As stated in the Federal Defendants' Motion, if Plaintiff can establish that property in the van was damaged, the proper remedy would be to seek compensation under the Federal Tort Claims Act ("FTCA"), not Bivens.[12]

---

[12]Indeed, Plaintiff filed an administrative FTCA claim with the Federal Bureau of Investigation, the U.S. Capitol Police, and the Secret Service.  See Olaniyi v. United States of America, Civil Action No. 06-2165(RBW)(D.D.C.).  The United States, however, has answered that Plaintiff's claims against the FBI and the Capitol Police are time-barred.  Further, the allegations against the Secret Service are unrelated to the search of the van.

F.    The Statute of Limitations Bars the Claims Against the Federal Defendants

"The court's equitable power to toll the statute of limitations will be exercised only in

extraordinary and carefully circumscribed instances." Mondy v. Secretary of the Army, 845 F.2d

1051, 1057 (D.C. Cir. 1988). "Equitable tolling permits a [claimant] to avoid the limitations

period *if despite all due diligence* [he] is unable to obtain vital information bearing on the

existence of [his] claim." Smith-Haynie v. District of Columbia, 155 F.3d 575, 579 (D.C. Cir.

1998)(emphasis added); see also Sprint Communications Co., L.P. v. FCC, 76 F.3d 1221, 1228

(D.C. Cir. 1996)("Once the prospective plaintiff is on notice that it might have a claim, it is

required to make a diligent inquiry into the facts and circumstances that would support that

claim."). Quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990), this Court has

stated "*a plaintiff will not be afforded extra time to file without exercising due diligence*, and the

plaintiff's excuse must be more than a 'garden variety claim of excusable neglect.'"[13]  Stewart v.

District of Columbia, No. Civ. A. 04-1444 CKK, 2006 WL 626921, *7  (D.D.C. March 12,

2006); see also Dodds v. Cigna Secs., Inc., 12 F.3d 346, 350 (2d Cir. 1993)(equitable tolling will

stay running of the statutory period "only as long as the plaintiff has exercised reasonable care

and diligence... (internal quotations omitted)).

As noted in their motion, the Federal Defendants produced their initial disclosures to

Plaintiff on or around May 24, 2006 identifying those involved in the search of the vehicle (i.e.,

Don King and Donald Bracci) or who were on the scene (John Dineen, Robert Meikrantz, Don

---

[13]Accordingly, the "due diligence" standard for tolling the statute of limitations is
considerably more stringent than and distinguishable from the "excusable neglect" standard
applicable to, for example, consideration of an untimely motion for enlargement, see Fed. R.
Civ. P. 6(b)(2).

Malloy, Gillman Udell, Doug Edmonson, Kevin Finnerty, and Paul Garten).  Yet Plaintiff

inexplicably waited  until August 30, 2006 to file a motion for an extension of time to "identify

and serve" John Does[14] which federal defendants Nutwell and DePalma[15] opposed (see e.g. Ex.

7, E-Mail from Beverly Russell to Jennafer Neufeld, Aug. 30, 2006, attached hereto) and waited

to October 2006 to file his second amended complaint.  Thus, Plaintiff's suit against the

individuals identified in the May 24, 2006 Initial Disclosures should be dismissed as untimely.

Plaintiff clearly has not exercised the affirmative due diligence required for tolling the statute.

See Cada v. Baxter Healthcare Corp., 920 F.2d 446, 453 (7th Cir.1990) ("plaintiff who invokes

equitable tolling to suspend the statute of limitations must bring suit within a reasonable time

after he has obtained, or by due diligence could have obtained, the necessary information").

Plaintiff argues that the federal defendants identified in his second amended complaint should

have been on notice of Plaintiff's intent to sue because the undersigned counsel could have

provided such information, Pl.'s Op. at 29.  This argument lacks merit since the relevant

standard does not contemplate "notice" to likely defendants by a counsel familiar with the case

as a reason for equitably tolling the statute.  The standard is more circumscribed and relates to

the "due diligence" on the part of the claimant which was absent here.  In his opposition

memorandum, Plaintiff presented no reason (garden variety excusable neglect or otherwise) for

his failure to comply with the "due diligence" standard , i.e., to file his second amended

complaint as against the individuals identified in the initial disclosures in a reasonably timely

manner.  Accordingly, this suit as against Don King, Donald Bracci, John Dineen, Robert

---

[14]Plaintiff should have filed his motion for enlargement in March 2006 to be timely.

[15]The only defendants identified in Plaintiff's original complaint.

Meikrantz, Don Malloy, Gillman Udell, Doug Edmonson, Kevin Finnerty, and Paul Garten

should be dismissed with prejudice for failure to comply with the statute of limitations, or more

specifically, the standard for tolling the limitations period.[16]

---

[16]Indeed, there is a separate basis for dismissing this suit against all Defendants named for the first time in Plaintiff's Second Amended Complaint. Rule 15(c) of the Federal Rules of Civil Procedures provides that an amended complaint relates back to the date of the original pleading when (1) permitted by the statute of limitations applicable to the action; (2) the claim or defense arose out of the "conduct, transaction, or occurrence" set forth in the original pleading; or (3) the amendment changes a party and the foregoing provision (2) is satisfied. "When 'relation-back' is based on (3), the new party must also have received notice of the suit within the period set under Fed.R.Civ.P. 4(m), must not be prejudiced in maintaining a defense, and should have known that, *but for a mistake in identity*, the suit would have been brought against [him or her]. Fed.R.Civ.P. 15(c)(1)-(3)." Callahan v. Southwestern Medical Center, NO. CIV-03-1434F (W.D.Okla. April 29, 2005), report and recommendation adopted by 2005 WL 1656917 (W.D. Okla. July 7, 2005), aff'd, 178 Fed. Appx. 837 (10th Cir. May 8, 2006)(unpub.)(emphasis added).

Plaintiff points out that the Court, in its November 10, 2006 Order, indicated that the adding of Doe defendants would relate back under Rule 15(c) and Fludd v. U.S. Secret Service, 102 F.R.D. 803, 805 (D.D.C. 1984). Pl.'s Op. at 28. However, it is not clear that Fludd reflects the current state of the law. See Rendall-Speranza v. Nassim, 107 F.3d 913, 917-18 (D.C. Cir. 1997)(stating that 15(c) applies where there is a "mistake" as to the proper defendant). In Rendall-Speranza, the D.C. Circuit cited Barrow v. Wethersfield Police Dept., 66 F.3d 466, 469 (2d Cir. 1995), which held that 15(c) does not apply to "John Doe" defendants because they are not named as a result of a "mistake." And more recently, in Komongnan v. U.S. Marshals Service, 471 F.Supp.2d 1, 4 n. 2 (D.D.C. 2006), this Court stated,

> . . .the weight of federal case law. . .holds that a "plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party'" as required by Rule 15(c)(3)(B), Garrett v. Fleming, 362 F.3d 692, 696 (10th Cir.2004), and thus "'John Doe' pleadings cannot be used to circumvent statutes of limitations." Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 468 (2d Cir.1995), *modified*, 74 F.3d 1366 (2d Cir.1996). . .

Accordingly, consistent with case law more recent than Fludd, Plaintiff's suit is actually barred as against the Defendants identified for the first time in his Second Amended Complaint. His identification of these Defendants in his second amended complaint was not based on mistake (allowed by Fed. R. Civ. P. 15(c)), but based on lack of knowledge which, according to Barrow, 66 F.3d at 468, "cannot be used to circumvent statutes of limitations."

G.    <u>Plaintiff Has Not Shown Any Right to Discovery under Fed. R. Civ. P. 56(f)</u>

Plaintiff cites several District of Columbia Circuit cases for the proposition that a party opposing summary judgment should be given a reasonable opportunity for discovery.  Pl.'s Op. at 9, 29-30.  While that principle might apply to civil litigation generally, it does not hold true for cases in which government officials have available a qualified immunity defense.  As this Circuit once observed, although "summary judgment, in the mine-run of cases, is generally inappropriate 'until all discovery has been completed' ... creditable pleas of official immunity remove cases from the mine-run category."  <u>Martin v. D.C. Metropolitan Police Dep't</u>, 812 F.2d 1425, 1436-37 (D.C. Cir. 1987) (citation omitted).

"One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."  <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991) (citations omitted).  That protection is enhanced by the essentially legal nature of the immunity standard under which "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow</u>, 457 U.S. at 818.  As the standard applies "[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred."  <u>Id</u>. (footnote omitted).  Further, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed."  <u>Id</u>.

Because qualified immunity entails a substantive "entitlement not to stand trial *or face the other burdens of litigation*,'"  <u>Behrens v. Pelletier</u>, 516 U.S. 299, 306 (1996) (quoting <u>Mitchell</u>

24

v. Forsyth, 472 U.S. 511, 526 (1985)) (emphasis added), procedural rules, such as the summary judgment rule, must be applied accordingly. Once a government official raises qualified immunity, therefore, "the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense.  It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings.'" Crawford-El v. Britton, 523 U.S. 574, 597-98 (1998).  As the Supreme Court has recently reemphasized, qualified immunity is to be resolved at the earliest possible stage of litigation. Scott v. Harris, 127 S.Ct. 1769, 1773 n.2 (2007).

That is not to say that discovery never may be allowed with respect to a summary judgment motion asserting immunity, see Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987), but it is to say that "Rule 56(f) discretion must be limited when a summary judgment motion is based on qualified immunity because insubstantial lawsuits 'against government officials [should] be resolved *prior to discovery and on summary judgment if possible*.'" Jones v. City and County of Denver, Colorado, 854 F.2d 1206, 1211 (10th Cir. 1988) (quoting Anderson, 483 U.S. at 640 n.2) (bracketed material and emphasis both original); see, e.g. Maraziti v. First Interstate Bank, 953 F.2d 520, 526 (9th Cir. 1992) ("Because Maraziti has failed to show a 'clearly established' violation of his constitutional rights, which is an issue of law, there was no reason to allow discovery on ancillary factual issues").  A trial court's discretion is accordingly narrowed such that "[i]n qualified immunity cases, the Rule 56(f) balancing is done with a thumb on the side of the scale weighing against discovery." Halbert Intern. Inc. v. James, 157 F.3d 1271, 1280 (11th Cir. 1998); see also Lewis v. City of Fort Collins, 903 F.2d 752, 759 (10th Cir. 1990) ("we hold that the district court abused its discretion in deferring a final ruling on

defendants qualified immunity claim pending discovery."); cf. Stewart v. Evans, 351 F.3d 1239, 1245-46 (D.C. Cir. 2003) (district court properly denied discovery under Rule 56(f) which would not have affected facts material to qualified immunity).

Thus, the public policies underlying qualified immunity require that the court's Rule 56(f) discretion be exercised "in a way that protects the substance of the qualified immunity defense." Crawford-El, 523 U.S. at 597-98.  Additionally, Rule 56(f) itself limits the extent to which a litigant's plea for discovery can forestall an otherwise properly-supported summary judgment motion, and "the discovery obtainable under Rule 56(f) to oppose a motion for summary judgment would normally be less extensive in scope than the general discovery obtainable under Rule 26." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 298 (1968) (footnote omitted).  The traditional standards for assessing applications for Rule 56(f) relief reflect these limits as well as the insight that "summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as a part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  The Federal Rules of Civil Procedure increasingly have recognized that discovery is not a cost-free exercise, but instead one that imposes substantial costs and burdens on parties and courts, such that the latter are directed to take an increasingly active role in managing the discovery process. See 2000 Amendments to Fed. R. Civ. P. 26(b)(1) (narrowing the presumptive scope of discovery); Advisory Committee Notes, 2000 Amendment to Fed. R. Civ. P. 26(b)(2) ("emphasiz[ing] the need for active judicial use of subdivision (b)(2) to control excessive discovery," citing Crawford-El, 523 U.S. at 597-98).

Strict standards exist for affidavits made under Rule 56(f) -- indeed, numerous courts have stressed that a party moving for further discovery or to avoid summary judgment must, by affidavit, show a detailed nexus between the information requested and the development of facts essential to justify the party's opposition.  Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash., 699 F.2d 1274, 1278 n. 6 (D.C. Cir.1983); see also Hotel & Rest. Employees Union, Local 25 v. Attorney Gen., 804 F.2d 1256, 1269 (D.C.Cir.1986) (noting that this affidavit requirement helps "prevent fishing expeditions"), vacated on other grounds, 808 F.2d 847 (D.C.Cir.1987).  A party seeking the protection of Rule 56(f) "must state by affidavit the reasons why he is unable to present the necessary opposing material." Cloverleaf, supra, at 1278 n. 6.  The party seeking additional discovery bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot produce those facts in opposition to the motion. Byrd v. Envtl. Prot. Agency, 174 F.3d 239, 248 n. 8 (D.C. Cir.1999). It must also show a reasonable basis to suggest that discovery would reveal triable issues of fact. Carpenter v. Fed. Nat'l Mortgage Ass'n, 174 F.3d 231, 237 (D.C. Cir. 1999); U.S. ex rel. Fisher v. Network Software Associates, 227 F.R.D. 4 (D.D.C. 2005).

The requirement that the party seeking shelter under Rule 56(f) show how additional discovery would preclude summary judgment and do so by reference to "particular facts expected from the [Rule 56(f)] movant's discovery" essentially calls for a forecast as to how the desired discovery would affect the summary judgment analysis.  Mackey v. Pioneer National Bank, 867 F.2d 520, 524 (9th Cir. 1989).  In other words, the party seeking Rule 56(f) relief must give the district court some firm idea that the discovery sought has a reasonable likelihood of helping the adverse party establish an issue of fact that is both "genuine" (hence the need to

"set[ ] forth particular facts," id.), and "material" (the need to "*show how* additional discovery would preclude summary judgment," id. (emphasis added)).  See Resolution Trust Corp. v. North Bridge Associates, Inc., 22 F.3d 1198, 1207 (1st Cir. 1994) (to satisfy Rule 56(f)'s materiality requirement, the movant must demonstrate that "the facts the movant seeks to discover [are] * * * foreseeably capable of breathing life into his claim or defense").  Thus, courts will grant summary disposition notwithstanding an opposing party's objection pursuant to Fed. R. Civ. P. 56(f) under circumstances where, for example, discovery will not alter undisputed facts (see, e.g. Stewart v. Evans, 351 F.3d at 1246), where the party moving pursuant to Fed. R. Civ. P. 56(f) fails to demonstrate what new facts he or she believes can be obtained through discovery (see e.g. Carpenter v. Federal Nat. Mortg. Ass'n, 174 F.3d 231, 237 (D.C. Cir. 1999), and where a court deems a party's request for discovery under the Rule as based on "speculation as to what potentially could be discovered" (see, e.g. Seils v. Rochester School Dist., 192 F.Supp.2d 100, 116 (W.D.N.Y. 2002); accord Byrd v. U.S. E.P.A., 174 F.3d 239, 248, n.8 (D.C. Cir. 1999)).

When Rule 56(f) is invoked by a party seeking to overcome a summary judgment motion based on qualified immunity, careful application of the materiality requirement is essential lest qualified immunity's purpose be defeated.  That is true, first, because discovery itself is one of the harms against which qualified immunity protects.  Second, the availability of that protection itself turns on a question of law.  See Mitchell, 472 U.S. at 526.  Where the law governing an official action is not clearly established in the circumstances, fact disputes material to the plaintiff's claim for relief are immaterial in the summary judgment sense.  Camarillo v. McCarthy, 998 F.2d 638, 640 (9th Cir. 1993).  Thus, a plaintiff cannot avoid the essentially legal qualified immunity defense by omitting from his pleading material facts he cannot genuinely

28

dispute while claiming a need for discovery on other facts that, while important to some aspects

of his case, ultimately are immaterial given the defendant's immunity.  See Jones, 854 F.2d at

1211.

Here, Plaintiff fails to make the required showing under Rule 56(f).  His first stated

reason for asking for discovery is as follows:

> The Federal Defendants' Motion and the attached Exhibits allege "new" facts and
> theories, such as the "dry run" theory, the "community caretaker" theory, and allegations
> of fact concerning who participated in the searches and seizures of Olaniyi's van.
> Olaniyi has had no opportunity to obtain discovery or conduct depositions concerning
> any of these "new" allegations.

Wesolowski Aff. ¶ 9.[17]

Mr. Wesolowski's declaration is inadequate because he does not indicate what "genuine"

and "material" facts he is likely to discover that would overcome the qualified immunity defense.

Although he does not say so, perhaps Mr. Wesolowski hopes that further discovery might show

that the declarations attached to the Motion setting forth the thirty seven defendants' roles, if

any, in the search are not accurate.  But that hope is not a basis for discovery under Rule 56(f).

---

[17]The affidavit also makes unsupported, conclusory (and inaccurate) statements about the
discovery provided thus far.  See Wesolowski Aff., ¶¶ 5, 8, 11.  Such affidavits are insufficient
to avoid summary judgment. See Johnson v. U.S. Capitol Police Bd., No.
CIVA1:03CV00614(HHK), 2005 WL 486743 *2 (D.D.C. Mar. 2, 2005) (finding that an affidavit
submitted in opposition to a summary judgment motion did not meet the standard under Rule 56
because it was "unsupported by any record evidence"); Hastie v. Henderson, 121 F.Supp.2d 72,
81 (D.D.C.2000), aff'd sub nom., Hastie v. Potter, 2001 WL 793715 *1 (D.C.Cir. June 28, 2001)
(no genuine issue of material fact where sole evidence plaintiff provided was "her own self-
serving and conclusory statement"); Phillips v. Holladay Prop. Serv., Inc., 937 F.Supp. 32, 35 n.
2 (D.D.C.1996), aff'd, 1997 WL 411695 (D.C.Cir.1997) ("[A] plaintiff's denial ... without
producing substantiation for the denial is insufficient to withstand a motion for summary
judgment."); Matthews v. Hesburgh, 504 F.Supp. 108, 114 n. 16 (D.D.C. 1980) ("Mere
allegations even in an affidavit, unsupported by specific facts, are insufficient to resist a motion
for summary judgment."), aff'd, 672 F.2d 895 (D.C. Cir. 1981).

See, e.g., Bastin v. Federal Nat. Mortg. Ass'n, 104 F.3d 1392, 1396 (D.C. Cir. 1997)(". . .district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition."); Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989)(rejecting plea for discovery where plaintiff stated that discovery "would be invaluable in [her] case" and would give her "an opportunity to test and elaborate the affidavit testimony already entered." The District of Columbia Circuit stated, "Without some reason to question the veracity of affiants. . .[plaintiff]'s desire to 'test and elaborate' affiants' testimony falls short; her plea is too vague to require the district court to defer or deny dispositive action."); United States v. On Leong Chinese Merchants Ass'n Bldg., 918 F.2d 1289, 1294-95 (7th Cir.1990) (upholding denial of a Rule 56(f) motion where the moving party merely raised "the unlikely possibility that, upon further discovery, an adverse witness may contradict an earlier statement or volunteer an admission"); Walker v. Kubicz, 996 F.Supp. 336, 342 (S.D.N.Y.1998)("Although plaintiff no doubt would like additional discovery in the hope of impeaching the credibility of the defendants' affiants and to rebut the affiants' statements that they either were not aware of plaintiff's complaints or not personally responsible for patient care or provision of medical care, this is an insufficient basis for a Rule 56(f) continuance"). In fact, his contention that he needs discovery now that Defendants' Motion sets forth who participated in the searches, amounts to a tacit admission that Plaintiff and his counsel had no good faith basis for making the serious allegation that all thirty seven defendants violated his constitutional rights. And now, despite the fact that they have been provided sworn statements explaining the roles of the defendants, Plaintiff has not conceded that any of the defendants should be dismissed. Rather, he insists on pursuing all the defendants into discovery.

This "sue first and ask questions later" strategy is contrary to every Supreme Court opinion on the qualified immunity doctrine and should not be condoned.

Mr. Wesolowski also asserts that Plaintiff needs discovery concerning "the events and communications depicted" on a tape recording provided to Plaintiff by the USCP.  Pl.'s Op., Wesolowski Aff., ¶ 10.  Again, however, he does not explain how such discovery would create a genuine issue of material fact that would defeat Defendants' entitlement to qualified immunity.

Accordingly, for reasons stated herein, Plaintiff's request for discovery should be denied.

## <u>CONCLUSION</u>

For reasons stated in the Federal Defendants' Motion and in this Reply, this suit should

be dismissed as against them with prejudice.

Date: May 24, 2007

Respectfully Submitted,

/s/ Jeffrey A. Taylor /rcl

_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/ Rudolph Contreras

_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/ Beverly M. Russell

_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
  Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C. 20530
Ph:  (202) 307-0492

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of *The Federal Defendants' Reply to Plaintiff's Memorandum in Opposition to the Federal Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, for Summary Judgment, and Memorandum in Support Thereof* was made by the Court's Electronic Case Filing System this <u>24th</u> day of May, 2007 to:

> David Finley Williams
> Keith Wesolowski
> Jennafer P. Neufeld
> Cadwalader, Wickersham & Taft LLP
> 1201 F Street, N.W.
> Washington, DC 20004
>
> Melvin W. Bolden, Jr.
> Office of the Attorney General for the
>  District of Columbia
> 441 4th Street, N.W.
> Washington, D.C.  20001

/s/ Beverly M. Russell
_____

BEVERLY M. RUSSELL
Assistant United States Attorney

Olaniyi v. District of Columbia, Civil Action No. 05-00455(RBW)
Fed. Defs. Ex. 6

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


David O. Olaniyi                    Docket No. CA 05-0455 RBW

        Plaintiff
                                   Washington, D.C.
    vs.                            Thursday, May 4, 2006
                                   9:11 a.m.
District of Columbia, et al.

        Defendants



            Transcript of Status Conference
       Before the Honorable Reggie B. Walton
            United States District Judge


APPEARANCES:

For the Plaintiff:         Lory Stone, Esq.

For the Defendants:        Melvin Bolden, Jr., Esq.
                           Beverly Russell, Esq.



Reporter:                  WILLIAM D. MC ALLISTER, CVR-CM
                           Official Court Reporter
                           Room 4806-B
                           333 Constitution Avenue, N.W.
                           Washington, D.C. 20001-8306
                           (202) 371-6446



Reported by Voice Writing and transcribed using SpeechCAT


Pages 1 through 9

Olaniyi v. District of Columbia, Civil Action No. 05-00455(RBW)

2

1                    P R O C E E D I N G S

2          THE CLERK:  This is the case in the matter of the

3   David O. Olaniyi versus District of Columbia, et al.  Case

4   number CA 05-0455.

5          Counsel, please identify yourselves for the record.

6          MS. STONE:  Lory Stone, for David Olabayo Olaniyi.

7          MR. BOLDEN:  Melvin Bolden, Jr., for the District of

8   Columbia.

9          MS. RUSSELL:  Beverly Russell, Esq., for the federal

10  defendants.

11         THE COURT:  Why are we getting started late?

12         MR. BOLDEN:  I apologize, Your Honor.  I was caught

13  in traffic.

14         THE COURT:  You need to start out earlier, counsel. I

15  believe in timeliness.

16         MR. BOLDEN:  I apologize, Your Honor.

17         THE COURT:  There is before me the plaintiff's motion

18  for certification of this case for immediate appellate review

19  both pursuant to Title 28 of the US Code section 1292(b) and

20  also Federal Rule of Civil Procedure 54(b).

21         I think in reference to the US Code basis for seeking

22  to have me certify this case, it is my view that the plaintiff

23  has misinterpreted what I said in the opinion.  I was not

24  imposing a standard I think other than what the courts have

25  said is appropriate when you are assessing whether qualified

Olaniyi v. District of Columbia, Civil Action No. 05-00455(RBW)
Fed. Defs. Ex. 6

3

1  immunity applies.

2        It was my view, and it still is, that a reasonably

3  competent police officer, under the circumstances, despite the

4  fact that he or she conceivably would know that the plaintiff

5  had already cleared two security points would not, in my view,

6  make it unreasonable, considering what the officers were

7  observing, to have taken some actions to assess independently

8  whether the plaintiff was potentially posing a harm to people

9  in the nation's capital.

10        I think it would have been derelict on their part for

11  them not to have taken some action despite conceivably what may

12  have happened because when they don't act reasonably and take

13  appropriate actions to assess whether someone is posing a

14  danger, they can't rectify that through hindsight because

15  conceivably you have dead people.

16        I think it would be inappropriate to conclude under

17  the circumstances when you've got these type of circumstances,

18  I mean this wasn't someone who was dressed in a normal way

19  conducting himself in a normal way.  I just don't think, under

20  those circumstances, law enforcement should have to stand by,

21  let something disastrous happen and then address it at that

22  point.

23        So I would conclude that the appropriate standard was

24  applied here in that it is still my view that the officers are

25  entitled to qualified immunity.

Olaniyi v. District of Columbia, et al., Civil Action No. 05-0455(RBW)
Fed. Defs. Ex. 7

## Russell, Beverly (USADC)

| | |
|---|---|
| **From:** | Russell, Beverly (USADC) |
| **Sent:** | Wednesday, August 30, 2006 12:43 PM |
| **To:** | 'Neufeld, Jennafer' |
| **Cc:** | Wesolowski, Keith; 'melvin.bolden@dc.gov' |
| **Subject:** | RE: Discovery, David O. Olaniyi v. District of Columbia, et al., 05-0045 |

I will have defendant Nutwell's discovery responses to you early next week. However, defendant DePalma is out of the office through next week so you'll receive his discovery responses hopefully no later than September 15. Also, before filing your motion for extension of discovery, I'm interested in knowing your position on when the John Does should have been served. A review of the proceedings from the docket indicates that the John Does should have been served in March 2006 or alternatively that an extension should have been sought to serve the John Does at that point. If my review of the proceedings is accurate, I would oppose a motion for an extension to name the John Does, but would consent to an extension to wrap up pending discovery matters.

Beverly M. Russell
Assistant U.S. Attorney
U.S Attorney's Office for the District of Columbia,
  Civil Division
555 Fourth Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph:  202-307-0492
Fax:  202-514-8780
E-mail:  beverly.russell@usdoj.gov

---

**From:** Neufeld, Jennafer [mailto:Jennafer.Neufeld@cwt.com]
**Sent:** Thursday, August 24, 2006 7:20 PM
**To:** Russell, Beverly (USADC)
**Cc:** Wesolowski, Keith
**Subject:** RE: Discovery, David O. Olaniyi v. District of Columbia, et al., 05-0045

That will be fine. We will talk to you at 3:30 then. Thank you. Jennafer

---

**From:** Russell, Beverly (USADC) [mailto:Beverly.Russell@usdoj.gov]
**Sent:** Thursday, August 24, 2006 6:37 PM
**To:** Neufeld, Jennafer
**Cc:** Wesolowski, Keith
**Subject:** RE: Discovery, David O. Olaniyi v. District of Columbia, et al., 05-0045

I am defending a deposition in the morning until early afternoon. Just in case the deposition takes longer than anticipated, can we move the conference call to 3:30 pm? I should certainly be back in the office by then. Thank you. Beverly.

---

**From:** Neufeld, Jennafer [mailto:Jennafer.Neufeld@cwt.com]
**Sent:** Wednesday, August 23, 2006 4:50 PM
**To:** Russell, Beverly (USADC)
**Cc:** Wesolowski, Keith
**Subject:** RE: Discovery, David O. Olaniyi v. District of Columbia, et al., 05-0045

Yes, Friday works for us. We can give you a call at 2:00 pm. Thank you. Jennafer