## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID OLABAYO OLANIYI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-00455(RBW) |
| | ) | |
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| DAVID OLABAYO OLANIYI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-2165(RBW) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### DEFENDANT UNITED STATES' REPLY TO PLAINTIFF'S OPPOSITION
### TO DEFENDANT UNITED STATES' RENEWED MOTION TO DISMISS

Plaintiff brought this suit based on events starting with an incident on March 6, 2003.

Specifically, on that day, Plaintiff wore an apparatus having the appearance of a bombing device

in the U.S. Capitol for artistic purposes.  Compl. ¶¶ 14-15 and 18 (Civil Action No. 06-

2165(RBW)).  Although he apparently "cleared" four layers of security within the U.S. Capitol

Building, he was eventually approached by a U.S. Capitol Police ("USCP") officer and told to

drop what he was holding (what Plaintiff describes as a hand-carved sculpture).  Id. ¶ 19.    The

Capitol Crypt area was evacuated, USCP agents x-rayed the empty jars from Plaintiff's outfit

which came back negative, and Plaintiff was questioned by both USCP and FBI agents for

approximately two to three hours.  Id. ¶¶ 25-26.  Plaintiff was detained overnight, id. ¶ 28, and

subsequently charged with violations of 40 U.S.C. § 844(e) for false bomb threat, 40 U.S.C. § 193f(b)(7) for disorderly conduct on Capitol grounds, 18 U.S.C. § 2 for aiding and abetting, and a District of Columbia code provision for assault or threatened assault, id. ¶ 31. The criminal charges were later dropped.  Id. ¶ 33.

While in Washington, D.C. in January 2004, Plaintiff was stopped by a USCP officer. Plaintiff was subsequently questioned by USCP Detective Joseph DePalma, who did not initiate the stop, about whether he had custody of his children and had authority to remove them from Michigan.    Id. ¶¶ 35-36.  Detective DePalma was aware of an "ongoing custody battle between [Plaintiff] and his ex-wife."  Id. ¶ 36.  Soon after these incidents, Plaintiff was interviewed by Secret Service agents after Plaintiff's ex-wife reported to Michigan authorities that Plaintiff had made threats to kill the President.  Id. ¶ 40.

Plaintiff eventually brought suit for false arrest and imprisonment based on the March 2003 and January 2004 incidents.  Id. ¶¶ 44-49 (Counts I and II).  He also brought claims for malicious prosecution alleging that the USCP and the FBI[1] maliciously procured criminal proceedings against him despite possessing no explosives during the March 2003 incident.[2]  Id. ¶¶ 52-54 (Count III).  Plaintiff also alleges intentional infliction of emotional distress based on the March 2003 and January 2004 incidents, and his interview by Secret Service agents after that agency was informed that Plaintiff had threatened to kill the President.  Id. ¶¶ 56-61 (Count IV).

---

[1]In his opposition to the United States' Renewed Motion to Dismiss, Plaintiff states that he does not seek damages for the conduct and actions of the FBI.  Pl.'s Op. at 10, n. 4.

[2]As noted above, however, Plaintiff was not charged with possessing explosives but with making a false bomb threat, disorderly conduct on Capitol Grounds, and  assault or threatened assault.  Compl. ¶ 31.

Plaintiff also alleges conversion of property based on the March 6, 2003 search of the van. Id. ¶¶ 63-67 (Count V). He brings suit for loss of future earnings, humiliation and damage to reputation as separate claims although those arose from the actions related to his March 2003 arrest, January 2004 traffic stop, and interview by Secret Service agents. Id. ¶¶69-72 (Count VI).

The United States has moved to dismiss Plaintiff's complaint against it in entirety. First, Plaintiff's claims related to the March 2003 incident (Counts I and V) are untimely, and Plaintiff, in his opposition memorandum, sets forth no arguments reflecting or evidencing the stringent standard for equitable tolling. Second, Plaintiff's claim related to the January 2004 incident (Count II) is barred because the officers' conduct was lawful. Third, Plaintiff's claim related to malicious prosecution (Count III) is barred by the discretionary function exception. Fourth, the questioning of Plaintiff regarding the custody of his children when it was known that there was a custody dispute and the questioning of Plaintiff regarding a report that he threatened to kill the President were eminently prudent, and certainly not "atrocious, . . .utterly intolerable in a civilized community[,]" Sere v. Group Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982), quoting, Restatement (Second) of Torts § 46 (1965) such that Plaintiff can sustain a claim for intentional infliction of emotional distress (Count IV). Because Plaintiff's claims related to his March 2003 arrest, January 2004 traffic stop, and interview by Secret Service agents must be dismissed, those claims for damages arising from those actions must be dismissed as well (Count VI). As explained below, Plaintiff's opposition memorandum does not undermine the propriety of granting Defendant's motion to dismiss in entirety.

## ARGUMENT

**I.      Certain of Plaintiff's Claims Are Untimely, or Jurisdictionally Barred.**

**A.      Plaintiff's Claims for False Arrest and False Imprisonment (Claim I), Intentional Infliction of Emotional Distress (Claim IV) and Conversion of Property (Claim V) All Based on the March 2003 Incident Are Time-Barred.**

Under the FTCA, "a claim shall be deemed to have been presented when a Federal agency *receives* from a claimant [his administrative claim]." 28 C.F.R. 14.2(a)(emphasis added). Under this unambiguous regulatory provision, Plaintiff's claims for false arrest and false imprisonment, intentional infliction of emotional distress and conversion of property all based on incidents (or alleged incidents) occurring on March 6-10, 2003 are untimely. The record demonstrates that the USCP received Plaintiff's administrative claim on March 17, 2008 beyond the limitations period. See Defendant United States' Renewed Motion to Dismiss, Ex. 1, Declaration of Cecilia E. Barrios, ¶ 4 (March 29, 2007); Ex. 4, Declaration of William H. Emory, ¶ 3 (Nov. 5, 2007). Plaintiff sets forth no argument in his opposition memorandum undermining the propriety of dismissing these claims as time-barred. Indeed, the primary focus of his argument is to blame the defendant agency for his lack of diligence.

Specifically, he claims that the USCP instructions for filing administrative tort claims did not direct potential claimants to send their claims by certified or registered mail, or other forms of delivery Pl.'s Op. at 15. However, this blame shifting wholly lacks merit because the notion of sending critical or time-sensitive documents by verifiable means is not a novel concept. See Arias v. U.S., Civil Action No. 05-4775 (JLL), 2007 WL 608375, *4 (D.N.J. Feb. 23, 2007)(The presentment requirement of 28 U.S.C. § 2401(b) "is not onerous. . .because proof of receipt can be obtained by sending the claim via certified or registered mail, or by obtaining the agency's acknowledgment of receipt."). He also attacks the USCP's declarant arguing that she "has no

personal knowledge concerning the circumstances surrounding the receipt of [his] claim" and

simply relies on the date stamped on Plaintiff's claim by the agency.  Pl.'s Op. at 17.  Again,

Plaintiff's argument is without merit.  The date stamped on the document by the Agency is

probative of the date of receipt by the Agency.[3]  Plaintiff, want of any legal or evidentiary basis,

also argues that the U.S. Senate Post Office is an authorized agent of the USCP, and thus, the

date of receipt by the U.S. Senate Post Office should be probative for purposes of presentment

under the FTCA.  Pl.'s Op. at 19-21. However, there is nothing in the U.S. Capitol Police

regulations evidencing that the U.S. Senate Post Office is a "duly authorized agent" for the USCP

for purposes of presentment under the FTCA.  Indeed, the regulations are clear.  For purposes of

presentment, "a claim shall be deemed to have been presented" when received by the USCP's

Office of the General Counsel.  Def. United States Ex. 5, pp. 2-3 (attached hereto).  Plaintiff's

argument that the U.S. Senate Post Office is an authorized agent for the USCP for purposes of

presentment is unsupported and unsupportable given the clear provision of the applicable

regulation.

---

[3]See Def. United States Renewed Motion to Dismiss, Emory Decl. ¶¶ 2-3,

> I have searched records within the USCP [Office of the General Counsel] to determine whether the Plaintiff in this action, David Olabayo Olaniyi, has properly presented an administrative claim to this office prior to commencing this action, as required by 28 U.S.C. § 2675(a).

> A review of OGC records reveals that the USCP received the Plaintiff's administrative complaint on March 17, 2005.  This is supported by the USCP OGC time stamp on the back of Plaintiff's Standard Form 95.  In order to be timely filed, the Plaintiff's claim in this instance must have been received by the OGC by March 6, 2005. . .

Plaintiff also argues that this Court should hold that the date of mailing satisfies the presentment requirements of the FTCA. Pl.'s Op. at 15-17. However, all Circuits, with the exception of one, which have reviewed presentment challenges have held that the unambiguous statutory provision means what it says, i.e., that an administrative tort claim must be *received* by the appropriate agency within the time frames prescribed by the FTCA, thus, mailing is not presentment  See, e.g. Vacek v. United States Postal Service, 447 F.3d 1248, 1252 (9th Cir. 2006): Moya v. United States, 35 F.3d 501, 504 (10th Cir. 1994); Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993); Drazen v. United States, 762 F.3d 56, 58 (7th Cir. 1985); Rhodes v. United States, No. 92-9016, 1993 WL 212495, *2, 995 F.2d 1063 (4th Cir. 1993)(Table).

Unsurprisingly, Plaintiff urges that this Court should be guided by an 11th Circuit decision - the one Circuit holding that the mailbox rule should apply, irrespective of the language of the FTCA. In Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1238 (11th Cir. 2002), the claimant asserted that he had mailed his administrative claim, and produced a copy of the completed Form 95, the accompanying cover letter, and a copy of the envelope in which he had mailed the claim to demonstrate proof of mailing. The 11th Circuit concluded that this evidence "raise[d] an inference" that the claimant had mailed the documents, and in applying the mailbox rule to the FTCA, stated, "[W]e simply believe that the [federal agency] should not be accorded any special presumption of believability because it is a branch of the United States government and should be treated no differently than a private defendant. . ." Id. at 1238-40. However, as noted by the Ninth Circuit, there is "at least one reason why the federal government should be treated differently from a private defendant. . .the federal government must waive sovereign immunity." Vacek, 447 F.3d at 1252. Application of the mailbox rule, contrary to the terms of

the FTCA's presentment provision, violates the Supreme Court's admonition that waivers of immunity must be construed "strictly in favor of the sovereign" and not enlarged beyond what the applicable statutory provision allows.  Id., citing Library of Congress v. Shaw, 478 U.S. 310, 318 (1986).  Accordingly, Plaintiff's urging the Court to move in the direction of "enlarging" the waiver of immunity should be ignored.

Plaintiff additionally argues that, if his claims are deemed untimely, the principles of equitable tolling of the limitations period should apply.  Pl.'s Op. at 21-26.  The District of Columbia Circuit has not squarely addressed whether equitable tolling applies to the FTCA's statute of limitations.  Norman v. Howe, 467 F.3d 773, 776 (D.C. Cir. 2006); see also Thomas v. United States Parole Comm'n, No. 03-5289, 2004 WL 758966 (D.C. Cir. April 7, 2004)(assuming without deciding that the statute of limitations period in section 2401(b) is subject to equitable tolling).[4]  However, assuming that it does, a review of applicable case law shows that the limitations should not be tolled in this instance.

As an initial matter, "a court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." Mondy v. Secretary of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988).  In determining whether equitable tolling is justified, the Supreme Court has noted that "[it has] allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's

---

[4]Defendant notes that, in T.L. ex rel. Ingram v. U.S., the Eighth Circuit, citing to cases from the First, Second, Fourth, and Tenth Circuits, stated "[w]e. . .align ourselves with several other circuits in holding that considerations of equitable tolling simply make up part of the court's determination whether an action falls within the scope of the waiver of sovereign immunity granted by Congress, and thus within the jurisdiction of the federal courts."  443 F.3d 956, 961 (8th Cir. 2006)(citations omitted).

misconduct into allowing the filing deadline to pass." <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 96 (1990). The Supreme Court made clear, however, that the doctrine will not be extended to situations where the plaintiff has "failed to exercise due diligence in preserving his legal rights" and for "what is at best a garden variety of excusable neglect." <u>Id.</u>

Guided by the Supreme Court's decision in <u>Irwin</u>, equitable tolling does not apply here. The incidents serving as the basis of Plaintiff's claims occurred in March 2003 and January 2004. Yet, Plaintiff waited to the eve of the limitations period to file his claim (at least as far as the claims related to the March 2003 incident), and yet, still did not bother to send his claim through a verifiable means. Nothing in <u>Irwin</u> suggests that equitable tolling should apply. This matter does not involve an issue of a defective pleading being filed within the statutory period, and thus, that part of <u>Irwin</u> does not apply. Nor is there any evidence of misconduct on the part of the USCP showing that it intentionally allowed the filing deadline to pass. Somewhat in this regard, Plaintiff does argue that the USCP should have informed claimants about the process for irradiating mail. However, his argument in this regard misses the point. The issue for purposes of equitable tolling is his own diligence in advancing his claim. <u>Zeleznick v. United States</u>, 770 F.2d 20, 23 (D.C. Cir. 1985). Waiting to the eve of the limitations period when having full knowledge of his claims months prior does not evidence due diligence. Sending the claim via a means by which receipt could not be verified also does not show due diligence.

As to Plaintiff's attempt to blame the USCP for his untimely claim, to the extent that Plaintiff is alleging fraudulent concealment, such an argument is only available when a claimant "has been injured by fraud and remains in ignorance of it *without any fault or want of diligence or care on his part*." <u>Gonzalez v. United States</u>, 284 F.3d 281, 292 (1st Cir. 2002)(emphasis added). "Mere silence of the defendant" is not sufficient. <u>Gonzalez-Bernal v. United States</u>, 907

F.2d 246, 250 (1st Cir. 1990) (citation omitted); see also Norman v. Howe, 467 F.3d at 776 (In

case in which claimant alleged that he was prejudiced because he had not been informed of the

federal employment status of the named defendant, and thus, the FTCA would apply to his claim,

District of Columbia Circuit stated, "[neither the third party insurer] nor the federal government. .

.had any obligation to inform [the claimant] of [the defendant's] employment status. . .Moreover,

if prejudice were enough, then equitable tolling would no longer be restricted to extraordinary

and carefully circumscribed circumstances.")(internal citation and quotation marks omitted).

Plaintiff here cannot demonstrate that he exercised due diligence in advancing his claim.  Thus,

equitable tolling does not apply and all claims based on the March 2003 incident are time-barred.

      **B.**    **The Discretionary Function Exception to the FTCA Bars Plaintiff's Claim
for Malicious Prosecution.**

"To support an action for malicious prosecution in the District of Columbia, a plaintiff

must plead and be able to prove: 1) that the underlying suit terminated in plaintiff's favor;

2) malice on the part of the defendant; 3) lack of probable cause for the underlying suit; and

4) special injury occasioned by plaintiff as the result of the original action."  Joeckel v. Disabled

American Veterans, 793 A.2d 1279,1282 (D.C. 2002).  Plaintiff alleges that the USCP and the

FBI "maliciously procured criminal proceedings against him by detaining and arresting him, and

by initiating proceedings against [him] despite having determined on the scene that [Plaintiff]

possessed no explosives."  Compl. ¶ 52.  Again, it bears reiterating that Plaintiff was not charged

with possessing explosives but with violations of 40 U.S.C. § 844(e) for *false bomb threat*,

40 U.S.C. § 193f(b)(7) for *disorderly conduct* on Capitol grounds, 18 U.S.C. § 2 for aiding and

abetting[5], and a District of Columbia code provision for assault or *threatened assault.* Notwithstanding this point, Plaintiff's claim for malicious prosecution is barred by the discretionary function exception to the United States' waiver of immunity for tort suits.

Plaintiff argues that his claim of malicious prosecution based on the actions of law enforcement officers of the USCP is expressly allowed under the intentional tort exception of the FTCA, and thus the discretionary function exception to the FTCA does not apply. Pl.'s Op. at 29. The intentional tort provision cited by Plaintiff does allow suits for malicious prosecution based on the acts or omissions of law enforcement officers. See 28 U.S.C. § 2680(h)[6]. However, Plaintiff's argument does not provide full account of the law.

---

[5] 18 U.S.C. § 2 states,

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

[6] 28 U.S.C. § 2680(h) states,

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

As an initial matter, the District of Columbia Circuit  has rejected "the contention that intentional tort claims based on the acts of 'investigative or law enforcement officer[s]' may never come within the purview of the discretionary function exception [28 U.S.C. § 2680(a)[7]]." Gray v. Bell, 712 F.2d 490, 507 (D.C. Cir. 1983).  Thus, "before a suit may be maintained against the United States, even for an intentional tort falling within [28 U.S.C. § 2680(h)], the plaintiff must first clear the hurdle of the discretionary function exception."  Pooler v. U.S., 787 F.2d 868, 872 (3rd Cir. 1986), citing Gray, 712 F.2d at 507-08.   "[Suit] can only be maintained if it is first shown that the government actor was not exercising discretion."  Pooler, 787 F.2d at 872.

Pertinent here, in Gray v. Bell, the District of Columbia Circuit stated, "decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing criminal law. . .there can be no serious question over the applicability of the discretionary function exception to the decision to initiate prosecution."  712 F.2d at 513-14.  Thus, courts have consistently dismissed claims of malicious prosecution under 28 U.S.C. 2680(a), even where such claims are based on the actions of federal law enforcement officers.  See Bragdon v. U.S., 537, F.Supp.2d 157, 160 (D.D.C. 2008); Beran v. United States, 759 F.Supp. 886, 892 (D.D.C. 1991)(cited by Plaintiff);  Wright v. U.S., 963 F.Supp. 7, 17

_____

[7]28 U.S.C. § 2680(a) states,

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

(D.D.C. 1997); <u>Pooler</u>, 787 F.2d at 8770-872[8]; <u>Wang v. U.S.</u>, 61 Fed.Appx. 757, 759, 2003

178599, *1 (2d Cir. 2003). Plaintiff has brought a claim of malicious prosecution (Count III),

alleging that the USCP "maliciously procured criminal proceedings" against him. Compl. ¶ 52.

The alleged wrongful action is of a type covered by the discretionary function exception to the

FTCA. As held in <u>Bell</u>, decisions whether to initiate prosecutions are quintessentially

discretionary in nature. 712 F.2d at 513-14. Thus, Plaintiff's claim of malicious prosecution

must be dismissed for lack of subject matter jurisdiction.

## II.     Plaintiff Fails to State A Claim.

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the

adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim."

<u>Singh v. South Asian Society of George Washington Univ.</u>, - - - F.Supp.2d - - - -, 2008 WL

2311864, *8 (D.D.C. June 5, 2008). In reviewing a motion to dismiss, a court "must treat the

complaint's factual allegations as true and must grant the plaintiff the benefit of all inferences

that can be derived from the facts alleged." <u>Carswell v. Air Line Pilots Ass'n Intern.</u>, 540

F.Supp.2d 107, 115 (D.D.C. 2008), quoting, <u>Trudeau v. FTC</u>, 456 F.3d 178, 193 (D.C. Cir.

2006)(internal quotation and citations omitted). But the complaint "must contain something

more. . .than. . .a statement of facts that merely creates a suspicion [of] a legally cognizable right

of action." <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007), quoting, 5 C.

---

[8]Guided by the legislative history of the 1974 amendments to the FTCA, the Third
Circuit, in reconciling the discretionary function provision at 28 U.S.C. § 2680(a) with the
intentional tort provision at 28 U.S.C. § 2680(h), concluded that the intentional tort proviso of
2680(h) is "limited to activities in the course of a search, seizure and arrest." <u>Pooler</u>, 787 F.2d at
872; <u>see also</u> <u>Beran</u>, 759 F.Supp. at 892 (relying on <u>Gray</u> and <u>Pooler</u>, the District court applied
the discretionary function exception to dismiss plaintiff's claim for malicious prosecution but not
the plaintiff's false arrest and imprisonment claims).

Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3r ed. 2004). The facts alleged "must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. Guided by this standard, Plaintiff's complaint should be dismissed for failure to state a claim upon which relief may be granted.[9]

### A. Plaintiff's Claim for False Arrest and Imprisonment Based on the March 2003 Incident (Claim I) Should Be Dismissed for Failure to Meet the Standard Set Forth for Such Claim.

A claim of false arrest and false imprisonment can be defeated where there was probable cause for the arrest, or alternatively, "the arresting officer had reasonable grounds to believe a crime had been committed and that the arrest was made for the purpose of securing the administration of justice." Richardson v. U.S. Dept. of Interior, 740 F.Supp. 15, 26 (D.D.C. 1990). Here, Plaintiff claims that the USCP officers "went too far in arresting and detaining him" after the officers had "neutralized" what was perceived as threatening behavior from Plaintiff. Pl.'s Op. at 32. He argues that, "[o]nce USCP's searches of [Plaintiff's] person and vehicle did not find evidence of explosives, any reason to detain [him] as if he were a terrorist threat evaporated." Id. However, Plaintiff misapplies the law. Plaintiff appears to argue that,

---

[9] Of course, for purposes of this Motion, Defendant United States treats the allegations as set out in Plaintiff's Complaint as true. However, this does not mean that the United States agrees with Plaintiff's representation of the facts including, among other allegations, that he cleared "four" layers of security during the March 2003 incident (Compl. ¶ 17), that he was questioned without counsel despite requests for such (see Compl. ¶ 26; see also Ex. 7, Waiver), and that he was initially stopped solely because of the appearance of his van (Compl. ¶ 35). Notwithstanding these points, and consistent with Fed. R. Civ. P. 12(b)(6), even granting Plaintiff the benefit of all inferences that can be derived from his Complaint, dismissal of this suit is warranted for reasons set forth herein.

because the gravest concern regarding possible criminal activity on his part may have been diminished by the search of his person and van[10], there was no basis for detaining him.

However, a false arrest and false imprisonment claim can be defeated if there is probable cause for the arrest or reasonable grounds to believe a crime, not only the most dire ones, has been committed. Besides the potential security concern, there were other grounds for Plaintiff's arrest and detention. As noted by this Court in the case brought by Plaintiff against individual federal officers, "[the officers] could reasonably have concluded that the plaintiff's actions amounted to an unlawful demonstration in violation of [40 U.S.C. § 193h(b)], a criminal offense for which the punishment included up to six months' imprisonment." Olaniyi v. District of Columbia, 416 F.Supp.2d 43, 61 (D.D.C. 2006). Thus, given that USCP officers here had grounds to believe that a crime had been committed, Plaintiff's claim for false arrest and imprisonment should be dismissed.[11] See, e.g. Lyles v. Micenko, 468 F.Supp.2d 68, 74 (D.D.C. 2006) (Court dismissed plaintiff's claim of false arrest and imprisonment based, in part, on a two day incarceration. The Court found that the arrest was based on probable cause, as was the detention.).

---

[10]Defendant United States does not agree that a search of Plaintiff's person or his van completely mitigated concern regarding Plaintiff's conduct in the U.S. Capitol, including wearing a duct-taped apparatus in the U.S. Capitol. However, the point is not material for purposes of Defendant's Motion.

[11]Plaintiff relies on Dent v. May Dept. Stores Co., 459 A.2d 1042, 1044 (D.C. 1982) and Marshall v. District of Columbia, 391 A.2d 1374, 1380 (D.C. 1978) to support an argument that the five days he spent in the District of Columbia jail was an unlawful detention. However, the cases are inapposite. These cases deal with situations related to not prolonging a person's detention after a determination has been made that *no unlawful activity has been committed*. Here, given that Plaintiff was eventually charged after being released, it cannot be said that he was incarcerated significantly beyond the point after exculpatory evidence had been produced.

**B.    Plaintiff's Claims of False Arrest and Imprisonment (Claim II) and Intentional Infliction of Emotional Distress (Claim IV)[12] Based on the January 2004 Incident Should Be Dismissed for Failure to Meet the Standard Set Forth For Those Claims.**

As for the January 2004 incident, Plaintiff claims that a USCP officer informed him that he was pulled over because snow on his vehicle and Michigan tags made the vehicle look suspicious. Pl.'s Op. at 35. Plaintiff claims that the officer lacked probable cause to effectuate the stop. The claim, however, is unavailing for the basic reason that "probable cause" is not required. A law enforcement officer "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' *even if the officer lacks probable cause*." U.S. v. Sokolow, 490 U.S. 1, 7 (1989), quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)(emphasis added); accord Hiibel v. Sixth Judicial Dist., Court of Nevada, Humboldt County, 542 U.S. 177, 185 (2004)("Beginning with [Terry v. Ohio], the Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further."); Adams v. Williams, 407 U.S. 143, 146 (1972)("A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time."). Here, observing a vehicle with Michigan tags where it appears that the driver did not bother to clear (or could not be bothered with clearing) snow from the vehicle notwithstanding what appeared to be a long trip reasonably could instill interest

---

[12] Plaintiff's claim for intentional infliction of emotional distress based on the March 2003 incident should be dismissed for those reasons set forth in Defendant's Renewed Motion.

or *suspicion* from an observant officer to, at minimum, ensure the identify of the driver as well as ensure that the driver was licensed and had proper registration.

Given his or her suspicion, an officer would also want to ensure, through questioning, that what appears to be a hurried trip has no unlawful basis. See U.S. v. Hensley, 469 U.S. 221, 229 (1985)("[T]he ability to briefly stop [a suspect], ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice.")(emphasis added). In this regard, although Plaintiff was initially stopped because the condition of his vehicle arose suspicion in the law enforcement officer, he was subsequently questioned about the custody of his children. Plaintiff takes offense at such questioning (done by USCP Detective Joseph DePalma), and avers that the questioning "shocks the conscience." Pl.'s Op. at 35. However, it does not seem that any parent whose children are unlawfully taken from them by a non-custodial parent would agree. Further, if the officer had not bothered to ask Plaintiff about custody and it turned out that Plaintiff did not have authority to take his children from Michigan, the officer might have been cast as irresponsible, dilatory or worse.

Notwithstanding Plaintiff's objection, the law supports the propriety of the questioning. Plaintiff, in his Complaint against the United States, states that Detective DePalma knew of the custody dispute between Plaintiff and Plaintiff's ex-wife. Compl. ¶ 29. Given this circumstance, a prudent officer, uncertain as to custody status and ultimately concerned about the children's welfare, could lawfully ask questions regarding the status of custody. See e.g. Ford v. United States, 376 A.2d 439, 442 (D.C. 1977)("within the context of a valid traffic stop" police officers may ask investigative questions based on reasonably aroused suspicion.); see also U.S. v Childs,

16

277 F.3d 947 (7th Cir. 2002)(In case involving traffic stop in which officer asked the driver

about marijuana use, the Seventh Circuit states, "[w]hat happened   here must occur thousands of

times daily across the nation: Officers ask persons stopped for traffic offenses whether they are

committing other crimes.  That is not an unreasonable law-enforcement strategy, either in a given

case or in gross; persons who do not like the question can decline to answer.").  As such,

Detective DePalma could lawfully ask questions based on a reasonable suspicion as to the

legality of the custody of the children or Plaintiff's authority to remove the children from

Michigan.  Indeed, given the custody dispute, Detective DePalma actually had probable cause to

ask about custody.  See Lyles, 468 F.Supp.2d at 74, quoting Gueory v. District of Columbia, 408

A.2d 967, 969 (D.C. 1979)(The test for "probable cause" is whether the "officer had a reasonable

good faith belief that the suspect ha[d] committed or [was] committing a crime, based on the

facts and circumstances known to him.")

Detective DePalma had knowledge of the fact of the custody dispute, and thus had doubts

about the legality of Plaintiff traveling with the children outside of Michigan.  Detective

DePalma asked Plaintiff questions to allay suspicions in this regard.  Accordingly, Detective

DePalma's questioning of Plaintiff was lawful.  Given that the initial stop and questioning were

lawful, Plaintiff's claims for false arrest and imprisonment should be dismissed.

The same goes for Plaintiff's claims of intentional infliction of emotional distress.  "The

tort of intentional infliction of emotional distress consists of (1) 'extreme and outrageous'

conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff

'severe emotional distress.'" Kotsch v. District of Columbia, 924 A.2d 1040, 1045 (D.C. 2007),

citing, Waldon v. Covington, 415 A.2d 1070, 1076 (D.C. 1980); RESTATEMENT (Second) of

Torts § 46 (1965). "As to the first element, '[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Kotsch, 925 A.2d at 1045-46, quoting RESTATEMENT § 46. Applying this standard, one simply cannot state that the traffic stop followed by questioning regarding custodial status when there was concern on the part of the officer regarding the matter constitute "outrageous" conduct, "beyond all possible bounds of decency." Accordingly, Plaintiff's claim of intentional infliction of emotional distress based on the January 2004 traffic stop fails to state a claim, and must be dismissed on this basis.[13]

### C.    Plaintiff's Claim for Intentional Infliction of Emotional Distress (Claim IV) Based on the Secret Service Interview Fails to State A Claim Upon Which Relief May Be Granted.

Plaintiff claims that, after the January 2004 incident, he was interviewed by Secret Service agents for about three hours regarding an allegation made by Plaintiff's ex-wife that Plaintiff had threatened to kill the President. Compl. ¶ 40. The agents asked Plaintiff about "his

---

[13]As part of his claim of intentional infliction of emotional distress, Plaintiff alleges that USCP Detective DePalma "had canine officers search [Plaintiff's van] without a warrant and [with Plaintiff's] children in the car." Pl.'s Compl. ¶ 52. Detective DePalma states that Plaintiff consented to the search and that all occupants were asked to step out of the vehicle, and did so, prior to the search. Ex. 6, Declaration of Joseph DePalma, June 11, 2008 (attached hereto). Notwithstanding these points in dispute which are not material for purposes of this motion to dismiss, Plaintiff claims that "his unlawful arrest and imprisonment, and *especially his time in the Mental Health Unit of the D.C. Jail*, caused him severe emotional distress, including sleep disorder, depression, paranoia, and impairment of. . .enjoyment of life." Compl. ¶ 57 (emphasis added). He does not state that he suffered similarly as a result of the canine search during the January 2004 stop. Pl.'s Compl. ¶ 58. Thus, his claim of intentional infliction of emotional distress based on the January 2004 incident is facially deficient, and should be dismissed. Totten v. Norton, 421 F.Supp.2d 115, 123, n.5 (D.D.C. 2006); Crowley v. North American Telecommunications Ass'n, 691 A.2d 1169,1172 (D.C. 1997).

life, his arrest, his travel destinations, and his immigration status," and purportedly inquired what would happen if Plaintiff's immigration papers were taken away.  Id.  The agents asked to speak to Plaintiff's children, and purportedly asked the children whether they had ever heard their father make such threats.  Compl. ¶ 40; Pl.'s Op. at 39.  Plaintiff brings a claim for intentional infliction of emotional distress based on this incident.

However, given the severity of the alleged threat, killing the President, the Secret Service questioning of Plaintiff for approximately two to three hours cannot be characterized as utterly intolerable to a civilized community, particularly when the Secret Service has the duty to protect the President and, pertinent here, to investigate threats against the President. See, e.g. Long v. Office of Personnel Management, No. 05-CV-1522(NAM/DEP), 2007 WL 2903924, *11 (N.D.N.Y. Sept. 30, 2007); U.S. v. Kosma, 551 F.2d 549, 558 (3rd Cir. 1991)( ". . .a threat [to the President] sets in motion an entire army of Secret Service agents and law enforcement officials who must investigate the threat, take additional safety precautions to protect the President, and in extreme cases, alter the President's schedule.").  Further, although Plaintiff may have taken offense to the agents' purported threat to take Plaintiff's immigration papers away, such conduct does not fall within the realm of actions triggering liability for intentional infliction of emotional distress for such claims do not extend to "mere insults, indignities, *threats*,

annoyances, or petty oppressions." RESTATEMENT (Second) of Torts § 46 (emphasis added).

Accordingly, Plaintiff's claim of intentional infliction of emotional distress based on the

questioning by Secret Service agents fails to state a claim upon which relief may be granted, and

should be dismissed.

## IV.    CONCLUSION

For reasons stated herein and in its Motion, Defendant United States respectfully requests

that the Court dismiss this suit with prejudice.

Date: June 13, 2008

Respectfully Submitted,

/s/ Jeffrey A. Taylor /kvm
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
 Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C. 20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-Mail: beverly.russell@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the ***Defendant United States' Reply to Plaintiff's Opposition to Defendant United States' Renewed Motion to Dismiss*** was made by the Court's Electronic Case Filing System to:

> David Finley Williams
> Keith Wesolowski
> Jennafer P. Neufeld
> Cadwalader, Wickersham & Taft LLP
> 1201 F Street, N.W.
> Washington, DC 20004
>
> Melvin W. Bolden, Jr.
> Office of the Attorney General for the
>  District of Columbia
> 441 4th Street, N.W.
> Washington, D.C.  20001

and by first class, prepaid mail to:

> Darius Mills
> 3212 Calydon Court
> Fort Washington, Maryland 20744

this 13th day of June 2008.


                    /s/ Beverly M. Russell
                    _____
                    BEVERLY M. RUSSELL
                    Assistant United States Attorney



PHONE: 224-9805

# UNITED STATES CAPITOL POLICE
### OFFICE OF THE CHIEF
119 D STREET, NE
WASHINGTON, DC 20510-7218

---

## INSTRUCTIONS FOR FILING A TORT CLAIM
## WITH THE
## UNITED STATES CAPITOL POLICE

---

The Federal Tort Claims Act provides for recovery from the United States, under certain circumstances, for injury or damage(s) caused by the negligent act(s) or omission(s) of employees of the United States who are acting within the scope of their employment, under circumstances in which the United States, if a private person, would be liable to the injured party under the laws of the place where the act(s) or omission(s) occurred. To file a claim with the United States Capitol Police under the Act, the following procedures should be followed:

1.  One (1) copy of *Standard Form 95, "Claim for Damage, Injury, or Death"* must be completed, and all information requested in the form must be supplied.

2.  If your claim is for an injury, all elements of the total amount of your claim must be supplied, such as doctor's fees, hospital bills, outpatient costs, etc.

3.  If your claim is for damaged property, the value of the property must be documented, or, if the damage can be repaired, at least two (2) estimates for the cost of the repairs should be obtained from reliable commercial establishments and submitted along with the other claims forms. The amount of your claim will be the same as the lowest estimate submitted.

4.  One (1) copy of *Standard Form 1145, "Voucher for Payment Under Federal Tort Claims Act"* should be completed, and all information requested in the form must be supplied. Please note that by signing this form, you are merely indicating an acceptance of the amount indicated on the form, and not that you have actually received the indicated amount.

5.  Any questions concerning your claim and/or the procedure to be followed may be made to the Office of the General Counsel, United States Capitol Police, by phone at 202.224.9251, or at the address below.

6.  All of the enclosed forms must be filled out completely and returned to the following address:

United States Capitol Police
Office of the General Counsel
119 D Street, NE
Washington, DC 20510-7218

Def.'s Ex. 5

## CAPITOL POLICE BOARD REGULATIONS FOR SETTLEMENT AND PAYMENT OF FEDERAL TORT CLAIMS ACT ADMINISTRATIVE CLAIMS AND CLAIMS UNDER THE MILITARY PERSONNEL AND CIVILIAN EMPLOYEES CLAIMS ACT

Whereas, Pub.L. 108-447, 118 Stat. 2809 (December 8, 2004), authorizes that the Chief of the United States Capitol Police, in accordance with regulations prescribed by the Attorney General and any regulations as the Capitol Police Board may prescribe, may consider, ascertain, determine, compromise, adjust, and settle, in accordance with the provisions of Chapter 171 of Title 28, United States Code, any administrative claim (S. Rep. No. 108-307, §1008, July 15, 2004) for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Capitol Police while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Whereas, Pub.L. 108-447, 118 Stat. 2809 (December 8, 2004), further authorizes the Chief of the United States Capitol Police, in accordance with the provisions of Chapter 37 of Title 31, United States Code, to settle and pay a claim made by an employee of the Capitol Police against the United States Capitol Police for damage to or loss of personal property incident to government service.

Pursuant to such authority, the Capitol Police Board hereby promulgates regulations as follows:

## SECTION 1. DEFINITIONS

For the purposes of these regulations, the terms shall be defined as follows:

A.  **Capitol Police** – The term "Capitol Police" means the United States Capitol Police (USCP).

B.  **Chief of Police** – The term "Chief of Police" means the Chief of the United States Capitol Police.

C.  **Federal Tort Claims Act (FTCA)** – FTCA means the Federal Tort Claims Act, as amended, 28 U.S.C. 2671 et seq.

D.  **Military Personnel and Civilian Employees Claims Act (MPCECA)** – MPCECA means the Military Personnel and Civilian Employees Claims Act of 1964, as amended, 31 U.S.C. 3721.

E.  **Head of Agency** – For purposes of section 2672 of Title 28 and Chapter 37 of Title 31, United States Code, the term "Head of Agency" means the Chief of Police.

F.  **Applicable Committee** – The term "Applicable Committee" means the Committee on Rules and Administration of the United States Senate, in the case of a claim of a Senator or an officer or employee whose pay is disbursed by the Secretary of the Senate; or the Committee on House Administration of the United States House of Representatives, in the case of a Member of the House of Representatives (including a Delegate or Resident Commissioner to the Congress)

or an officer or employee whose pay is disbursed by the Chief Administrative Officer of the House of Representatives.

G.   **Standard Form 95 (SF95)** – SF95 means the Standard Form 95, Claim for Damage, Injury, or Death.

H.   **Standard Form 1145 (SF1145)** – SF1145 means the Standard Form 1145, Voucher for Payment Under the Federal Tort Claims Act.

## SECTION 2.   SCOPE

The provisions of these regulations apply only to administrative claims asserted under:

A.   The FTCA for money damages against the United States because of damage to or loss of property or personal injury or death, caused by the negligent or wrongful act or omission of any employee of the USCP while acting within the scope of his/her employment, and

B.   The MPCECA for claims of USCP personnel for personal property damage or loss incident to service for the USCP.

## SECTION 3.   FTCA PROCESSING

A.   **Administrative claim; when presented; place of filing**

(1)   For purposes of these regulations, a claim shall be deemed to have been presented when the United States Capitol Police receives, at a place designated in paragraph (3) of this section, original executed forms SF95 and SF1145, or other written notification of an incident accompanied by a claim for money damages in a sum certain for damage to or loss of property, for personal injury, or for death, alleged to have occurred by reason of the incident. A claim which should have been presented to the USCP, but which was mistakenly addressed to or filed with another federal entity, shall be deemed to be presented to the USCP as of the date that the claim is received by the USCP. A claim mistakenly addressed to or filed with the USCP shall, as soon as is practical, be transferred to the appropriate federal entity, if ascertainable, or returned to the claimant.

(2)   A claim presented in compliance with paragraph (1) of this section may be amended by the claimant at any time prior to final action by the Chief of Police, or his designee, or prior to the exercise of the claimant's option to bring suit under 28 U.S.C. 2675(a) in U.S. District Court. Amendments shall be submitted in writing and signed by the claimant or a duly authorized agent or legal representative. Upon the timely filing of an amendment to a pending claim, the USCP shall have one hundred and eighty (180) days in which to make a final "agency" decision relative to the claim, as amended, and the claimant's option under 28 U.S.C. 2675(a) shall not accrue until one hundred and eighty (180) days after the filing of an amendment. Any appropriately filed claim which is not finally adjudicated by

the USCP within one hundred and eighty (180) days of proper filing shall be deemed an "agency" denial under the FTCA and the claimant shall have standing to file suit in U.S. District Court.

(3)     Forms may be obtained and claims shall be filed with the United States Capitol Police, Office of the General Counsel (OGC), 119 D Street, N.E., Suite 701, Washington, DC 20510. In the event of address change of the Office of the General Counsel, the General Counsel is hereby authorized to make appropriate adjustments to claimant forms and place of filing without further review by the Capitol Police Board.

**B.     Administrative claims; who may file**

(1)     A claim for injury to or loss of property may be presented by the owner of the property interest that is the subject of the claim, or a duly authorized agent or legal representative, provided the OGC receives written verification of the legal representation and authority to make a claim on behalf of the claimant.

(2)     A claim for personal injury may be presented by the injured person or a duly authorized agent or legal representative, provided the OGC receives written verification of the legal representation and authority to make a claim on behalf of the claimant.

(3)     A claim based on death may be presented by the executor or administrator of the decedent's estate or by any other person legally entitled to assert such a claim under applicable state law, provided the OGC receives written verification of lawful authority to act as the claimant's legal representative in the above referenced capacity.

(4)     A claim for loss wholly compensated by an insurer with the rights of a subrogee may be presented by the insurer. A claim for loss partially compensated by an insurer with the rights of a subrogee may be presented by the insurer or the insured, individually or jointly, as their respective interests appear. Whenever an insurer presents a claim asserting the rights of a subrogee, the insurer shall present to the OGC, along with the claim, appropriate evidence in writing that the insurer has the rights of a subrogee.

(5)     A claim presented by an agent or legal representative shall be presented in the name of the claimant, be signed by the agent or legal representative, show the title or legal capacity of the person signing, and be accompanied by evidence of authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

*CPB Regulations for Settlement of FTCA and MPCECA Claims*

## C.    Evidence to be submitted

(1)    *Death.*  In support of a claim based on death, the claimant may be required to submit the following evidence or information, as well as other information as the OGC deems relevant and appropriate for proper investigation and administrative adjudication:

   (a)    An authenticated death certificate or other competent evidence showing cause of death, date of death, and age of the decedent.

   (b)    Decedent's employment or occupation at time of death, including monthly or yearly salary or earnings (if any), and the duration of last employment or occupation.

   (c)    Full names, addresses, birth dates, kinship, and marital status of the decedent's survivors, including identification of those survivors who were dependent for support upon the decedent at the time of death.

   (d)    Degree of support afforded by the decedent to each survivor dependent upon the decedent for support at the time of death.

   (e)    Decedent's general physical and mental condition before death.

   (f)    Itemized bills for medical and burial expenses incurred by reason of the incident causing death, or itemized receipts of payments for such expenses.

   (g)    If damages for pain and suffering prior to death are claimed, a physician's detailed statement specifying the injuries suffered, duration of pain and suffering, any drugs administered for pain and the decedent's physical condition in the interval between injury and death.

   (h)    Any other evidence or information that may have a bearing on the issue of responsibility of the United States for the death or the damages claimed.

(2)    *Personal Injury.*  In support of a claim for personal injury, including pain and suffering, the claimant may be required to submit the following evidence or information, as well as other information as the OGC deems relevant and appropriate for proper investigation and administrative adjudication:

   (a)    A written report by the claimant's attending physician, dentist or other medical doctor setting forth the nature and extent of the injury, nature and extent of treatment, any degree of temporary or permanent disability, the prognosis, period of hospitalization, and any diminished earning capacity. In addition, the claimant may be required to submit to a physical or mental examination by a physician employed or designated by the USCP.  A copy of the report of the examining physician may be made available to the claimant upon the claimant's written request provided that the claimant has furnished the report referred to in the first sentence of this subparagraph,

and has made, or agrees in writing to make available to the USCP, any other physician's reports previously or thereafter made regarding the physical or mental condition which is the subject matter of the claim.

(b)    Itemized bills for medical, dental, hospital and related expenses incurred, or itemized receipts of payment for such expenses.

(c)    If the prognosis reveals the necessity for future treatment, a statement of the expected duration of and expenses for such treatment.

(d)    If a claim is made for loss of time from employment, a written statement from the claimant's employer showing actual time lost from employment, whether the claimant is a full or part-time employee, and wages or salary actually lost.

(e)    If a claim is made for loss of income and the claimant is self-employed, documentary evidence showing the amount of earnings actually lost.

(f)    Any other evidence or information that may have a bearing on the issue of responsibility of the United States for the personal injury or the damages claimed.

(3)    *Property Damage.* In support of a claim for damage to or loss of property, real or personal, the claimant, at the discretion of the OGC, may be required to submit the following evidence or information:

(a)    Proof of ownership.

(b)    At least two (2) written estimates for the cost of repairs from reliable commercial establishments.

(c)    A detailed statement of the amount claimed with respect to each item of property.

(d)    An itemized receipt of payment for necessary repairs or itemized written estimates of the cost of such repairs.

(e)    A statement listing date of purchase, purchase price, market value of the property as of date of damage, and salvage value, in circumstances wherein the claimant or facts indicate that repair is not possible or economically feasible.

(f)    Any other evidence or information that may have a bearing on the issue of responsibility of the USCP either for the injury to or loss of property, or for the damage claimed.

(4)    *Time limit.* All evidence required to be submitted by this section shall be furnished by the claimant within a reasonable time. Failure of a claimant to furnish evidence necessary to a determination of the claim within ninety (90) days after a request has been mailed to the last known address of claimant shall be deemed an abandonment of the claim. The abandonment of the claim shall be a denial of such claim.

**D.    Investigation, examination, and determination of claims**

(1)    The OGC, subject to the approval by and direction of the General Counsel, shall be responsible for making recommendations to the Chief of Police regarding adjustments, determinations, compromises and settlements of all administrative tort claims filed with the USCP.

(2)    In carrying out these functions, the OGC shall conduct such investigations as are necessary for a determination of the validity of the claim(s).

(3)    The OGC shall be responsible for submitting all documentation and a recommendation for the resolution of all claims to the Chief of Police.

(4)    The decision of the Chief of Police shall be a final agency decision for purposes of 28 U.S.C. 2675.

(5)    The Office of the Chief of Police shall notify immediately the OGC when each claim is approved and submitted to the Office of Financial Management (OFM) for payment.

**E.    Final denial of claim**

(1)    Final denial of an administrative claim shall be in writing and sent to the claimant, claimant's attorney, or legal representative by certified or registered mail.

(2)    Prior to the commencement of suit and prior to the expiration of the one hundred and eighty (180) day period after the date of mailing by certified or registered mail of notice of final denial of the claim as provided in 28 U.S.C. 2401(b), a claimant, a duly authorized agent, or a legal representative, may file a written request with the USCP for reconsideration of a final denial of a claim in accordance with procedures for amending a claim under paragraph A of this section. Upon the timely filing of a request for reconsideration, the USCP shall have one hundred and eighty (180) days from the date of this filing in which to make a final disposition of the claim, and the claimant's option under 28 U.S.C. 2675(a) to bring suit shall not accrue until one hundred and eighty (180) days after the filing of a request for reconsideration. Final action on a request for reconsideration shall be effected in accordance with the provisions of paragraphs A(2) and E(1) of this section.

**F.    Payment of approved claim**

    (1)    Upon receipt of a claim approved for final payment by the Chief of Police, OFM shall, within thirty (30) days of receipt of such claim, pay the claim in accordance with the SF1145 voucher for payment and applicable OFM internal procedures, and immediately advise the OGC of such payment. If, in the event that it shall become impractical for OFM to make payment within such time period noted above, OFM shall make a written notification to the Chief of Police and the General Counsel of the reason for any projected delay in payment and a reasonable estimate of actual payment time.

    (2)    The claimant or duly authorized agent must sign a SF1145 voucher for payment before payment is made.

    (3)    When the claimant is represented by an attorney, the SF1145 shall designate both the claimant and the attorney as "Payees." The payment shall be delivered to the attorney whose address appears on the voucher for payment.

    (4)    No attorney shall charge, demand, receive, or collect for services rendered, in excess of 20 percent of any administrative settlement, or otherwise in accordance with the provisions of 28 U.S.C. 2678.

**G.    Release**

Acceptance by the claimant, the claimant's agent or legal representative of any award, compromise or settlement made hereunder, shall be final and conclusive on the claimant, agent, subrogee or legal representative and any other person on whose behalf or for whose benefit the claim has been presented, and shall constitute a complete release of all claims against the USCP, the United States or any employee of the federal government arising out of the same subject matter. The execution by the claimant or the legally authorized representative of the SF1145, and payment thereof, shall be the release of the United States, the USCP, and/or any employees thereof, in full satisfaction of the claim.

**H.    Penalties**

A person who files a false claim or makes a false or fraudulent statement in a claim against the United States may be imprisoned for not more than 5 years, pursuant to 18 U.S.C. 287 and 1001, In addition, that person may be liable for a civil penalty of not less than $5,000 and not more than $10,000, and damages of triple the loss or damage sustained by the United States, as well as the costs of a civil action brought to recover any penalty or damages, pursuant to 31 U.S.C. 3729.

*CPB Regulations for Settlement of FTCA and MPCECA Claims*

**I.    Limitation on authority of USCP to pay claims**

(1)    An award, compromise or settlement of a claim under these regulations in excess of $25,000 shall be effected only with the prior written approval of the U.S. Attorney General or designee. For the purposes of this paragraph, a principal claim and any derivative or subrogated claim shall be treated as a single claim.

(2)    An administrative claim may be adjusted, determined, compromised or settled hereunder only after consultation with the Department of Justice (DOJ) when, in the opinion of the OGC:

(a)    A new precedent or a new point of law is involved; or

(b)    A question of policy is or may be involved; or

(c)    The USCP is or may be entitled to indemnity or contribution from a third party and the USCP is unable to pursue independently the third party claim; or

(d)    The compromise of a particular claim, as a practical matter, will or may control the disposition of a related claim in which the amount to be paid may exceed $25,000.

(3)    An administrative claim may be adjusted, determined, compromised, or settled by the USCP hereunder only after consultation with the DOJ when USCP is informed or is otherwise made aware of the fact that the United States or an employee, agent, or cost-plus contractor of the United States is involved in litigation based on a claim arising out of the same incident or transaction.

**J.    Relationship to other agencies**

These regulations hereby incorporate by reference the regulations of the U.S. Attorney General under part 14 of Chapter 1 of Title 28, Code of Federal Regulations, as amended. The regulations of the U.S. Attorney General, including subsequent amendments thereto, and the provisions of these regulations, apply to the consideration by the USCP of administrative claims under the FTCA.

## SECTION 4. SPECIAL RULE FOR CLAIMS MADE BY MEMBERS OF CONGRESS, OFFICERS AND CONGRESSIONAL EMPLOYEES

A.    In general, with respect to any claim described above and filed in accordance with procedures set out in Section 3, above, that is made by a Member of the Congress or any officer or employee of Congress, the Chief of Police shall:

(1)    not later than 14 days after the receipt of such claim, notify the Chairman of the Applicable Committee of the receipt of the claim; and

(2)    not later than 90 days after the receipt of such claim, submit a proposal for the resolution of such claim, which shall be subject to the approval of the Chairman of the Applicable Committee, as defined above in Section 1.

**B.    Extension**

The 90-day period in subparagraph A(2) of Section 4, above, may be extended for an additional period (not to exceed 90 days) for good cause as determined by the Chairman of the Applicable Committee, upon the request of the Chief of Police.

**C.    Approval consistent with Federal Tort Claims Act**

Nothing in this paragraph may be construed to permit the Chairman of an Applicable Committee to approve a proposal for the resolution of a claim described above which is not consistent with the terms and conditions applicable under Chapter 171 of Title 28, United States Code, to the resolution of claims for money damages against the United States.

## SECTION 5.  PERSONAL PROPERTY CLAIMS OF EMPLOYEES OF THE CAPITOL POLICE

**A.**    This section pertains to all claims filed by or on behalf of USCP employees for loss of, or damage to, personal property incident to service with the USCP under the MPCECA, 31 U.S.C. 3721. All claims must be filed in accordance with procedures as described in Section 3, above, must be substantiated, and the possession of the property, incident to the service, must be determined to be reasonable, useful, or proper. The OGC is hereby authorized to develop any forms as may be determined necessary to enhance efficiencies.

**B.**    Maximum payment under this part. The Chief of Police may settle and pay not more than $40,000 for a claim, as described in this part, against the USCP made by a USCP employee. If, however, the claim arose from an emergency evacuation or from extraordinary circumstances, the amount settled and paid may exceed $40,000, but may not exceed $100,000. A claim may be paid in money or the personal property replaced in kind in accordance with provisions of the MPCECA.

## SECTION 6.  PAYMENT LIMITATIONS

**A.**    Nothing in this regulation may be understood or construed to affect:

(1)    Any payment under Section 1304 of Title 31, United States Code, (DOJ Judgment Fund), of a final judgment, award, compromise settlement, and interest and costs specified in the judgment based on a claim against the Capitol Police; and

*CPB Regulations for Settlement of FTCA and MPCECA Claims*

    (2)    Any authority for any settlement under Section 414 of the Congressional Accountability Act of 1995 (CAA), 2 U.S.C. 1414, or payment under Section 415 of that Act, 2 U.S.C. 1415.

**B.**    No claim under the provisions of this regulation shall be made in any case or matter that is not settled or paid as an administrative claim pursuant to the FTCA and the authority of the Head of the Agency as defined above in Section I, or pursuant to a payment under MPCECA. Provided further that no payments shall be made pursuant to these regulations that would otherwise be payable under 2 U.S.C. 1415 of the CAA or for any matter brought before the U.S. District Court pursuant to the provisions of the FTCA.

By unanimous concurrence of the Capitol Police Board these regulations are hereby adopted by the Capitol Police Board this _16TH_ day of _MARCH_, 2005.

 

William H. Pickle
Chairman
Capitol Police Board

Wilson Livingood
Member
Capitol Police Board

Alan M. Hantman
Member
Capitol Police Board

Def.'s Ex. 6

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID OLABAYO OLANIYI,                        )
                                             )
      Plaintiff                         )
                                             )
v.                                            )        Consolidated Civil
                                             )        Action No. 05-00455(RBW)
                                             )
DISTRICT OF COLUMBIA, et al.                  )
                                             )
      Defendant.

DAVID OLABAYO OLANIYI,                        )
                                             )
      Plaintiff                         )
                                             )
v.                                            )
                                             )
UNITED STATES OF AMERICA,                     )
                                             )
      Defendant.

## DECLARATION OF JOSEPH DEPALMA

On January 20, 2004, I was called to respond to the south side of D Street NE adjacent to the parking lot entrance in front of United States Capitol Police (USCP) Headquarters. Mr. Olaniyi's van was stopped/parked at that location. On that day Mr. Olaniyi stated that he was in D.C. to see me. As a result, I was called to the scene. Mr. Olaniyi was with Ms. Patel and two small children, whom he identified as his children. He told me that he was there to get his property. Because of my March 6, 2003 experience with Mr. Olaniyi where explosives were thought to be involved, and because heightened security measures were in place on the day of the President's State of the Union address to Congress, the van was stopped/parked in front of USCP Headquarters, the van's license plates

were unreadable due to dirt, snow, and grime, and the van's interior was obscured by dirt, snow, and grime on side and rear windows, I asked Mr. Olaniyi for permission to conduct a K-9 search of his van. I distinctly remember that Mr. Olaniyi consented to the K-9 search and never objected to the search at any time. Prior to the K-9 search, all occupants were asked to step out of the van and all occupants exited the van. I stated that Ms. Patel, who was with Mr. Olaniyi, and the children could step inside the USCP Headquarters building because it was cold outside. She declined. A USCP K-9 search was conducted with negative results. Ms. Patel photographed the search of the van. I asked Mr. Olaniyi if he had permission to bring his children to Washington D.C. because I had knowledge of a divorce and custody battle after speaking to Mr. Olaniyi's wife in March 2003. I told Mr. Olaniyi if he did not have permission to take his children out of state, I would have to take them to child protective services. He said he had permission, so I dropped the issue. Mr. Olaniyi was taken into the USCP Crime Scene Search office to get his property. I returned to my office.


I, Joseph DePalma, declare under penalty of perjury under the laws of the United States that the foregoing declaration is true and correct based upon my knowledge, information and belief.


Retired USCP Detective Joseph DePalma

6-11-08

Date

# WARNING AS TO YOUR RIGHTS

You are under arrest. Before we ask you any questions you r understand what your rights are.

You have the right to remain silent. You are not required to anything to us at any time or to answer any questions. Anythir you say can be used against you in court.

You have the right to talk to a lawyer for advice before we qu tion you and to have him with you during questioning.

If you cannot afford a lawyer and want one, a lawyer will provided for you.

If you want to answer questions now without a lawyer pres you will still have the right to stop answering at any time.

If you want to answer questions now without a lawyer presi you will still have the right to stop answering at any time until y talk to a lawyer.

**THUMBPRINT**

**WAIVER**

Have you read or had read to you the warning as to your rights? _YES_

Do you understand these rights? _YES_

Do you wish to answer any questions? _YES_

Are you willing to answer any questions without having an attorney present? _YES_

Signature of defendant _____

Time: _1545_   Date: _3/06/03_

Signature of officer: _____

Signature of witness: _____ 4157

GPO: 2001 59-642 (reed)

Def.'s Ex. 7